UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------

KIMBERLY GENEREUX,

                    Plaintiff,

v.

COLUMBIA SUSSEX CORPORATION            C.A. NO. 05-CV-10879-JLT
STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., WESTIN HOTEL
MANAGEMENT L.P.
                    Defendants.

------------------------------------------------

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Columbia Sussex Corporation ("Columbia Sussex"), Starwood Hotels and Resorts Worldwide, Inc. ("Starwood") and Westin Hotel Management, L.P. ("Westin") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment seeking dismissal of plaintiff's Second Amended Complaint.

## STANDARD OF REVIEW

Summary Judgment is appropriate when the Record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary Judgment is proper against a party which fails to show the existence of an element essential to the party's case, and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed 2d. 265, 106 S. Ct. 2578 (1986); Connell v. Bank of Boston, 924 F.2d 1169, 1172 (1st Cir. 1991).

## DEFENDANTS' MOTION

Defendants' Motion for Summary Judgment is grounded upon two incontrovertible bases: 1) None of the defendants are the owner, operator or manager of The Westin Casuarina Resort & Spa ("The Westin Casuarina") in Grand Cayman, where the plaintiff alleges she was

Error! Unknown document property name.

sexually molested; and 2) none of the Defendants can be held liable for the unforeseeable criminal acts of a third-party as plaintiff alleges occurred in the Cayman Islands.

## THE PARTIES

Plaintiff, Kimberly Genereux, a Massachusetts citizen, was on vacation in the Cayman Islands in May 2002, when she alleges that she was stalked on a public street and followed into a restroom located on the premises of The Westin Casuarina and raped.

Defendant Columbia Sussex, a Kentucky corporation, entered into a Service Agreement with Galleon Beach Resort, Ltd. ("Galleon Beach"), a Cayman corporation which is the owner and operator of The Westin Casuarina. The Service Agreement addresses financial and accounting matters and record keeping, and all services by Columbia Sussex are performed in Kentucky. Columbia Sussex has no ownership interest in The Westin Casuarina.

Defendant Westin Hotel Management, L.P. is a limited partnership organized under the laws of Delaware and the successor-in-interest to Westin License Company's interests in a License Agreement between Westin System License Company, as Licensor, and Galleon Beach, as Licensee, dated March 20, 1995. The License Agreement is commonly referred to as a "Franchise Agreement" and Westin is the "Franchisor", with Galleon Beach as the "Franchisee."

Defendant Starwood is a Maryland Corporation with its principal place of business in White Plains, New York, and is the General Partner of Westin Hotel Management, L.P. Starwood has no ties to Galleon Beach, nor to The Westin Casuarina, other than through that which is set forth in the Westin License Agreement.

The owner and operator of The Westin Casuarina is Galleon Beach. Galleon Beach is not a party to this civil action.[1]

---

[1] Plaintiff's Second Amended Complaint deletes Galleon Beach from the caption and Amended Complaint, as plaintiff never effected service of process upon Galleon Beach although she had previously named it as a defendant. Defendants Columbia Sussex and Starwood have repeatedly informed plaintiff that neither of them own or operate The Westin Casuarina and that all security operations at the Hotel were the responsibility of Galleon Beach.

Error! Unknown document property name.

## THE INCIDENT

Plaintiff, Kimberly Genereux, was not a hotel guest of The Westin Casuarina. Unbeknown to anyone at the Cayman Island hotel property, plaintiff sought to escape the pursuit of a stranger whom she encountered three times as she walked alone at night on a public street. Ms. Genereux entered The Westin Casuarina premises, but chose not to inform anyone of her presence or of her fear that she was being followed. Instead of entering the lobby, calling the police, or asking for help, she chose to use a restroom located in one of the Resort's outer buildings. Ms. Genereux then claims that someone entered the restroom shortly after her and raped her. The police investigated her Complaint but the criminal was never identified.

## PLAINTIFF'S ALLEGATIONS OF NEGLIGENCE

Plaintiff's Second Amended Complaint alleges that the Defendants owed a duty to the Plaintiff to exercise reasonable care in the operation of The Westin Casuarina in order to safeguard the plaintiff while she was lawfully on the Premises "which they owned, controlled, operated, managed, supervised, licensed and/or franchised." (Second Amended Complaint ¶ 62). Plaintiff also alleges that defendants breached a duty of care which they owed to the plaintiff by their "negligent security practices."[2]

## THE DEFENSES

None of the Defendants own, manage, operate or control The Westin Casuarina. In particular, security operations at The Westin Casuarina are distinctly something which are dictated by the owner and operator of the Hotel, Galleon Beach, the one entity which Plaintiff elected not to pursue through discovery or litigation. There is no evidence that Defendants Starwood, Westin or Columbia Sussex dictated how security on the premises was to be performed. There is also no evidence of any similar attack having been reported to any

---

[2] Please see Plaintiff's Second Amended Complaint at ¶ 63 for the specific allegations.

Defendant (or to Galleon Beach for that matter), involving The Westin Casuarina or occurring in its vicinity at any time prior to Plaintiff's incident.

Plaintiff alleges no conduct that involves any of the Defendants. Moreover, the alleged negligent conduct of Westin Casuarina employees occurring after the alleged rape, like all of the Plaintiff's claims, could only have involved employees of Galleon Beach, the solo owner and operator of the Resort. See Plaintiff's Second Amended Complaint at ¶¶ 45-58, 63(f), 63(i), and 63(j).

Also, under the law of The Cayman Islands, as well as the United States, an owner and occupier of premises is not liable for the unforeseeable criminal acts of third-parties perpetrated upon others on the premises, and in this instance, allegedly perpetrated upon one not even known to be on the premises and not a guest of the Hotel. Therefore, not only did Defendants not own, operate or manage the Hotel, but even if they had, there would be no basis to hold them liable for Plaintiff's injuries and claims, none of which were reasonably foreseeable.

## CHOICE OF LAW

A Massachusetts federal court must apply the choice of law principles of the Commonwealth of Massachusetts when, as here, it is hearing a case where jurisdiction is based upon diversity of citizenship. Bergin v. Dartmouth Pharmaceutical, Inc., 326 F.Supp.2d 179, 180-81 (D. Mass. 2004). Massachusetts Choice of Law Rules provide that tort claims for personal injuries are governed by the laws of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action. Bergin, 326 F.Supp.2d at 183; Gianocostas v. RIU Hotels, S.A., 19 Mass. L. Rep. 42 (Mass. Super. 2005). The factors to be considered in determining whether another state has a more significant relationship to the cause of action are set forth in § 6 of the Restatement (Second) of Conflicts of Laws and include: (a) the relevant policies of the forum; (b) the relevant policies of other interested states and their relative interests in the determination of the particular issue; (c) the basic policies underlying the

particular field of law; (d) certainty, predictability and uniformity of result; and (e) ease in determination and application of the law to applied. <u>Cosme v. Whitin Machine Works, Inc.</u>, 417 Mass. 643, 647 n. 6 (1994); <u>Gianocostas</u>, 19 Mass. L. Rep. 42.[3]  In applying these factors, courts also consider:  (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c)  the domicile, residence, place of incorporation and place of business of the parties; and (d) the place where the parties' relationship is centered . <u>Cosme</u>, 417 Mass. at 646-47 and n.3; <u>Gianocostas</u>, 19 Mass. L. Rep. 42.

The case of <u>Gianocostas v. RIU Hotels, S.A.</u>, supports a conclusion that the law of the Cayman Islands would apply to this dispute.  There, the plaintiff's estate brought an action in Massachusetts state court against Interface Group-Massachusetts, LLC d/b/a GWV International, a Massachusetts tour operator, when the plaintiff died as a result of inadequate medical care she received while on vacation at a hotel in the Dominican Republic.  The Massachusetts court noted that the plaintiff and GWV were Massachusetts-based and that Massachusetts had a "significant interest" in applying its laws to ensure that Massachusetts residents booking hotels through GWV receive competent medical care.  Nonetheless, the court concluded that the law of the Dominican Republic would apply to the dispute because the injury occurred there, the conduct giving rise to the claim occurred there, the parties' relationship was centered there, and finally the Dominican Republic has an interest in ensuring the safety of visiting tourists.

Like the case in <u>Gianocostas</u>, consideration of the relevant factors in the instant matter also supports a conclusion that the Court should apply the law of the Cayman Islands.  The Cayman Islands is the place where the criminal attack and injury occurred; and also where the Defendants' allegedly negligent conduct occurred.  For example, Defendants' alleged failure to perform proper security at the premises, the allegedly negligent design of the premises, and the

---

[3] Massachusetts courts rely heavily on the Restatement (Second) of Conflicts of Laws in analyzing choice of law influencing factors. *See, e.g.*, <u>Gianocostas</u>, 19 Mass. L. Rep. 42 (citing § 146 of the Restatement); *See also* <u>Tingley Systems, Inc. v. CSC Consulting, Inc.</u>, 152 F.Supp.2d 95, 114 (D. Mass. 2001).

Error! Unknown document property name.

alleged failure to respond adequately to the Plaintiff's requests for assistance all occurred in the Cayman Islands.

## DEFENDANTS CANNOT BE HELD LIABLE UNDER THE LAW OF THE CAYMAN ISLANDS

On behalf of the Defendants, an opinion was solicited from a Cayman law firm  on Cayman Law as it relates to the Plaintiff's allegations of negligent security and the criminal assault.  The Cayman Legal Opinion is annexed to the Affidavit of Robert J. Brown, sworn to March 10, 2008 as Ex. "8". This Honorable Court is respectfully invited to review the Opinion on Cayman Law in its entirety; this section will reiterate and highlight parts of that Opinion.

Defendants would not be held liable to the plaintiff under the law of the Cayman Islands.[4] To establish any claim of negligence, a plaintiff must first prove that the defendant has a duty of care which is owed to the plaintiff.  Under the law of the Cayman Islands, the imposition of such a duty arises from a combination of factors, namely the reasonable foreseeability of risk of injury, the requisite proximity between the parties, and the absence of any statutory provision or common law rule which precludes a duty of care in the circumstances.  Donoghue v. Stevenson [1932] A.C. 562, [1932] All E.R. Rep 1 (H.L.); Le Lievre v. Gould [1893] 1 Q.B. 491 (C.A.); Anns v. Merton London Borough Council [1978] A.C. 728, [1977] 2 All E.R. 492 (H.L.).[5]  All three considerations must be satisfied if a duty is to be imposed by the law.  The plaintiff must show that there is a real risk that injury of the kind sustained by the recipient would be sustained by him or her, either as an identified individual or as a member of a class which includes the plaintiff, as a result of the acts or omissions alleged to have occurred.  Le Lievre v. Gould, [1893] 1 QB 491 (C.A.).  This risk must not be one that is far fetched or fanciful.  Wyong Shire Council v. Shirt, (1980) 146 CLR 40, (1980) 29 A.L.R 217 (H.C.A.).

---

[4] The Cayman Islands are a British Dependent Territory of the United Kingdom, and thus the Cayman Islands generally adopt the common law of the United Kingdom and other Commonwealth countries.

[5] Copies of all cases cited in the Opinion on Cayman Law are provided within an Appendix to Defendants' Motion, which has been served upon the Plaintiff with this Motion, and is available to the Court upon its request.

The enquiry by the courts as to foreseeability is a factual enquiry, which is undertaken either to determine whether a duty of care exists, or whether a duty of care has been breached. Bolton v. Stone, [1951] AC 850, 1 All E.R. 1078 (H.L.). The authorities warn of the danger of concluding that a circumstance is reasonably foreseeable when such a finding is essentially based upon the benefit of hindsight and is not based upon the state of knowledge at the time when the duty should have been performed. Rosenberg v. Percival, (2001) 205 CLR 434, (2001) 178 A.L.R. 577 (H.C.A.).

United Kingdom common law has established the importance of "proximity" as an essential element in determining whether a duty of care exists. Courts have determined that proximity is "a separate and general limitation upon the test of reasonable foreseeability in the form of relationships which must exist between plaintiff and defendant before a relevant duty of care will arise ... ." See, e.g., San Sebastian Pty Ltd v. Minister Administering Environmental Planning and Assessment Act, (1986) 162 CLR 340, (1986) 68 A.L.R. 161 (H.C.A.). The general requirement of proximity involves an assessment of the degree of closeness of the relationship of the parties, and also a judgment of the legal consequences of that relationship. Jaensch v. Coffey, (1984) 155 CLR 549, (1984) 54 A.L.R. 417 (H.C.A.). To determine the existence of this requisite degree of closeness, courts examine the following factors between the parties:    physical proximity (in a temporal sense); circumstantial proximity (such as an overriding relationship like employer and employee); and causal proximity between the plaintiff's injury and the defendant's actions. Id.

The House of Lords, which is the final court of appeal in the United Kingdom, addressed proximity and foreseeability in the leading case of Smith v. Littlewoods Organisation Ltd., [1987] A.C. 241, [1987] 1 All E.R. 710 (H.L.). In Littlewoods, third-party hooligans broke into a derelict cinema building and started a fire which spread to the adjoining plaintiff's property and destroyed the same. In finding for the defendant, the court held that, while the defendant might

be partly at fault for the plaintiff's damages, it cannot be held responsible for damages to a third party which were caused by the deliberate actions of strangers.  Id. (citing Weld-Blundell v. Stephens, [1920] AC 956, [1920] All E.R. Rep 32 (H.L.) ("Even though A is in fault, he is not responsible for injury to C which B, a stranger, deliberately chooses to do.")

Courts under the United Kingdom common law regime are reluctant to imply negligence in cases where damage has been caused by third party intervention.  The majority of these types of cases places no obligation on reasonable people to take steps to prevent unlikely events. See, e.g., Bolton v. Stone, [1951] A.C. 850, [1951] 1 All E.R. 1078 (H.L.).  In Modbury Triangle Shopping Centre Pty Ltd v. Anzil, (2000) 205 C.L.R. 204, (2000) 176 A.L.R. 411, the High Court of Australia,[6] was asked to determine whether the defendant landowner was liable to a person who was attacked at night by three unidentified assailants in the unlit parking lot of its shopping center.  The court reviewed the history of the applicable law in the United Kingdom and the United States[7] and elsewhere.  The majority of the judges acknowledged that in certain limited and special relationships, a defendant had a duty of care to protect against damage caused by third parties and determined that on the facts of the particular case, there was no clear control by the defendant over the third party.  The court further noted that there was no assumption of responsibility by the defendant for the safety of persons on its property from attack by third parties, and that although the defendant's failure to leave lights on may have facilitated the crime, its failure to leave the lights on did not cause the crime.  The court went on to determine that the crime was not in a category of high foreseeability and thus came to the conclusion that the defendant was not liable to the plaintiff for the criminal act of this third-party assailant.

Defendants Columbia Sussex, Starwood and Westin had no relationship to the Plaintiff.  Even more removed from the scene than the defendants in both Littlewoods and Modbury,

[6] Australia is a Commonwealth country and enjoys similar common law heritage as the United Kingdom.  The Cayman Islands therefore find the law of that court to be very persuasive.
[7] Lillie v. Thompson, 332 U.S. 459, 68 S. Ct. 140 (1947).

Defendants at bar could not reasonably foresee the acts of the third-party rapist nor did Defendants cause the injuries to Plaintiff. Plaintiff was not employed by Defendants, she was not a paid guest of Defendants (or of The Westin Casuarina), and she failed to even notify The Westin Casuarina, much less, any of the Defendants, of her presence. The circumstantial proximity between Plaintiff and Defendants is non-existent. In the leading case of <u>Modbury</u>, the defendant owned and operated the shopping center where the plaintiff was employed, but was not liable to the plaintiff. Defendants herein were not in any proximity to create a "special relationship," nor were Defendants able to prevent the criminal acts of the third party rapist.

Because Defendants have no relationship to the Plaintiff and owe no duty to her, the inquiry ends there. Nonetheless, even if the Defendants were, for the sake of argument, found to stand in the shoes of the Operator of the Hotel, they would not be liable as none could reasonably foresee the possibility of this third-party criminal act, and none caused Plaintiff's injuries. Defendants cannot therefore be held liable under the law of the Cayman Islands.

## CRIMINAL ATTACK UPON PLAINTIFF NOT REASONABLY FORESEEABLE UNDER UNITED STATES LAW

Similar to the law of the Cayman Islands, the law of potentially relevant domestic jurisdictions supports a finding of summary judgment in favor of Defendants.[8]

In the first instance, none of the Defendants have any relationship with the Plaintiff. None of the Defendants own or operate The Westin Casuarina, and none owe the Plaintiff a duty regarding her safety. Taking it one step further, even if this Court were to find that a Defendant had a duty to the Plaintiff, (which Defendants do not concede and, in fact, expressly deny), the alleged third-party criminal assault upon the Plaintiff was not reasonably foreseeable to Galleon Beach, owner and operator of the Hotel. Because Galleon Beach cannot be found liable, Starwood, Westin, and Columbia Sussex cannot therefore be held liable for any unforeseeable

---

[8] The potentially relevant jurisdictions are each party's domicile and/or incorporation state (Massachusetts, New York, Kentucky, Maryland and Delaware).

Error! Unknown document property name.

third-party criminal acts.[9]  For example, the "common law [of Massachusetts] imposes on a commercial landowner a duty to take reasonable precautions to protect persons lawfully in common areas of [its property] against reasonably foreseeable risks." Whittaker v. Saraceno, 418 Mass. 196, 198, 635 N.E.2d 1185 (1994) (citing Restatement (Second) of Torts § 360 (1965), Restatement (Second) of Property, Landlord and Tenant, § 17.3 comment 1, at 197 (1977)).   A landowner's duty in Massachusetts is thus limited to reasonably foreseeable risks, and absent a finding of such a duty, there can be no liability in negligence.  By this reasoning, foreseeability plays a crucial role in limiting the extent of a defendant's liability.  Whittaker, 418 Mass. at 198.

In Whittaker, the plaintiff was assaulted and raped in and around the defendant's parking garage.  In dismissing the complaint against the defendant, the court noted that there was no evidence of prior physical attacks in the building, and the building was located in a low-crime area.  The court, therefore, held that the attack on the plaintiff was not reasonably foreseeable to the defendant landowner, because "there was no evidence that the landlord knew or reasonably should have known that a physical attack might occur in the building." Id.  at 200.  In dismissing the plaintiff's claim, the Supreme Judicial Court recognized that

> [t]he possibility of criminal conduct occurring is present in almost every aspect of daily life.  In that sense the possibility of a violent attack is always able to be foreseen.  However, society should not place the burden of all harm caused by random violent criminal conduct on the owner of the property where the harmful act occurred without proof that the landowner knew or had reason to know of a threat to the safety of persons lawfully on the premises against which the landowner could have taken reasonable preventive steps.

Id.

If a plaintiff cannot produce evidence that a landowner knew or had reason to know of a threat to the safety of people on its property, a defendant is therefore entitled to summary judgment, as he cannot be said to have owed a requisite duty of care to that plaintiff. Massachusetts courts no longer mandate a showing of prior similar criminal acts on the

---

[9] Even if Galleon Beach were found to be liable, there is no evidence that any of the Defendants would, or could, be liable.

defendant's property, but courts have nonetheless continued to find that prior similar criminal acts play a significant role in determining foreseeability. *See*, Whittaker, 418 Mass. at 199[10]; *See also*, Rossacci v. Stop & Shop Companies, Inc., 7 Mass. L. Rep. 7 (1997) ("In deciding whether there was reasonable foreseeability of harm, all circumstances are to be examined by the [c]ourt … but a circumstance upon which courts often focus is the previous occurrence, *vel non*, of similar criminal acts on or near the premises." (internal citations omitted)).

Similar to the defendant in Whittaker, the defendant in Rossacci did not know of any previous similar incidents on his property and nothing in the record warranted the inference that his property constituted a "high-crime area" requiring security. In conclusion, the defendant could not reasonably foresee the harm caused by the third-party's criminal conduct, and thus could not be held liable to the plaintiff. Id. at 11.

Defendants at bar had no knowledge of prior similar criminal acts that would place them on notice of future cases of sexual assault or rape at The Westin Casuarina. The record is devoid of any evidence that might suggest that any serious, violent crimes have ever before occurred at The Westin Casuarina's common areas or bathrooms. Moreover, nothing in the record suggests that the area surrounding The Westin Casuarina property could be classified as a "high-crime" area. Therefore, as in both Whittaker and Rossacci, we respectfully submit that this Honorable Court should hold that the Defendants could not have reasonably foreseen the harm which is alleged to have occurred to the Plaintiff.

Further, by the Plaintiff's own admission, she was neither a guest at The Westin Casuarina, nor did she notify anyone at the Hotel of her entrance onto the property before allegedly being attacked by the unknown third-party assailant. Because she did not pay for a room, or even ask for assistance, it cannot be said that the operator of The Westin Casuarina in

---

[10] It should be noted that the court cited to Ann M. v. Pacific Plaza Shopping Ctr., 6 Cal. 4th 666, 679 (1993), for holding that "the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises."

any way voluntarily assumed a duty to protect Plaintiff from third-party criminal acts. *See, e.g.*, Mullins v. Pine Manor College, 389 Mass. 47, 53-54 (college defendant voluntarily assumed a duty to protect its students from criminal acts when it charged its students for security). Even had Plaintiff been a guest of the Hotel, neither the operator of the Hotel, Galleon Beach, nor any of the Defendants could have reasonably foreseen such an attack on a guest of the Hotel.

This is not case where the property at issue *invited* criminal activity. *See, e.g.* Seron et al. v. Maltagliati et al., 1998 Mass. Super. LEXIS 46 (1998) (a landlord renting space to an abortion clinic should realize that such a clinic might attract violent protestors); *See also*, Mullins, 389 Mass. at 51 ("The concentration of young people, especially young women, on a college campus, creates favorable opportunities for criminal behavior."). In the instant matter, nothing about The Westin Casuarina invites controversy or violence by its pure nature and purpose.

The same conclusion results if the Court were to apply New York, Kentucky, Maryland or Delaware law. In each jurisdiction, a defendant's liability in negligence is limited to its duty to protect certain classes of people from reasonably foreseeable risks. For example, the court in Browne v. GMRI, Inc., 775 N.Y.S.2d 184 (2d Dep't 2004) restated the law of New York as follows:

> To recover damages from an owner of real property for injuries caused by the acts of third parties, a plaintiff must produce evidence indicating that the owner knew or should have known of the probability of conduct on the part of third persons which was likely to endanger the safety of those lawfully on the premises.

Id. at 184. The court in Browne explained that a defendant landowner cannot be held liable if it did not reasonably foresee the criminal acts of a third party assailant. It concluded that "spontaneous and unexpected criminal [actions] of a third party" cannot be foreseeable. Id.

The law of Maryland, Kentucky, and Delaware has developed in similar fashion to that of both Massachusetts and New York. Namely, a defendant will not be held liable to the plaintiff if

he could not reasonably foresee the criminal acts of a third party assailant.  <u>Rhaney v. University of Maryland Eastern Shore</u>, 388 Md. 585, 880 A.2d 357 (2005) (Maryland law); <u>Grisham, et al. v. Wal-Mart Stores, Inc.</u>, 929 F. Supp. 1054 (E.D. KY 1995) (Kentucky law); <u>Delmarva Power & Light Co. v. Burrows</u>, 435 A.2d 716 (1981) (Delaware law).

      As applied to this case, the Plaintiff's unsubstantiated suggestion of previous cases of sexual assault or rape on the Cayman Islands in general is entirely insufficient to create foreseeability of similar criminal activity at The Westin Casuarina or in its vicinity.  Nothing in the record suggests that The Westin Casuarina was the location of previous third-party sexual assaults[11], nor does the record suggest that the surrounding community had experienced similar crimes.  Moreover, nothing in the report recently produced by the plaintiff's purported "liability expert," Mr. Robert McCrie, suggests that Galleon Beach could reasonably anticipate or foresee the sexual assault which the plaintiff alleges occurred.  Mr. McCrie cites to irrelevant authority post-dating the date of the incident by as much as two years; inadmissible hearsay and unsupported anonymous internet blog postings; and finally, he cites to broad and undefined crime statistics of the three Cayman Islands taken together.  Such statistics are completely unavailing to the current analysis, as the Court cannot determine the specific nature of those crimes reported.  *See,* <u>Grisham</u>, *supra,* 929 F.Supp. at 1058 (Statistics showing an increase in crime cannot establish foreseeability because bare statistics lack necessary detail).  Thus, absent any evidence of similar criminal activity at The Westin Casuarina or in its vicinity, and known to The Westin Casuarina, Galleon Beach could not have reasonably foreseen this particular

---

[11] The plaintiff's purported "Liability Expert," Mr. McCrie, alludes to a Complaint in 1997 entitled <u>Louise Reynolds v. Columbia Sussex et al</u> which involved an allegation of sexual misconduct at The Westin Casuarina.  The circumstances of that Complaint are entirely inapposite to the allegations before this Court.  In <u>Reynolds</u>, the allegations involved three underage minors who were guests of The Westin Casuarina and one employee waiter of the Hotel.  The particulars of that incident involved the service of alcohol to the underage guests and the subsequent alleged sexual misconduct within a guest room.  (See, Affidavit of Niels Olsen at 18)  That isolated incident involved alcohol service policies which were thereafter addressed and new procedures were implemented by Galleon Beach.  (<u>Id.</u>)  That incident did not create any reasonable foreseeability of a random third-party criminal sexual assault upon a trespasser  in the restroom of one of the Hotel outer buildings.

criminal behavior on its property.  More to the point, there is absolutely no evidence that any of the Defendants, none of which have any relationship to the Plaintiff, could have reasonably foreseen such an incident occurring at The Westin Casuarina.

Plaintiff also attempts to establish liability on the Defendants by alleging a negligent design of The Westin Casuarina restroom in which the alleged incident transpired.  The defendants did not design the restroom.  Nonetheless, an alleged negligent design of a restroom does not speak to a defendant's alleged duty of care, but rather to the alleged proximate cause of a plaintiff's injuries.  A restroom designed in a particular manner does not create a duty of care on its owner and operator if such duty did not already exist.  As has been addressed previously, there was no reasonable foreseeability of sexual crime in the bathroom or the vicinity. Therefore, there was no duty on the owner and operator owing to the Plaintiff regarding the bathroom, and Defendants certainly had no such duty to the Plaintiff.  In any event, the alleged negligent acts of Defendants cannot be said to be the proximate cause of Plaintiff's alleged injuries which were directly caused by the alleged criminal assault by a third-party trespasser.

## STARWOOD, WESTIN,  AND COLUMBIA SUSSEX ARE NOT LIABLE FOR THE ALLEGED NEGLIGENCE OF GALLEON BEACH

Defendants Columbia Sussex, Starwood and Westin are entitled to summary judgment as a matter of law because none controlled or operated The Westin Casuarina  and none are in an agency relationship with Galleon Beach regarding security operations at the Hotel.  Thus, even if Galleon Beach were found to have been negligent, (and there is no evidence to suggest negligence on its part), Defendants could not be held liable for that negligence.

### A.  Starwood and Westin Cannot be Held Liable for the Alleged Negligence of Galleon Beach

1. No Actual Agency Relationship

The Westin Casuarina  is a franchise operation.  Because no agency relationship existed between franchisor Westin and franchisee Galleon Beach, no liability should attach to the

agency relationship with Galleon Beach regarding security operations at the Hotel. Thus, even if Galleon Beach were found to have been negligent, (and there is no evidence to suggest negligence on its part), Defendants could not be held liable for that negligence.

**A.  Starwood and Westin Cannot be Held Liable for the Alleged Negligence of Galleon Beach**

    1. <u>No Actual Agency Relationship</u>

The Westin Casuarina is a franchise operation. Because no agency relationship existed between franchisor Westin and franchisee Galleon Beach, no liability should attach to the defendant Westin or its parent corporation Starwood. The Restatement (Second) of Agency defines "Agency" as:

> the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

Restatement (Second) of Agency § 1 (1958). "It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries and the agency agreement from other agreements." <u>Id</u>., comment (b).   Here, Galleon Beach is *not* owned or operated by Starwood or Westin, and thus never manifested its consent to act on behalf Starwood or Westin. McGovern Aff at ¶¶ 4, 9, annexed as Ex. 4 to Aff of Robert Brown. The License Agreement between Westin and Galleon Beach makes clear that Galleon Beach is an independent contractor, and not an agent of Westin. McGovern Affidavit at ¶ 9.

However, courts have nonetheless held that "even where the parties have eschewed an agency relationship, an agency relationship may exist where 'there is mutual consent, express or implied, [that one party] is to act on behalf and for the benefit of [another], and subject to [such other party's] control.'" <u>McLaughlin v McDonald's Corp et al.</u>, 2001 US Dist. LEXIS 23222, *21-22 [MA, Nov. 29, 2001] quoting <u>Theos & Sons, Inc. v Mack Trucks, Inc.</u>, 431 Mass. 736, 742. The <u>McLaughlin</u> case is illustrative because it involved rape by a third party in a

McDonald's parking lot and later on hotel property. McDonald's, as franchisor, was dismissed from the case. The court held that no agency relationship existed between the franchisor and the franchisee despite the fact that the franchisor "dictated the manner in which [the franchisee] was required to operate the…restaurant." The Massachusetts court explained that the operational requirements imposed by McDonald's on its franchisee were merely "intended to ensure quality control." McLaughlin, *supra* at 24. The court found that the franchisor:

> did not exercise supervisory control over security measures utilized by [franchisee] at the…restaurant. Instead, [franchisor] issued an Operations and Training manual which addressed security issues and contained information that [franchisee] should consider…as company policy.

Id.

Similar to the franchise agreement in McLaughlin, the License Agreement between Westin and Galleon Beach notes that its Brand Standards are in place to ensure the "first-class high quality" of the Hotel. McGovern Affidavit at ¶ 10. Moreover, the manner by which Galleon Beach meets certain criteria promulgated in those standards is entirely up to Galleon Beach. McGovern Affidavit at ¶ 14.

In general, "[w]hether franchisor should be held vicariously liable for negligent conduct of its franchisee depends on whether the franchisor controls the day-to-day operations of the franchisee, and more specifically whether the franchisor exercises a considerable degree of control over the instrumentality at issue in a given case." McLaughlin, *supra* at 28, *quoting* Wendy Hong Wu v. Dunkin' Donuts, Inc., 105 F. Supp.2d 83, 87 (2000). In McLaughlin, the franchisor did not control the day-to-day operations of its franchisee because, *inter alia*, the franchisor did not maintain the right to hire, fire or discipline employees of the franchisee; and most importantly, the franchisor did not control the security of its franchisee. The court specifically noted that, even if it were to find an agency relationship existed, the plaintiff "would have to establish that with respect to security matters, [the franchisee] operated with the actual or apparent authority of [the franchisor, McDonald's]." *See also,* Kerl v. Dennis Rasmussen, Inc.,

682 N.W.2d 328 (WI 2004) (a franchisor may only be held liable if it controlled or had the right to control the specific business operation alleged to have caused the plaintiff's harm). The operating manual provided by McDonald's included advice and suggestions on providing proper security, but it did not *control* the activity as is necessary to establish an agency relationship.

Even further removed from the facts of <u>McLaughlin</u>, the Westin License Agreement and the Westin Manuals and Westin Brand Standards issued pursuant to that Agreement between Westin and Galleon Beach do *not* address day to day operational security measures. Such decisions were left to the sole discretion of Galleon Beach. McGovern Affidavit at ¶¶ 15, 16. Westin did not control the security operations of Galleon Beach; no agency relationship can be said to exist between the separate and independent entities regarding security operations.

Westin did not control the daily operations of Galleon Beach. Similar to the facts of <u>McLaughlin</u>, Westin had no authority to hire or fire Galleon Beach employees. McGovern Affidavit at ¶ 14. Various jurisdictions have ruled in similar fashion to that of the court in <u>McLaughlin</u>. Namely, the standards depicted in a franchise agreement with respect to quality, marketing, and operation commonly included in franchise agreements cannot establish vicarious liability without a showing of close supervisory control over day-to-day activities. *See, e.g.,* <u>Kerl v. Dennis Rasmussen Inc.</u>, 682 N.W.2d 328 (WI 2004). Similarly, the Georgia Court of Appeals refused to hold a franchisor liable for a franchisee's allegedly tainted food despite the franchisor's manuals detailing standards related to food preparation and hygiene. <u>Schlotzsky's, Inc. v. Hyde et al.</u>, 538 S.E.2d 561 (GA Court of Appeals 2000). The franchisor simply did not retain control over the franchisee's daily activities. The same should hold here.

Westin and its parent Starwood did not control, manage or supervise the daily operations at The Westin Casuarina and they cannot not be held liable for the alleged negligence of Galleon Beach.

2. <u>No Apparent Agency Relationship</u>

The court in <u>McLaughlin</u> also held that there was no *apparent* authority to establish an agency relationship between the franchisor and franchisee. The court defined apparent authority as the authority that exists "only if the plaintiff reasonably relied on the principal's words or conduct at the time he entered the transaction that the agent is authorized to act on the principal's behalf." <u>McLaughlin</u>, *supra* at 26, 27. After casting doubt on whether such authority could *ever* be found under circumstances of a third-party criminal assault, the court nonetheless held that the plaintiff victim could not have reasonably determined that the franchisee was acting as an agent of the franchisor, McDonald's. The Massachusetts court noted that

> the mere use of trademarks and logos by a franchisee does not raise a genuine issue of material fact as to whether [the franchisee] had apparent authority to act as [the franshisor's] agent. This is particularly true in situations involving businesses such as the McDonald's Restaurant, because the public is well aware that such entities are often operated as franchises.

<u>Id.</u> at 27 (internal citations omitted); *See also*, <u>Mobil Oil Corp. v. Bransford</u>, 648 So. 2d 119 (1995) (Supreme Court of Florida held that "the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions.")

Here, no apparent authority can be found to exist as between Galleon Beach and Starwood/Westin. The License Agreement provides that "no representation shall be made by either party to anyone that would create any apparent agency…" McGovern Affidavit at ¶ 9. In accordance with this restriction and to illustrate the independent relationship to Hotel guests, the Agreement further provides that signs shall be posted in the Hotel identifying Galleon Beach as independent contractor to Westin. <u>Id.</u> It also provides that all business stationary that contains Westin's Trademark must indicate that Galleon Beach is independently owned and operated. <u>Id.</u> Therefore, as the Massachusetts court noted in <u>McLaughlin</u>, the mere use of Westin's franchise logos and Trademark does not give rise to apparent authority. To hold otherwise would make Starwood and/or Westin liable for something of which it had no right to control. The use of a

franchisee's restroom by a stranger attempting to escape from a third party assailant without alerting the franchisee of her concerns and alarm should not somehow create a greater liability on the franchisor, when not even the franchisee knew of any potential danger generally or specifically.

### B.  Columbia Sussex Cannot Be Held Liable for the Alleged Negligence of Galleon Beach

Similar to the analysis presented above, this Honorable Court should find that Columbia Sussex cannot be held liable for the alleged negligence of Galleon Beach, as the two corporations are wholly separate and neither is involved in an agency relationship regarding security operations at the Hotel.   Galleon Beach is not a subsidiary of Columbia Sussex, nor does Columbia Sussex own any stock or membership interest in Galleon Beach.  Mitchel Aff at ¶¶ 7, 11, annexed as Ex. 3 to Aff of Robert Brown.  The two corporations do not share corporate documents.  Each has its own independent Board of Directors and its own separate slate of Officers.  Id., ¶¶ 8,10.

For reasons only known to Plaintiff, she named Galleon Beach as a direct Defendant, failed to effect proper service upon Galleon Beach and has since amended her Complaint to delete Galleon Beach as a party.  She has done this despite the consistent admonitions from the other Defendants that Galleon Beach is the owner and operator of The Westin Casuarina.

The relationship between Columbia Sussex and Galleon Beach is set forth in the Service Agreement whereby Columbia Sussex, as an independent contractor, has agreed to provide "accounting and business management services to Galleon Beach."  Mitchel Affidavit at ¶¶ 21 - 23.  Pursuant to that Agreement, Columbia Sussex performed in Kentucky certain bookkeeping, recordkeeping, some group sales and reporting functions for Galleon Beach.  Id.  Like the defendant in McLaughlin, Columbia Sussex did not control the day-to-day operations of Galleon

Beach; Columbia Sussex did not hire or fire Galleon Beach employees or have the authority to do so. Id., ¶¶ 17, 18. Columbia Sussex was never responsible for ensuring the security needs of Galleon Beach's Westin Casuarina. Id., ¶ 27. There was no agency relationship between Columbia Sussex and Galleon Beach regarding security operations at the Hotel. Therefore, since Columbia Sussex did not control the security operations of Galleon Beach, Columbia Sussex cannot be held liable for the type of negligence alleged herein. See, Kerl v. Dennis Rasmussen, Inc., 682 N.W.2d 328 (2004) (A franchisor may only be held liable if it controlled or had the right to control the specific business operation alleged to have caused the plaintiff's harm); See also, McLaughlin, supra at 28 (same).

## CONCLUSION

**FOR ALL THESE REASONS**, Defendants Columbia Sussex Corporation, Starwood Hotels & Resorts Worldwide, Inc. and Westin Hotel Management L.P. respectfully request that Summary Judgment be entered in their favor and that Plaintiff's Second Amended Complaint be dismissed in its entirety.

Dated: March 11, 2008

Yours respectfully,

CORRIGAN JOHNSON & TUTOR
141 Tremont Street
Boston, MA 02111

By: 

John Johnson (BBO#252580)

Robert J. Brown (RB7619)
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, New York 10019
(212) 261-8000

Attorneys for Defendants
Columbia Sussex Corporation
Starwood Hotels & Resorts Worldwide, Inc.
Westin Hotel Management L.P.