UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

KIMBERLY GENEREUX,

                      Plaintiff,          C.A. NO. 05-CV-10879-JLT

v.

COLUMBIA SUSSEX CORPORATION        **LR 56.1 STATEMENT OF**
STARWOOD HOTELS & RESORTS            **MATERIAL FACTS ON**
WORLDWIDE, INC., WESTIN HOTEL        **MOTION FOR SUMMARY**
MANAGEMENT L.P.                                      **JUDGMENT**
                      Defendants.

---

      Defendants Columbia Sussex Corporation, Starwood Hotels & Resorts Worldwide, Inc. and Westin Hotel Management L.P. (hereafter "Defendants"), respectfully submit the following Statement of Material Facts on their Motion for Summary Judgment pursuant to LR 56.1 of the Local Rules of the United States District Court for the District of Massachusetts:

      Defendants respectfully submit that the following material facts are not in dispute:

      1.    Plaintiff Kimberly Genereux is a resident of Middlesex County, Commonwealth of Massachusetts. (Aff. of Robert J. Brown, Exhibit 1 Deposition of Kimberly Genereux at page 5 ("Genereux Depo.")).

      2.    Columbia Sussex Corporation ("Columbia Sussex") is incorporated in the Commonwealth of Kentucky with its principle place of business in Crestview Hills, Kentucky. (Aff. of Robert J. Brown, Exhibit 3 Affidavit of Theodore Mitchel ("Mitchel Aff.") at ¶ 2).

3. Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") is incorporated in the State of Maryland with its principal place of business in White Plains, New York. (Aff. of Robert J. Brown, Exhibit 2 Plaintiff's Second Amended Complaint at ¶ 3).

4. Westin Hotel Management L.P. ("Westin") is a limited partnership organized under the laws of the State of Delaware with its principal place of business in White Plains, New York. (Plaintiff's Second Amended Complaint at ¶ 4).

5. Plaintiff was on vacation in the Cayman Islands in May 2002 and staying at the Plantana Condominiums located on Seven Mile Beach. (Genereux Depo., pp. 30-31)

6. Plaintiff left her condominium at about 5:45 p.m., on Friday, May 3, 2002 to begin a walk along the beach, visit with friends and shop. (Id., at 32-35.)

7. Sometime later at "dusk" plaintiff continued her walk intending to go shopping at Foster's supermarket. (Id., at 37).

8. Plaintiff walked around some stores including a pharmacy and ultimately purchased some food groceries at Foster's Supermarket. (Id., at 42).

9. Plaintiff left the supermarket carrying two plastic bags and her purse. (Id., at 42-43).

10. After shopping, plaintiff began walking back towards her condominium on West Bay Road, a well-lit main road. (Id., at 45)

11. As she continued down West Bay Road, a man in a van stopped alongside of her and yelled "do you want a ride?" Plaintiff responded, "no, I'm fine." (Id., at 45-46).

12. The same van approached plaintiff for a second time. As it slowly passed her location, the driver of the van hung his head outside his window to again ask plaintiff if she wanted a ride, to which plaintiff again declined. (Id., at 48).

13. Shortly thereafter, plaintiff spotted what she thought to be the exact same van approaching her for a third time from the opposite lane of traffic. This made plaintiff nervous, as she continued her walk. (Id., at 50). It was about 10:45 p.m. (Id., at 51)

14. In addition to the three encounters with a man in a van, plaintiff also noticed that a man on a balcony from across the street was watching her as she walked. (Id., at p.52).

15. Because plaintiff felt unsafe and became increasingly nervous, she intended to walk along the beach to reach her condominium complex, rather than continuing along the road. At that time plaintiff entered the private property of The Westin Casuarina Resort and Spa. ("The Westin Casuarina"). (Id., at p. 53).

16. The Westin Casuarina is owned and operated by Galleon Beach Resort, Ltd. ("Galleon Beach"). (Aff. of Robert J. Brown, Exhibit 3 Mitchel Aff., ¶ 4; Exhibit 4 McGovern Aff., ¶ 4; Exhibit 7 Olsen Aff., ¶ 1).

17. Plaintiff did not walk up to The Westin Casuarina and pass through its lobby to go to the beach. Instead of walking through the hotel lobby, or alerting anyone of her being nervous about someone following her and pursuing her, she decided to enter a ladies restroom not located in the main building of the hotel, but in another building on the premises. (Genereux depo. at 58-60).

18. Plaintiff claims that a man entered the restroom shortly after her, she told him to leave, he did, but then he returned immediately and raped her. (Id. at 68-74).

19. Plaintiff left the restroom and walked to the main building of The Westin Casuarina to report the crime. (Id., at 74).

20. Personnel of The Westin Casuarina responded to the plaintiff's request for aid and notified the Royal Cayman Islands Police ("RCIP"). (Aff. of Robert J. Brown, Exhibit 10 Affidavit of Denzil Luke).

21. The RCIP responded to the call for assistance and took the plaintiff from the scene. (Genereux Depo. p. 87).

22. The RCIP also investigated plaintiff's criminal Complaint but her assailant was never identified. (Aff. of Robert J. Brown, Exhibit 9 RCIP Letter September 27, 2005).

23. Plaintiff's friend, whom she visited only hours previously, lives in the condominiums adjacent to The Westin Casuarina. (Genereux Depo., p. 32-35).

24. Plaintiff did not call upon her friend when she became nervous while walking on West Bay Road. She did not stop to see her friend to seek refuge with him, even though she walked directly past his condominium. (Id., at 51).

**COLUMBIA SUSSEX**

25. Columbia Sussex does not own, operate, or manage The Westin Casuarina in Grand Cayman, Cayman Islands, B.W.I. (Mitchel Aff. at ¶ 4).

26. The Westin Casuarina is owned by and operated by Galleon Beach, a Cayman Corporation. (Mitchel Aff. ¶ 4; McGovern Aff. ¶ 4)

27. Galleon Beach is not a direct or an indirect subsidiary of Columbia Sussex. (Mitchel Aff. at ¶ 7).

28. Columbia Sussex does not own any stock or membership interest in Galleon Beach. (Mitchel Aff. at ¶ 11).

29. Columbia Sussex does not provide any facilities maintenance or security services to Galleon Beach nor does it control onsite operations at the Westin Casuarina. (Mitchel Aff. at ¶ 14).

30. Any and all services performed by Columbia Sussex on behalf of Galleon Beach pursuant to the Service Agreement between the parties are performed in the Commonwealth of Kentucky. (Mitchel Aff. at ¶¶ 17, 21).

31. Columbia Sussex does not provide direction to The Westin Casuarina on how to perform its on-site daily operations. Columbia Sussex does not evaluate the performance of employees at The Westin Casuarina, all of whom are employees of Galleon Beach. Columbia Sussex did not (and does not) hire or fire Galleon Beach employees, nor has it ever had the authority to do so. (Mitchel Aff. at ¶¶ 18, 27).

32. Neither in 2002, nor at any time prior or since, has there been any employee at Columbia Sussex to oversee security measures at The Westin Casuarina. Rather, the operator of the property, Galleon Beach, is responsible for its own on-site security operations. (Mitchel Aff. at ¶ 20).

33. No one at Columbia Sussex was ever advised, nor was anyone at Columbia Sussex ever informed, that the safety and security of guests at The Westin Casuarina were in jeopardy in 2002 or previously, such that the incident alleged by the plaintiff in her Complaint was never reasonably foreseeable to Columbia Sussex. (Mitchel Aff. at ¶ 36).

**STARWOOD AND WESTIN**

34. Westin License Company issued various contracts over the years to franchisees establishing Westin franchises in various parts of the world. In 1998, Starwood purchased Westin Hotel Company, which included Westin License Company. For Westin franchisees that continued to operate under Westin License Company Agreements after this purchase, Starwood effectively carried out Westin License Company's part of The Agreement. In 2006, Westin License Company's assets (including franchise agreements) were purchased and assumed by Westin Hotel Management, L.P. (hereinafter "Westin"), a limited partnership, of which Starwood is the General Partner. (McGovern Aff. at ¶ 3).

35. Neither Starwood nor Westin Hotel Management, L.P. own, operate, or manage The Westin Casuarina in Grand Cayman, British West Indies. (McGovern Aff. at ¶¶ 4, 9).

36. The Westin Casuarina is a franchise operation owned and operated by Galleon Beach. (McGovern Aff. at ¶¶ 4, 9, 10).

37. Neither Starwood nor Westin controls the day-to-day security operations at The Westin Casuarina. Security policies of the resort remain the responsibility of Galleon Beach as franchisee. (McGovern Aff. at ¶¶ 16, 21).

38. Starwood did not, and could not, control the operations of franchise hotels, nor has Starwood had any authority to hire or fire employees of franchise operations like The Westin Casuarina. (McGovern Aff. at ¶ 14, 20).

39. There is no one at Starwood responsible for designing security policies for Westin Brand as a whole, nor is there any outside company to review security items for

Westin Brand. (McGovern Aff. at ¶ 18).

**GALLEON BEACH**

40. Galleon Beach, owner and operator of The Westin Casuarina, is not a party to this civil action (Mitchel Aff. at ¶ 4; see Plaintiff's Second Amended Complaint).

41. During the time of the plaintiff's alleged incident, Mr. Niels R. Olsen served as Director of Security and Direct of Food and Beverage at The Westin Casuarina on behalf its owner and operator, Galleon Beach. (Olsen Aff. at ¶ 1).

42. The Westin Casuarina developed its own Security procedures and standards, independent from any other entity, including Westin and Columbia Sussex. (Olsen Aff. at ¶ 10).

43. Neil Olsen, as Senior Manager of The Westin Casuarina, created the control systems and security procedures for the Resort. For instance, he authored the Manual for Hurricane and Severe Storm Procedures, all of which were in use during Hurricane Ivan in 2004. (Olsen Aff. at ¶ 12, 14).

44. Managers of The Westin Casuarina performed security measures on a daily basis, including the periodical patrol of the property multiple times per day. (Olsen Aff. at ¶¶ 15, 16).

45. The Westin Casuarina did not prepare an Incident Report since a Hotel guest was not involved and the police were conducting their own investigation. (Olsen Aff. at ¶ 4).

46. No one from The Westin Casuarina was involved in the alleged assault to the plaintiff. (Olsen Aff. at ¶ 22).

47.     From September 1997 through May 3, 2002 (the period from when Mr. Olsen began at the property through the date of plaintiff's alleged incident), not one complaint had been raised about anyone being attacked by strangers on the property or in the vicinity of the Resort. (Olsen Aff. at ¶¶ 17, 22).

*Dated*: March 11, 2008

*Yours respectfully,*

CORRIGAN JOHNSON & TUTOR
141 Tremont Street
Boston, MA 02111

By: *[signature]*
John B. Johnson (BBO#252580)

*[signature]*
Robert J. Brown (RB7619)
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, New York 10019
(212) 261-8000

Attorneys for Defendants
Columbia Sussex Corporation
Starwood Hotels & Resorts Worldwide, Inc.
Westin Hotel Management L.P.

Error! Unknown document property name.                8