UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-CV-10879-JLT

| | |
|---|---|
| KIMBERLY GENEREUX, ) | |
|     Plaintiff ) | **PLAINTIFF'S MOTION TO STRIKE** |
| ) | **AFFIDAVIT OF ROBERT J. BROWN** |
|     v. ) | **IN SUPPORT OF DEFENDANTS'** |
| ) | **MOTION FOR SUMMARY JUDGMENT** |
| COLUMBIA SUSSEX CORPORATION, ) | **FOR LACK OF PERSONAL** |
| STARWOOD HOTELS & RESORTS ) | **KNOWLEDGE, IMPROPER ARGUMENT,** |
| WORLDWIDE, INC., and ) | **OPINION TESTIMONY, AND** |
| WESTIN HOTEL MANAGEMENT, L.P., ) | **OTHER VIOLATIONS OF FED. R.** |
|     Defendants ) | **CIV. P. 56(e) and L.R. 7.1** |

Pursuant to Fed. R. Civ. P. 56(e), the plaintiff, Kimberly Genereux, hereby moves this Court to strike the entire affidavit of defendants' attorney Robert J. Brown, which was filed in support of the defendants' motion for summary judgment, because of the egregious violations of Fed. R. Civ. P. 56(e) and L.R. 7.1 which appear in the affidavit.

In support of her Motion, the plaintiff states the following:

    1.   The only paragraph of Attorney Brown's affidavit as to which the affiant has personal knowledge is the first paragraph, which identifies Attorney Brown as the affiant.

    2.   The remaining 94 paragraphs of the affidavit consist of argument, opinion testimony by a non-expert witness, hearsay, and references to evidence produced from other sources (sometimes referenced correctly and sometimes not). Counsel does not even make a pretense of claiming personal knowledge of the facts to which he avers.

3.   Attorney Brown's 29 page/95 paragraph affidavit violates Fed. R. Civ. P. 56(e) because the affiant lacks personal knowledge of the facts to which he attests. *Maiorana v. MacDonald,* 596 F.2d 1072, 1079-80 (1979)(affidavit not comply with Fed. R. Civ. P. 56(e) where statements not made on personal knowledge because affiant did not witness events); *Marine Charter & Storage Ltd., Inc. v. Denison Marine, Inc.,* 701 F.Supp. 930, 932 n. 1 (D. Mass. 1988).

4.   Attorney Brown's affidavit does not show that the affiant is competent to testify to the matters stated therein, and, indeed by citing, summarizing, arguing, and frequently mischaracterizing evidence, shows that the affiant is not competent to testify and that the "evidence" he offers is inadmissible hearsay as offered, in violation of Fed. R. Civ. P. 56(e). *Maiorana,* 596 F.2d at 1080 (affidavit not comply with Fed. R. Civ. P. 56(e) where affiant was incompetent to testify because she merely repeated statements made by others, relied upon inadmissible hearsay, made conclusory statements, proffered impermissible speculation, and purported to examine the defendants' thoughts as well as their actions).

5.   Attorney Brown's affidavit violates Fed. R. Civ. P. 56(e) because the affiant seeks to introduce his own inadmissible opinions and characterizations of the evidence and the law which may be applicable to this action as though they were facts of

which he has personal knowledge. *Maiorana,* 596 F.2d at 1080

6. Decisions of this Circuit prohibit the use of affidavits prepared by counsel which improperly attempt to introduce evidence which is not based on personal knowledge. *Albright v. Federal Deposit Insurance Corporation,* 21 F.3d 419 (Table), 1994 WL 109047 at *4 (1st Cir. 1994) (unpublished opinion) (copy filed herewith).

7. Moreover, not only do First Circuit decisions bar such affidavits, but decisions of the Second Circuit, where Attorney Brown's practice is based, long have prohibited counsel from using self-generated, self-serving affidavits which improperly attempt to introduce evidence, inadmissible opinions, and arguments into evidence. *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986)("Attorneys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e) at least since *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950), a position this court has frequently reiterated [citations omitted]"); *Beyah v. Coughlin,* 789 F.2d 986, 989-90 (2d Cir. 1986); *Burger v. Health Insurance Plan of Greater New York,* 684 F.Supp. 46, 54 (S.D.N.Y. 1988) (imposing Rule 11 sanctions where defendant submitted affidavit of counsel in support of motion to dismiss, finding that "[c]ounsel should have known that it was improper to present as evidence an

attorney's affidavit that was not based on personal knowledge", due to Supreme Court's 1950, *Automatic Radio Mfg. Co.* decision so interpreting Fed. R. Civ. P. 56 (e)).

    8.   Attorney Brown's affidavit also violates L.R. 7.1(b)(4) in that it is a memorandum of law disguised as an affidavit, exceeds the 20 page limit for memoranda supporting motions, and was filed without leave of this Court.  The affidavit is 29 pages.  When coupled with the defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, the number of pages of argument totals 49.  Moreover, the "Opinion" of Myers & Alberga, the Westin Casuarina's Cayman Islands' counsel, Mitchel dep., p. 86, is nothing but an additional memorandum of law submitted by the defendants without leave of this Court, as required by L.R. 7.1(b)(4).  The defendants have submitted 63 pages of argument without leave of Court when the three memoranda are totaled.

    9.   Should defense counsel claim personal knowledge of the "facts" averred in order to contort his affidavit into compliance with Fed. R. Civ. P. 56(e), this Court should disqualify counsel under the applicable ethical rules which prohibit counsel from appearing both as counsel and witness in the same action.  S.J.C. Rule 3:07, Mass. R. Professional Conduct 3.7; L.R. 83.6(4).

    For all of the above reasons, this Court should strike and disregard the entire affidavit filed by Attorney Brown.

        Respectfully submitted,
        By her Attorney,

        _____
        MARK F. ITZKOWITZ (BBO# 248130)
        85 Devonshire Street
        Suite 1000
        Boston, MA  02109-3504
        (617) 227-1848
        March 26, 2008

## **CERTIFICATE OF SERVICE**

    I, Mark F. Itzkowitz, counsel for the plaintiff, hereby certify that on this date, I made service of the within document by serving it electronically to registered ECF participants and/or by mailing/faxing/hand-delivering a copy of same to non-registered ECF participants as indicated on the Notice of Electronic Filing ("NEF"), upon the following counsel of record:

| | |
|---|---|
| John B. Johnson, Esquire | Robert J. Brown, Esquire |
| Corrigan, Johnson & Tutor, P.A. | Mendes & Mount, LLP |
| 141 Tremont Street | 750 7th Avenue |
| Boston, MA 02111; and | New York, NY  10019-6829. |

        /s/ Mark F. Itzkowitz_____
        MARK F. ITZKOWITZ (BBO #248130)

Dated:  March 26, 2008

Page 1

UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Civil Action NO. 05-CV-10879-JLT

KIMBERLY GENEREUX,                )
                Plaintiff,        )
VS.                               )
COLUMBIA SUSSEX CORPORATION,      )
ET AL,                            )
                Defendants.       )

- - -

		Deposition of THEODORE R. MITCHEL, a witness, was called on behalf of the Plaintiff as upon cross-examination, pursuant to the Rules of Civil Procedure, commencing at 9:30 a.m., on Friday, September 7, 2007, at the Sheraton Cincinnati, in the "A" Armstrong Room at 2826 Terminal Drive, Hebron, Kentucky, before Terence M. Holmes, professional court reporter, and notary public within and for the Commonwealth of Kentucky.

- - -

1   THEODORE R. MITCHEL
2   of lawful age, a witness herein, being first duly
3   sworn, as hereinafter certified, was examined and
4   deposed as follows:
5           MR. ITZKOWITZ:  What do you want to do
6       on stipulations?  Stand by us as reserve
7       all objections, including motions to strike
8       until the time of trial, except for
9       objections related to privilege.  And
10      dispense with the -- waive the notary and
11      waive the signing and let the witness read
12      to sign, I would certainly want him to do
13      that.
14          MR. BROWN:  Yes.
15          MR. ITZKOWITZ:  Okay.
16          MR. BROWN:  Those are all acceptable
17      to me.
18          MR. ITZKOWITZ:  Great.  Okay.
19              CROSS-EXAMINATION
20  BY MR. ITZKOWITZ:
21      Q.   Can you tell us your full name, sir?
22      A.   It's Theodore R. Mitchel.
23      Q.   And what does the R stand for?
24      A.   Robert.
25      Q.   And, Mr. Mitchel, you've been

1  designated by Columbia Sussex to testify as their
2  witness in response to a deposition for the person
3  with the most knowledge of that corporation, is that
4  correct?
5       A.   Yes.
6       Q.   Okay.  Do you know how it was that you
7  were designated, why you as opposed to other people?
8       A.   I'm assuming it's in my position as
9  secretary treasurer.
10      Q.   Okay.  Have you ever testified before
11 for Columbia Sussex as a designated person under Rule
12 30-B-6?
13      A.   I don't know what 30-B-6 is, but I've
14 testified before for Columbia Sussex, yes.
15      Q.   Okay.  In what types of cases have you
16 testified?
17      A.   Contract dispute cases, civil cases,
18 you know, slip and fall cases, I've testified a
19 number of times.
20      Q.   On the civil cases that you mentioned,
21 did any of them involve claims that people have --
22 that somebody had been injured at the hotels as a
23 result of a criminal incident?
24           MR. BROWN:  At the Galleon Beach
25      Hotel?

1        Q.   Okay.  Are you listed as an officer on
2   the corporate documents for Galleon Beach Resort
3   Limited in the Cayman Islands?
4        A.   Yes.
5        Q.   Okay.  Are you a citizen of the Cayman
6   Islands?
7        A.   No, I'm not.
8        Q.   And I gather there's no difficulty
9   obviously with your holding an office down there
10  without being a citizen?
11       A.   I know there's no problem there.
12       Q.   Where are the Galleon Beach Resort
13  Limited corporate offices located?
14       A.   I don't know the exact address, it's
15  with a law firm that we use on the island, they
16  maintain the official corporate records for the
17  corporation.
18       Q.   And do you know which law firm that
19  is?
20       A.   Meyers & Alberga.
21            (Service Agreement, marked for
                identification as Mitchel Exhibit 1.)
22       Q.   Mr. Mitchel, we just marked a document
23  as Exhibit 1.  Let me just ask you to take a look and
24  ask you if you can identify that for us, please?
25       A.   Yes, this is the Administrative

Westlaw.

21 F.3d 419 (Table)
21 F.3d 419 (Table), 1994 WL 109047 (1st Cir.(N.H.))
**Unpublished Disposition**
(Cite as: 21 F.3d 419, 1994 WL 109047 (1st Cir.(N.H.)))

Page 1

C
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA1 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, First Circuit.
Laurence ALBRIGHT, ET AL., Plaintiffs, Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, ETC., ET AL., Defendants, Appellees.
No. 93-1683

April 1, 1994

Appeal from the United States District Court for the District of New Hampshire [Hon. Joseph A. DiClerico, Jr., *U.S. District Judge* ]

*Michael E. Chubrich,* with whom *Eldredge, Chubrich & Harrigan* was on brief for appellants.

*Gregory E. Gore,* with whom *Ann S. DuRoss* and *Robert D. McGillicuddy* were on brief for appellees.

D.N.H.

AFFIRMED.

Before Cyr, *Circuit Judge,* Aldrich, *Senior Circuit Judge,* and Stahl, *Circuit Judge.*

CYR, *Circuit Judge.*

**1 Plaintiffs-appellants, one hundred-sixty charter members of a defunct health club, challenge a district court decision granting summary judgment to defendants-appellees, various entities that later acquired interests in the real property upon which the health club facility was located. Finding no error, we affirm.

I
BACKGROUND

In 1987, Amoskeag Bank ("the Bank") loaned $7.5 million to Greenleaf Investment Group ("the Developer") to construct a commercial condominium and health club facility (the "Property") in Portsmouth, New Hampshire. The note was secured by a first mortgage on the Property. After the Developer completed construction in 1988, it "leased" the health club facility to a corporation called Greenleaf Sports and Fitness Club, Inc. ("the Health Club"), which sold long-term charter health club memberships to appellants, at prices ranging from $2500 to $3500. [FN1] In April 1990, the Developer defaulted on the note. [FN2] The Bank later exercised its power of sale under the first mortgage, and the Property was acquired by appellee A.B. Club Holdings ("ABCH"), the Bank's wholly-owned subsidiary.

The Health Club vacated the leased premises five months after the Developer's default, but the Bank and ABCH continued to operate a health club facility on the premises, with appellee Club Sports International ("CSI") as its managing entity. During a six-month transitional period following the Health Club's closure, appellants were permitted to use the health club facilities under the terms of their alleged Health Club contracts. In February 1991, however, CSI informed appellants that they must pay higher fees, equaling fifty percent of the fee for *new* club members.

Appellants promptly filed a three-count complaint in New Hampshire Superior Court against, *inter alia,* the Bank, ABCH, and CSI. Count 1 sought a judicial declaration that appellants held a "unique contractual property right" by virtue of their charter club memberships, and that appellees were either the Developer's successors-in-interest or its third-party beneficiaries, and therefore were contractually obligated to honor the charter membership con-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

21 F.3d 419 (Table)
21 F.3d 419 (Table), 1994 WL 109047 (1st Cir.(N.H.))
**Unpublished Disposition**
(Cite as: 21 F.3d 419, 1994 WL 109047 (1st Cir.(N.H.)))

Page 2

tracts, see *Cyr v. B. Offen & Co.*, 501 F.2d 1145, 1152 (1st Cir. 1974) (noting indicia of successor liability). Count 2 sought the imposition of a constructive trust upon all charter membership fees still held by appellees, on the ground that the Bank had been aware from the outset that the Developer used $200,000 of appellants' charter membership fees to repay its construction loan, in violation of the Developer's contractual promise to appellants to segregate their fees in a trust fund. Finally, Count 3 sought compensatory damages (or a refund of all membership fees) and/or treble damages for appellees' unfair and deceptive trade practices in willful violation of the New Hampshire Consumer Protection Act ("NHCPA"), see N.H. Rev. Stat. Ann §§ 358-A:2, 358-A:10 (1993). The Bank's motion to dismiss counts 1 and 3 for failure to state a claim was denied by the superior court. [FN3]

**2 In October 1991, the Bank was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC"), as receiver, removed the case to federal district court. *See* 12 U.S.C. § 1819(b)(2)(B) (1993). Appellants promptly moved for remand to the state court, arguing that resolution of the suit would require "only the interpretation of the law of [New Hampshire]." *Id.* § 1819(b)(2)(D)(iii). FDIC opposed remand, citing its intention to rely on various federal-law defenses, including the unenforceability of the alleged club membership contracts under *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), as codified at 12 U.S.C. § 1823(e), and FDIC's immunity from suit for compensatory damage claims under the NHCPA, *cf. Timberland Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 50 (1st Cir. 1991) (*D'Oench* defense may also foreclose tort-based claims against FDIC based on "secret" agreements), and from "punitive" treble damage awards under the NHCPA, *see, e.g., FDIC v. Claycomb*, 945 F.2d 853, 861 (5th Cir. 1991), *cert. denied*, 112 S. Ct. 2301 (1992). While the remand motion awaited decision, FDIC filed its motion for summary judgment.

The district court later rejected a magistrate-judge's recommendation that the case be remanded to state court for lack of subject matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(2)(D)(iii), [FN4] and granted FDIC's motion for summary judgment on the two remaining counts in appellants' complaint. Appellants appeal from the summary judgment order, and from the district court order denying their motions for reconsideration.

II
DISCUSSION
A. *Removal Jurisdiction*

Appellants argue that FIRREA § 1819(b)(2)(D)(iii) ousts the district court of jurisdiction because their complaint alleged one dispositive state-law claim unaffected by any federal defense advanced by FDIC. Specifically, drawing on an oblique mention in Count I that their charter memberships confer a "unique contractual *property* right," appellants now argue that these memberships are roughly akin to mechanic's liens under New Hampshire law.

We have held that FDIC may not invoke the *D'Oench Duhme* defense to avoid certain state-law liens which attach to a failed bank's assets prior to FDIC's appointment as receiver. *See Bateman v. FDIC*, 970 F.2d 924, 927 (1st Cir. 1992) (Maine mechanic's lien not an "agreement" within meaning of *D'Oench* doctrine). In *Capizzi v. FDIC*, 937 F.2d 8 (1st Cir. 1991), however, we held that FIRREA § 1819(b)(2)(D)(iii) embodies a *deliberate congressional abrogation* of the "well-pleaded complaint" rule, *see Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983) (defining phrase "arising under" federal law), which in other contexts permits a district court to invoke its nondiversity removal jurisdiction only if the complaint *alone*, without reference to the character of any anticipated defense under federal law, discloses that the state-law claim implicates a substantial federal question. *Capizzi*, 937 F.2d at 11 (noting that § 1819(b)(2)(D)(iii) "expanded the FDIC's powers, *and* ... *federal jurisdiction* ") (emphasis added); *see Diaz v. McAllen State Bank*, 975 F.2d 1145, 1149 (5th Cir. 1992); *Reding v. FD-*

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

21 F.3d 419 (Table)
21 F.3d 419 (Table), 1994 WL 109047 (1st Cir.(N.H.))
**Unpublished Disposition**
(Cite as: 21 F.3d 419, 1994 WL 109047 (1st Cir.(N.H.)))

Page 3

*IC,* 942 F.2d 1254, 1258 (8th Cir. 1991); *Lazuka v. FDIC,* 931 F.2d 1530, 1535 (11th Cir. 1991). Thus, FIRREA § 1819(b)(2)(D)(iii) directs the district court "to consider the case *as a whole*-complaint and likely defenses"-and "to gauge [the] ... *likely significance* " of those defenses. *Capizzi,* 937 F.2d at 10, 11 (emphasis added); *see Diaz,* 975 F.2d at 1149-50 ("[A]sserting a federal defense will not alone prevent remand ... [,] the FDIC must assert a defense that raises *colorable* issues of federal law.") (emphasis added).

**\*\*3** The district court relied on several reasoned grounds for its ruling disallowing appellants' motion for remand. We affirm on a singularly sufficient ground. The complaint asserts several alternative claims for relief. Even if their so-called property-right or "mechanic's lien" claim were sound on the merits, and further, assuming it were found invulnerable to the *D'Oench Duhme* defense by reason of the *Bateman* exception, appellants also asserted willful violations of the NHCPA for which treble damages might be recoverable because of appellees' *interim* refusal to permit them to use the health club facilities under the terms of their original membership contracts. In turn, the treble-damages demand under the NHCPA would implicate FDIC's two federal defenses to any NHCPA recovery. *See Timberland Design,* 932 F.2d at 50; *Claycomb,* 945 F.2d at 861. On the other hand, if appellants' "mechanic's lien" claim were found nonmeritorious, the court would be required to rule on their claim for compensatory damages for breach of their membership contracts, based on appellees' alleged liability as the contractual successors of the Developer or the Health Club. In the latter event, the court would be required to rule on the *D'Oench Duhme* defense.

Finally, even at the preliminary jurisdictional stage, FDIC's various federal defenses, *see supra* p. 4, and particularly its *D'Oench Duhme* defense, were *more* than colorable. *See Bateman,* 970 F.2d at 926-27 (under *D'Oench Duhme,* alleged "agreement" must be in writing, executed by bank, approved by bank's board of directors, and kept continuously in bank records from date of execution). Even as late as summary judgment, for example, appellants had yet to produce a copy of the charter membership contract, let alone a copy of the construction loan agreement, although the former document presumably was within their control, and the *existence* and *whereabouts* of both documents form the crux of their alleged contract, "equitable lien," and NHCPA claims. Moreover, given appellees' allegations that the Health Club was a corporate entity *distinct* from the Developer, and never directly contracted with the Bank in any capacity, FDIC's claim that no written "agreement" appeared in the Bank's records on the date of FDIC's appointment is far from frivolous. The district court correctly denied the motion for remand.

B. *Summary Judgment*

A summary judgment ruling is reviewed *de novo,* employing the same standards incumbent on the district court, and resolving all evidentiary issues in the light most favorable to appellants. *Gaskell v. The Harvard Coop. Soc'y,* 3 F.3d 495, 497 (1st Cir. 1993). [FN5]

At the outset, we note that appellants' claims based on their alleged status as contractual successors to, and third-party beneficiaries of, the Health Club have been waived, as has their NHCPA claim, because of their failure to present any developed argument on these issues in their appellate brief. *See Rhode Island Hosp. Trust Nat'l Bank v. Howard Communications Corp.,* 980 F.2d 823, 828 n. 8 (1st Cir. 1992) (issues raised in appellate brief in a perfunctory manner, without any attempt at developed argumentation, are deemed waived). Moreover, appellants concede that these issues were "never raised" in the only two pertinent memoranda submitted to the district court. Brief for Appellants at 12; *see Vanhaaren v. State Farm Mut. Auto. Ins. Co.,* 989 F.2d 1, 4-5 (1st Cir. 1993) (issues raised for the first time on appeal are deemed waived for failure to preserve).

**\*\*4** Appellants fare little better on their only re-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

21 F.3d 419 (Table)  
21 F.3d 419 (Table), 1994 WL 109047 (1st Cir.(N.H.))  
**Unpublished Disposition**  
(Cite as: 21 F.3d 419, 1994 WL 109047 (1st Cir.(N.H.)))

Page 4

maining claim; *viz.,* their alleged "lien" on the Property, roughly analogous to a state-law mechanic's lien, assertedly entitled to priority over the legal title acquired by the Bank through foreclosure. Although appellants continued to press this highly dubious claim even at oral argument, as though it were founded on some straightforward extrapolation from New Hampshire law, neither at argument nor in their appellate brief have appellants articulated *any* rationale for their claim, or cited to *any* New Hampshire state court decision offering the remotest support. [FN6] If a claimant cannot, or will not, attempt a succinct and cogent articulation of its claim *in its appellate brief,* it may not expect the court to supply it. [FN7]

Even assuming their chameleonic liability theories were preserved below, and raised on appeal, summary judgment was warranted. Appellants premised their "mechanic's lien" theory on a basic maxim of New Hampshire law: "It is well settled that if a party [*viz.,* the Bank] is present and sees another [*viz.,* the Developer or Health Club] sell and convey *property [viz.,* membership contracts] to which he may assert title, without disclosing his title, or objecting to the conveyance, and the sale is made with full knowledge on his part, he will be estopped by his silence from setting up his *title* thereafter." *Corbett v. Norcross,* 35 N.H. 99, 115 (1857) (emphasis added).

In their state court memorandum, *see supra* note 6, appellants cite a string of New Hampshire cases containing general discussions of the equitable estoppel and good faith purchaser doctrines. Appellants attempt to predicate the applicability of those broad doctrines in the present case on four core allegations: (1) the Bank knew *before* the Developer executed its mortgage that the Developer intended to sell charter memberships to finance its repayment of the construction loan; (2) the construction loan agreement contained a provision wherein the Bank "agreed" to accept club membership fee proceeds in repayment of the loan; (3) after June 1988, the Bank learned (or should have learned) that the Developer had promised appellants it would establish a segregated trust fund to hold all membership fees, and that the Developer willfully failed to abide by this promise; and (4) the Bank knowingly received $200,000 in membership fee proceeds in repayment of its loan. [FN8]

The fundamental problem for appellants is their failure to produce competent evidence supporting these crucial factual allegations. *See Town of Nottingham v. Lee Homes, Inc.,* 118 N.H. 438, 442 (1978) ("the party asserting [equitable] estoppel bears the burden of proving it"); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (where nonmovant under Rule 56 would bear the burden of proof at trial, its failure to produce sufficient evidence to generate a trialworthy issue warrants summary judgment). Most conspicuously, appellants have yet to proffer the alleged charter membership contracts, presumably accessible to them *without resort to discovery.* [FN9] Nor have they presented any other evidence to rebut appellees' proof, in the form of a sworn affidavit by the Bank's former vice-president, that the *Developer* did not directly contract with appellants, but *leased* the health club facilities to a distinct corporate entity (*i.e.,* the Health Club) which *in turn* entered into club membership contracts with the appellants. Further, appellants' *sole* evidence of the alleged agreements and communications between the Bank and the Developer is an affidavit by appellants' *attorney,* generally relating evidence appellants would present *at trial. But see, e.g., Garside v. Osco Drug, Inc.,* 895 F.2d 46, 49 (1st Cir. 1990) ("[A] mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax."). The affidavit is unaccompanied by documentary support. *See* Fed. R. Civ. P. 56(e); 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2722, at 56-58 (2d ed. 1983) (averments made in Rule 56 affidavit to unattached contracts and documents may be sufficient to establish a triable issue as to their existence, but not as to their *terms* ). Nor does the affidavit present any other basis for evaluating the affiant-attorney's person-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

21 F.3d 419 (Table)  
21 F.3d 419 (Table), 1994 WL 109047 (1st Cir.(N.H.))  
**Unpublished Disposition**  
**(Cite as: 21 F.3d 419, 1994 WL 109047 (1st Cir.(N.H.)))**

Page 5

al knowledge of contractual transactions between the Bank and the Developer, the Developer and the Health Club, or the Health Club and appellants. *Cf. Postscript Enters. v. City of Bridgeton*, 905 F.2d 223, 226 (8th Cir. 1990) (" 'Attorneys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e).' ") (citing ***Kamen v. American Tel. & Tel. Co.,*** **791 F.2d 1006, 1011 (2d Cir. 1986))**. [FN10]

**\*\*5** The district court judgment must be affirmed.

*Affirmed.*

> FN1. The charter memberships entitled appellants to use the club facilities, subject to their payment of annual renewal fees substantially below the annual fee for non-"charter" members.
>
> FN2. The Developer eventually initiated a chapter 11 reorganization proceeding, which was later converted to chapter 7. There is no evidence that appellants filed proofs of claim in the bankruptcy proceedings.
>
> FN3. The superior court granted the motion to dismiss Count 2 (constructive trust), citing appellants' failure to allege that the Bank owed appellants a fiduciary duty. As appellants have not reasserted their constructive trust claim, we disregard case law cited by appellants to the extent it relates to the imposition of constructive trusts under New Hampshire law. *See, e.g., Milne v. Burlington Homes, Inc.,* 117 N.H. 813 (1977).
>
> FN4. As a threshold argument, appellants claim that the magistrate-judge's report and recommendation issued pursuant to a referral under 28 U.S.C. § 636(b)(1)(A), rather than subsection § 636(b)(1)(B), because a motion to remand to state court for lack of federal jurisdiction is "nondispositive."
>
> Appellants argue that the district court improperly reviewed the magistrate-judge's findings *de novo,* rather than for "clear error" or as "contrary to law." We disagree. The magistrate-judge's report resolved no disputed jurisdictional facts. Instead, it dealt with a pure issue of law-whether FDIC's anticipated defenses were legally sufficient to foreclose remand to the state court. Under *either* subsection 636(b)(1)(A) *or* (B), the recommended conclusions of law were subject to *de novo* review by the district court, and, in turn, by the court of appeals.
>
> FN5. The district court made four relevant determinations in granting summary judgment for FDIC. First, appellants generated no trialworthy factual claim that appellees (by acquiring title to the real property which the Health Club *leased* from the Developer) became contractual successors of the Health Club, or ever acquired the Health Club's assets or assumed its liabilities. Second, appellants, as alleged third-party beneficiaries, could not enforce the Health Club membership contracts against appellees, since third-party beneficiaries may sue, but may not *be sued,* for contract damages. Third, appellants cited no legal authority or supporting facts for their novel state-law theory that their charter membership contracts were akin to mechanic's liens; that is, property interests "running" with the land. Specifically, plaintiffs failed to show that they supplied the Developer with labor or materials, or perfected their alleged "lien" as required under New Hampshire law. Finally, because appellees were not contractually bound to the terms of the Health Club contracts, appellees could not have violated the NHCPA.
>
> FN6. Instead, their appellate brief refers to a nine-page memorandum of law in oppos-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

21 F.3d 419 (Table)
21 F.3d 419 (Table), 1994 WL 109047 (1st Cir.(N.H.))
**Unpublished Disposition**
(Cite as: 21 F.3d 419, 1994 WL 109047 (1st Cir.(N.H.)))

Page 6

ition to the Bank's *motion to dismiss* which appellants submitted to the New Hampshire Superior Court almost three years ago, *before* FDIC ever removed the case. *But see* Fed. R. App. P. 28(a)(5) (appellate brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities ... relied on"); *cf. Katz v. King,* 627 F.2d 568, 575 (1st Cir. 1980) ("[T]he argument must appear within the *four corners* of the brief filed in this court. Attorneys cannot circumvent FRAP 28(g) by incorporating by reference another brief filed in another forum.") (emphasis added). Furthermore, procedural lapses aside, nowhere in their three-year-old state court memorandum does the key phrase in their "moving target" offensive-"mechanic's lien"-ever appear.

FN7. Appellants further argue that the superior court's denial of appellees' motion to dismiss Count 1 was somehow dispositive on the question whether their "mechanic's lien" analogy is viable under New Hampshire law. We disagree. The state court premised its ruling on the ground that Count 1 stated a valid claim for *contractual successor liability* only, not an equitable estoppel or mechanic's lien claim.

FN8. Appellants now concede that their charter memberships cannot meet the *literal* requirements of a mechanic's lien under New Hampshire law, since appellants neither supplied labor or materials, nor perfected their alleged "liens." *See supra* note 5. Appellants present no argumentation or authority which would indicate that perfection is a dispensable requisite to mechanic's lien priority over a duly recorded mortgage lien. *See* N.H. Rev. Stat. Ann. § 447:10 (1993). Thus, appellants' *Bateman* exception claim, *see supra* at p. 6, fails as a matter of law.

FN9. Even if they had presented competent Rule 56 evidence on these factual matters, appellants would still face three considerable hurdles on the merits. *See also* note 10 *infra.* First, unlike all of the aggrieved parties in the cited New Hampshire cases, appellants have not made the threshold showing that the law of any state recognizes health club memberships as "property" interests. The only case appellants cite is wholly unsupportive. *See Silver Hills Country Club v. Sobieski,* 361 P.2d 906, 907 (Cal. 1961) (considering analytically distinct question whether the sales of club memberships were "securities" subject to regulation California's Corporate Securities Act).

Second, the New Hampshire cases appellants cite involve a narrow and distinctive species of fraud; namely, omissions and other misleading conduct (*e.g.,* silence, execution of releases, sharing in sale proceeds) by a defendant which lead the party acquiring the property to believe that the defendant neither has nor will assert any claim, superseding title, or competing interest in the property conveyed. *See, e.g., New Hampshire Sav. Bank v. National Rockland Bank,* 93 N.H. 326, 329 (1945) (estopping executor of decedent owner of passbook savings account, where decedent had made *inter vivos* transfer of passbook to daughter-in-law, along with a withdrawal form endorsed in blank, and daughter-in-law pledged passbook as collateral for personal loan). Appellants' promised evidence would not show that the Bank *concealed* its *interest* in the Property, nor can appellants plausibly dispute that they were at all times on constructive notice of the Bank's recorded mortgage.

Finally, even if *the Bank* might be estopped from asserting its mortgage and

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

21 F.3d 419 (Table)
21 F.3d 419 (Table), 1994 WL 109047 (1st Cir.(N.H.))
**Unpublished Disposition**
**(Cite as: 21 F.3d 419, 1994 WL 109047 (1st Cir.(N.H.)))**

Page 7

power of sale, appellants offer no explanation as to how such an estoppel would insulate them from the defenses of the Bank's *successors*-particularly the FDIC with its *D'Oench Duhme* defense-absent evidence that these grantees *knew* of the *facts* giving rise to a bar to the Bank's claim. *See, e.g., InternationalChimney Corp. v. 26 West Spring St. Assocs.*, 561 N.Y.S.2d 933, 934 (App. Div. 1990) ("[E]quitable estoppel should be applied with ... even *greater caution* when sought to be invoked against a *subsequent owner*.") (emphasis added).

FN10. Nor does the record indicate that appellants ever requested "a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f). *See, e.g., De la Torre v. Continental Ins. Co.*, 15 F.3d 12, (1st Cir. 1993) [1994 U.S. App. LEXIS 1502, at p*9 (1st Cir. Jan. 31, 1993) ].

21 F.3d 419 (Table), 1994 WL 109047 (1st Cir.(N.H.)), Unpublished Disposition

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.