UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------

KIMBERLY GENEREUX,

                      Plaintiff,

v.

COLUMBIA SUSSEX CORPORATION
STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., WESTIN HOTEL
MANAGEMENT L.P.

                      Defendants.

------------------------------------------------

**LEAVE TO FILE GRANTED ON**
**MARCH 28, 2008**

**C.A. NO. 05-CV-10879-JLT**

**REPLY MEMORANDUM OF LAW**

Defendants respectfully submit this Memorandum of Law in Reply to Plaintiff's Memorandum in Opposition ("Opp. Memo") and in further support of their Motion for Summary Judgment. Plaintiff has improperly introduced inadmissible hearsay into the record; misstated and mischaracterized deposition testimony in a desperate attempt to mislead the Court into believing there to be an issue of fact; and finally, Plaintiff misstated and misapplied the controlling law.

A.      **Improper Use of Hearsay**

At numerous places throughout Plaintiff's Opp. Memo Plaintiff cites to three depositions taken in two different matters, Keppner v. Galleon Beach Resort, Ltd., et. als., Index No. 011724/2003 (N.Y. Sup. Ct., Erie County) and Reynolds v. Westin Hotel Company, et. als., U.S.D.C., E.D. KY Case No. 97-77 (March 16, 1998). Both cases are separate and independent from the instant action. (See Opp. Memo at pp. 7, 13, 14, 16, and 19). Not only is this testimony inadmissible hearsay but its production appears to be in direct violation of a protective order of the United States District Court for the Eastern District of Kentucky entered on or around September 9, 1997, as clearly noted on the deposition transcript of Theodore Mitchel in the Reynolds action where it provides "Confidential – Testimony Contained Herein Subject to Protective Order and Should Be Filed Under Seal."

Under Federal Rule of Evidence 804(b)(1), a party may offer into evidence the testimony of a witness taken in a deposition of another proceeding *only where* (1) the declarant is unavailable as a

witness in the current proceeding,[1] *and* (2) "the party against whom the testimony is now offered …

had an opportunity and similar motive to develop the testimony by direct, cross, or redirect

examination." Fed. R. Evid. 804(b)(1). Theodore Mitchel is not only available; he testified in this

case on September 7, 2007 and has provided 211 pages of sworn deposition testimony.[2]

Nevertheless, Plaintiff's counsel finds it necessary to reference depositions of unrelated cases from

1998 and 2003 in an attempt to trick this Court into believing that there is an issue of material fact.

Plaintiff's counsel either ignored the Rules of Evidence or confused Rule 804(b)(1) with Rule

801(d)(1) which allows a party to use prior inconsistent statements of a witness, but only for the

purpose of cross examination and only "at the trial or hearing." Fed. R. Evid. 801(d)(1). As we are

not at trial and Plaintiff has introduced this testimony as evidence to establish an issue of fact, the

Court should find this prior deposition testimony to be inadmissible hearsay. The Court should

therefore strike the testimony from the record and disregard its use. Accordingly, the Plaintiff's

arguments that these depositions allegedly support (i.e. – Columbia Sussex somehow "owns" or

"controls" Galleon Beach) should be disregarded, as Plaintiff has failed to show a genuine issue of

material fact.

A Protective Order was filed in the <u>Reynolds</u> case regarding the confidentiality of all

documents, and we are constrained to honor that Order even though Plaintiff did not. We must,

however, note that Plaintiff did not provide the Court with an accurate copy of Mitchel's testimony.

Instead, Plaintiff provided a copy which has been sliced and rearranged. For example, Mitchel's

testimony on page 128, line 20, is not continued with line 21, but spliced to continue (as if the same

sentence) with testimony from page 132, line 13 of the actual deposition transcript. In Plaintiff's

excerpt of the deposition transcript to the Court, she omitted the page and line references to hide her

revisions. Similarly, page 123 line 9 of Mitchel's transcript is followed not by line 10 of that page,

but by page 127 line 2. We are exploring whether the Protective Order may be lifted to produce

---

[1] A declarant is "unavailable" to testify if (1) he cannot testify due to an asserted privilege; (2) he refuses to testify on the subject matter of the offered testimony; (3) he testifies to a lack of memory; or (4) he fails to attend the hearing and cannot be called to the stand to testify in the instant matter. Fed. R. Evid. 804(a).
[2] Kellie Ann Lowell, a former employee at The Westin Casuarina in 1998, was never asked to testify in this action and therefore never "refused to testify".

Error! Unknown document property name.

these pages for the Court's reference.  The unidentified splicing of the deposition testimony is emblamatic of Plaintiff's approach to this Motion as her Opposition is replete with misrepresentations and mischaracterizations of testimony.

**B.     Improper Characterizations of Testimony**

Beginning on  page 13 of Plaintiff's Opp. Memo, she argues that Columbia Sussex either operates or controls The Westin Casuarina.  To support this assertion, Plaintiff cites to inadmissible hearsay from unrelated depositions and grossly mischaracterizes the testimony in this record.  For example, Plaintiff argues that Mitchel's deposition testimony supports a finding that "[t]he officers of Columbia Sussex hold identical offices in Galleon Beach."  (Opp. Memo at p. 14, citing to Mitchel Aff. at pp. 80-82) , However, Mitchel never testified that all the officers of Columbia Sussex hold identical offices in Galleon Beach.  Rather, Mitchel only noted that certain people hold similar offices at both companies.  In 2002 (the year Plaintiff was allegedly assaulted), only three of the five officers at Galleon Beach held positions in both Galleon Beach and Columbia Sussex.  (Mitchel Aff. at ¶ 8).

Plaintiff also cites to John McGovern's deposition testimony to argue that "Columbia Sussex employees told Starwood Vice President McGovern" that Columbia Sussex somehow owned The Westin Casuarina in the Cayman Islands.  (Opp. Memo at p. 15).  However, McGovern never testified that Columbia Sussex employees told him this.  Rather, McGovern stated that he might have heard "through a conversation" (and thus independent of any personal knowledge) that Columbia Sussex had a hotel in the Cayman Islands.  (McGovern Dep. at pp. 105-106).  Plaintiff should not pass speculative inferences and personal interpretations of deposition testimony onto the Court as fact, especially where such inferences are based upon inadmissible hearsay.  Of course, McGovern testified on behalf of Defendants Starwood and Westin, and not Columbia Sussex.

Plaintiff incorrectly states, "[w]hen reminded of the distinction that the defendants seek to make between the functions and duties of Columbia Sussex and Galleon Beach, Mitchel responded 'we're splitting hairs.'"  (Opp. Memo at p. 18).  Such a characterization is completely unfounded.

Mitchel testified that he might perform one duty that benefits both companies on behalf his role as an officer in both Columbia Sussex and Galleon Beach. (Mitchel Dep. at p. 138). He never testified that all of his functions and duties are done on behalf both companies, nor did he testify that the two organizations share the same functions on a company-wide basis. To pull one line of testimony from a deposition out of context and use it to somehow claim that the two companies are the same is wholly inappropriate. Plaintiff dose this repeatedly.

On page 26 of her Opp. Memo, Plaintiff mischaracterizes Mitchel's testimony by stating: "The Westin Casuarina manager answered directly to Columbia Sussex' owner/president, William Yung, including with respect to the Westin Casuarina's security needs." The correct testimony is as follows:

> Q:  Was there somebody that Mr. Szydlowski reported to at Columbia Sussex in terms of monitoring what was going on the properties in the Cayman Islands?
> A: I'll have to be very careful that not at Columbia Sussex. Mr. Yung as President of Galleon Beach Resort Limited, which owns the Westin Casuarina, Mr. Szydlowski would have reported to Mr. Yung in that capacity.
> (Mitchel Dep at p. 49).
>
> * * *
>
> Q:  ... Is there anybody at the Columbia Sussex Corporation who reviews the security needs of the Westin Casuarina?
> A: Mr. Young (sic) in his capacity as president, would review that with the General Manager.
>     MR. BROWN (Defending Counsel):   In his capacity as President of Galleon Beach.
> A: In his capacity as President of Galleon Beach, yes.
> (Mitchel Dep. at p. 78).

Plaintiff has been made aware of the fact that Mr. Yung served as President for both Columbia Sussex and Galleon Beach. Mitchel's testimony is very clear. Nevertheless, Plaintiff mischaracterized Mitchel's testimony to make it seem as if The Westin Casuarina manager answered directly to Columbia Sussex. Even further, Plaintiff makes the statement that Columbia Sussex "pays" Westin Casuarina employees, which is also misleading (Opp. Memo at p. 27). Mitchel's testimony does not establish that Westin Casuarina employees are paid with Columbia Sussex money, but that Columbia Sussex processes the payroll by delivering paychecks and retaining certain personnel files in connection therewith. (Mitchel Dep. at pp. 66-69). Plaintiff also fails to note

Mitchel's distinction between Hotel Management Agreements and The Service Agreement vis-à-vis Westin Standards (Opp. Memo at p. 13); just as Plaintiff asserts that guest escorts were required (Opp. Memo at p. 12) when in fact they were not, if not requested.  (McGovern Dep. pp. 220-221). Plaintiff misleads the Court by misstating and mischaracterizing testimony because she cannot prove her case on the evidence in the record and instead elects to unilaterally disparage facts she cannot refute with proof (e.g. – The Service Agreement "ostensibly" sets forth; Cayman statistics are "obfuscated").  There exist no genuine issues of material fact.

With respect to certain documentary evidence, Plaintiff falsely argues "Columbia Sussex did not identify either itself or Galleon Beach as the Westin Casuarina franchisee on printed hotel documents which Westin required contain such identification." (Opp. Memo at p. 16).  Plaintiff cites to McGovern's deposition where he was shown merely one "printed hotel document" that may not have referred to Galleon Beach.  The evidence in the record has established otherwise.  Mr. Niels Olsen attests in his sworn Affidavit that signs at the front desk of the Hotel clearly state "The Westin Casuarina Resort & Spa is independently owned and operated by Galleon Beach Resort Ltd. Under a license issued by Westin."  (Olsen Aff. at ¶ 3).  Several other assertions by Plaintiff regarding operations at the Westin Casuarina are entirely unsupported, and even contradicted, by admissible evidence.  Contrary to Plaintiff's unsupported (and unsupportable) assertions: The Westin Casuarina developed its own security policies uncontrolled by either Starwood or Westin (Id. at ¶ 10); The Westin Casuarina clearly posted signs throughout its property advising trespassers of the Hotel's restricted access to "Registered Guests Only" (Id. at ¶ 11)[3]; The Westin Casuarina was a "very safe resort" in 2002 (Id. at ¶ 21) and the surrounding neighborhood had an "extremely low crime rate" (Id. at ¶ 8).  Nevertheless, Galleon Beach's Olsen maintained a close relationship with the Royal Cayman Island Police (Id. at ¶ 8) who were available on a daily basis to appear on the Hotel premises.  (Id. at ¶ 19).  Plaintiff did not conduct discovery of the owner and operator of The Westin Casuarina.

---

[3] Plaintiff conveniently maintains that no such signs were posted because the select photographs taken by her counsel fail to depict those signs.
Error! Unknown document property name.

Instead she attempts to support her arguments regarding operations at The Westin Casuarina with mere speculation and misleading characterizations of existing deposition testimony.

Plaintiff refers to architectural diagrams which identify Columbia Sussex as the owner of The Westin Casuarina. However, Plaintiff failed to note that Galleon Beach hired the architect and paid for those diagrams. (Mitchel Aff. at para. 13). Columbia Sussex cannot control the statements of a third-party being paid to conduct services on behalf a separate organization. Similarly, Plaintiff identifies "industry publications" that list Columbia Sussex as owner of The Westin Casuarina. Columbia Sussex maintains no control over these third parties when they publish such statements in certain directories.[4] Plaintiff also argues that advertisements fail to identify the true relationship between Columbia Sussex and the resort. (Opp. Memo at p. 15). However, advertisements of The Westin Casuarina authorized by Galleon Beach do not claim Columbia Sussex as owner of the resort.

Regarding plaintiff's suggestion that Columbia Sussex records retained on behalf of Galleon Beach should have indicated Mr. Niels Olsen as a Security Director, Mr. Olsen was hired in 1997 by Galleon Beach as the Director of Food and Beverage. As he attested in his Affidavit, he was later also assigned the position as Director of Security. Having received the Plaintiff's Opp. Memo and the reference to Mr. Olsen not being listed on any list of Galleon Beach employees in the custody of Columbia Sussex as a security employee, we reviewed the Galleon Beach employee list and have confirmed that Mr. Olsen was listed with a hire date in 1997 as a Food and Beverage Director (see, e.g. Exhibit "A"), the first position for which he was hired. A search of the Galleon Beach list of employees also disclosed that certain individuals were listed at various dates prior to May 2002 with designation of "Hotel Security" or "Night Security." Not until the Plaintiff's Opp. Memo was received was it learned that a prior response to a discovery request for documents naming any Galleon Beach employees providing security was incorrect. When the employee payroll lists were initially reviewed it was determined that Columbia Sussex does not have a document indicating the

---

[4] It further cannot create the potential for apparent authority so as to bind Columbia Sussex to any possible negligence of Galleon Beach, because such authority is determined by the subjective beliefs of a person in Plaintiff's position (Ms. Genereux's position). As these statements were purportedly published in "industry publications" of "hotel directories" and not in travel brochures or advertisements, Ms. Genereux would never have seen or read these statements; nor does she claim to have; and she was never a Registered Guest.

Error! Unknown document property name.

identity of the bartender or manager on duty on the date of plaintiff's alleged incident; and that response was provided. A search was also previously conducted for documents identifying "vendors paid for security services and security equipment/devices" and Columbia Sussex responded that it does not have such documents. When the Galleon Beach payroll records search was made it focused on the bartender and managers on duty at Galleon Beach on the date of plaintiff's alleged incident and not on security personnel in general hired at times prior to May 3, 2002. We have now learned that a prior response was incorrect and Defendant Columbia Sussex' prior response regarding such a document must now be amended. Annexed as Exhibit "B" is the list containing the names of Galleon Beach employees who were designated as "Night Security" or "Hotel Security" on dates prior to May 3, 2002.

While counsel regrets the inadvertent omission to produce this list previously, it is respectfully submitted that no prejudice has occurred. Defendant Columbia Sussex does not control the individuals on the Galleon Beach employee list. Columbia Sussex has always informed plaintiff that Galleon Beach is the owner and operator of The Westin Casuarina. Columbia Sussex provided all of its information regarding the alleged incident including a statement from the former Galleon Beach employee Mr. Denzil Luke that he spoke with the plaintiff on the date of her alleged incident; and a RCIP letter report. The General Manager of The Westin Casuarina, a Galleon Beach employee, was identified to the plaintiff. The plaintiff named Galleon Beach as a party defendant, but never performed any discovery of Galleon Beach. The inadvertent late disclosure by Columbia Sussex of a list of Galleon Beach employees who were hired by Galleon Beach at various times prior to May 3, 2002 as "Hotel Security" or "Night Security," from among the thousands of pages reviewed and produced by defendants does not alter the fact that these individuals were neither employees of Columbia Sussex, nor under its control.

**C.    Plaintiff Mischaracterized Applicable Law**

In Plaintiff's Opp. Memo, Plaintiff agrees with the position taken by Defendants that "the existence of a duty of care depends on a number of factors, summarized as the foreseeability of

damage . . .". (Opp. Memo at p. 33) Plaintiff quotes at length from the opinion in <u>Attorney General v. Hartwell</u>, [2004] UKPC 12, which holds that a necessary requirement for the existence of a duty of care is "foresight that carelessness on the part of the defendant may cause damage of a particular kind to the plaintiff." The Court explained that "[t]here must be reasonable foreseeability of a risk which a reasonable person would not ignore." It further explained that "the risk must be real" in a sense that a reasonable person "would not brush it aside as farfetched".

The negligent security cases referenced in Plaintiff's Opp. Memo involve discussions of the foreseeability issue, and how that issue relates to a duty of care imposed upon a defendant. In <u>Allison v. Rank City Wall Canada LTD.</u>, 6 D.L.R. 4th 144 (Ont. 1984), the court concluded that an attack on the plaintiff in an underground garage by a stranger was reasonably foreseeable by the defendant because the defendant knew it was dealing with an underground garage in an urban setting where, in recent years, there had been "more than a number" of assaults, including sexual assaults, on people in the garage. In <u>Modbury Triangle Shopping Centre, PTY LTD v. Anzil</u>, 176 A.L.R. 411, 419 (Aust. 2000) the Court held that an occupier of land has no duty to prevent harm to another if caused by criminal conduct, even if such conduct is foreseeable. In reaching this decision, the court considered evidence of previous criminal activity in the area of the parking lot, as well as the reasonable foreseeability of the risk involved. In <u>Q v. Minto Management LTD</u>, 15 D.L.R. 4th 581 (Ont. 1985), the court found for the plaintiff tenant, who was raped by an intruder in her apartment, holding that the risk of violent attack was reasonably foreseeable based upon an earlier attack in the same apartment complex and the defendant's failure to properly supervise the use of apartment master keys.

Plaintiff also cites three Massachusetts cases involving alleged negligent security resulting in violent attacks by intruders[5]. In each, the court looked to the reasonable foreseeability of the risk of violent attack, considering the location/neighborhood where the attack occurred, as well as previous

---

[5] <u>Fund v. Hotel Lanks of Boston, Inc.</u>, 418 Mass. 191, 192-193 (1994); <u>Sharpe v. Peter Pan Bus Lines, Inc.</u>, 401 Mass. 788, 793 (1988); <u>Mullins v. Pine Manor College</u>, 389 Mass. 47, 62 (1983).
Error! Unknown document property name.

incidents of violence or assaults. In each case, the Supreme Judicial Court found that the defendant knew or should have known about the risk of violent attack, based upon the referenced factors.

In each of these cases cited by Plaintiff, the courts looked to the sufficiency of the evidence of prior criminal activity and conduct to determine whether a risk was reasonably foreseeable. On page 48 of the Opp. Memo, Plaintiff argues that there is sufficient evidence in our case to find that the criminal conduct which caused Plaintiff to be injured was reasonably foreseeable to Defendants. However, unlike any of the above-referenced cases, Plaintiff is unable to present to the court any evidence showing any history of criminal activity of any kind at The Westin Casuarina or in the neighborhoods around the hotel that would in any way show that the defendants knew or should have known of such criminal activity and failed to act accordingly in terms of security. Instead, Plaintiff refers only to criminal statistics presented in her security expert's report without any explanation regarding the context of the referenced statistics and how, if at all, they impact the property where Plaintiff was attacked. Plaintiff goes on to suggest that two prior sexual assaults at The Westin Casuarina are sufficient to meet the test of foreseeability required by the courts of the Cayman Islands.[6] However, as noted in the Affidavit of Niels Olsen, these two alleged incidents (which really arose from one event) did not involve rape or trespassers. Instead, they involved two teenage girls, who were friends and who were visiting the Hotel with their mothers. (Olsen Aff. para 18) While their mothers were away from the Hotel, the girls asked a room service waiter to provide them with beer. (Id.) After the waiter did this, the girls invited the waiter as well as a 17 year old male hotel guest to their respective rooms where sexual activity allegedly took place. (Id.) That event obviously was completely different than the attack on Ms. Genereux, and in no way constitutes evidence that the attack on Plaintiff was reasonably foreseeable by Defendants.

Plaintiff has now presented in her Memorandum all of the evidence available to her which she contends will support a finding that the sexual assault against her was reasonably foreseeable. Yet, when one looks at the statistics which the plaintiff cites, as well as the previous incident to

---

[6] Plaintiff incorrectly asserts "Both incidents occurred at the Westin Casuarina. One involved two teenage girls." (Opp. Memo at p. 21). Plaintiff does not cite the second purported incident because there was none.
Error! Unknown document property name.

which she refers, it is clear that Plaintiff's case is totally lacking in any evidence which would support a finding that the attack on Plaintiff was reasonably foreseeable. Without this, the owner and operator of The Westin Casuarina, Galleon Beach, owed no duty to Plaintiff to protect her from the sexual assault for which she seeks to recover; and there is no admissible evidence supporting Plaintiff's assertion that any of the Defendants in this case owned or operated The Westin Casuarina or owed her any duty at all.

## CONCLUSION

**FOR ALL THESE REASONS**, the Defendants respectfully request that Summary Judgment be entered in their favor.

*Dated*: March 28, 2008

*Yours respectfully*,

CORRIGAN JOHNSON & TUTOR
141 Tremont Street
Boston, MA 02111

By: _John B. Johnson_

John B. Johnson

-and-

MENDES & MOUNT, LLP
750 Seventh Avenue
New York, New York 10019
(212) 261-8000

Attorneys for Defendants
Columbia Sussex Corporation
Starwood Hotels & Resorts Worldwide, Inc.
Westin Hotel Management L.P.

# EXHIBIT A

PAGE  31

| EMPLOYEE NUMBER | EMPLOYEE NAME | DATE HIRED | JOB CLASS | JOB CLASS DESCRIPTION |
|---|---|---|---|---|
| 762 | NIELS OLSEN | 1997/09/08 | 54 | F&B DIRECTOR |

# EXHIBIT B

PAGE     5

| EMPLOYEE NUMBER | EMPLOYEE NAME | DATE HIRED | JOB CLASS | JOB CLASS DESCRIPTION |
|---|---|---|---|---|
| 72392 | JAVEE GREGORY | 2002/03/06 | 19 | NIGHT SECURITY |
| 72907 | ANTHONY BYLES | 2002/03/25 | 19 | NIGHT SECURITY |

PAGE   14

| EMPLOYEE NUMBER | EMPLOYEE NAME | DATE HIRED | JOB CLASS | JOB CLASS DESCRIPTION |
|---|---|---|---|---|
| 188 | WINSTON WILKS | 1995/11/30 | 79 | HTL SECURITY |
| 776 | SHAWN BLACK | 1997/10/08 | 79 | HTL SECURITY |
| 51431 | KENNETH SHILLINGTON | 1998/11/29 | 79 | HTL SECURITY |
| 58000 | P. MICHAEL NUGENT | 2000/02/03 | 79 | HTL SECURITY |
| 59118 | ALFRETON WEBB | 2002/01/25 | 79 | HTL SECURITY |

PAGE   55

| EMPLOYEE NUMBER | EMPLOYEE NAME | DATE HIRED | JOB CLASS | JOB CLASS DESCRIPTION |
|---|---|---|---|---|
| 62099 | JASON MCLEAN | 2000/10/23 | 79 | HTL SECURITY |
| 64334 | ROBERT ANDERSON | 2000/01/31 | 79 | HTL SECURITY |
| 65233 | CAROLINE PHELAN | 2001/03/02 | 79 | HTL SECURITY |
| 68119 | MICHAEL WILKS | 2001/07/07 | 79 | HTL SECURITY |