UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-CV-10879-JLT

| | |
|---|---|
| KIMBERLY GENEREUX,                   )<br>    Plaintiff                          )<br>                               )<br>      v.                                )<br>                               )<br>COLUMBIA SUSSEX CORPORATION,        )<br>STARWOOD HOTELS & RESORTS           )<br>WORLDWIDE, INC., and                )<br>WESTIN HOTEL MANAGEMENT, L.P., )<br>    Defendants                         ) | **PLAINTIFF'S MOTION *IN LIMINE*<br>TO PRECLUDE TESTIMONY BY AND<br>EVIDENCE THAT THE WESTIN<br>CASUARINA EMPLOYED SECURITY<br>OFFICERS/GUARDS, DIRECTORS OR<br>VENDORS AT THE TIME OF THE<br>PLAINTIFF'S RAPE** |

Kimberly Genereux, the plaintiff, hereby moves this Court *in limine* to preclude all testimony by and all evidence that the Westin Casuarina employed security officers/guards, security director(s), and/or security vendors at the time of Ms. Genereux' rape due to the failure of the defendants to disclose such evidence during discovery.

In support of her Motion, Ms. Genereux states the following:

1.    Defendant Columbia Sussex Corporation failed to identify any security officers/guards, security director(s), or security vendors/services used at the Westin Casuarina in said defendant's L.R. 26.1(B)(2) Statement, which the defendant filed on May 1, 2006 (Document No. 27).

2.    Defendant Starwood Hotels & Resorts Worldwide, Inc. and the predecessors of defendant Westin Hotel Management, L.P. failed to identify any security officers/guards, security director(s), or security vendors/services used at the Westin Casuarina in those defendant's L.R. 26.1(B)(2) Statements, which

those defendants filed on April 28, 2006 (Document No. 25) and
May 12, 2006 (Document Nos. 33 and 34), respectively.

3.    Pursuant to this Court's discovery Order, the plaintiff
served interrogatories and requests for production of documents
upon each of the defendants, in which the plaintiff specifically
asked each defendant, *inter alia,* to identify the individuals who
performed various security functions at the Westin Casuarina.

4.    Each of the defendants' responses denied knowledge of
any security officers/guards, security director(s), or security
vendors/services used at the Westin Casuarina.  Copies of the
defendants' responses to the plaintiff's requests for production
of documents and the defendants' interrogatory answers are
annexed to this Motion.

5.    Documents produced by defendant Columbia Sussex
Corporation indicated that said defendant would receive payroll
records, employee files and other information which should have
enabled said defendant to identify any security officers/guards,
security director(s), or security vendors/services used at the
Westin Casuarina.

6.    Theodore Mitchel, Fed. R. Civ. P. 30(b)(6) designee for
defendant Columbia Sussex Corporation, testified at deposition
that Westin Casuarina personnel files are maintained at defendant
Columbia Sussex Corporation's Kentucky office, payroll checks are
issued for Westin Casuarina employees from Kentucky, and job

2

class codes used to identify Westin Casuarina employees by job
function generally are the same as for Columbia Sussex employees.
Mitchel dep., p. 66-70.  Mr. Mitchel was unable to identify any
security vendors at the Westin Casuarina, *Id.,* p. 66, 84, could
not recall signing contracts for security vendor services at the
Westin Casuarina and was unaware of any used presently or at the
time of Ms. Genereux' rape although he believed some had been
used in the past.  *Id.,* p. 83-84.  He testified that there were
no designated loss prevention or risk management employees at the
Westin Casuarina, *Id.,* p. 70, and he had no knowledge of the use
of security patrols.  *Id.,* p. 167.  He was unaware of any
security policies prepared by Westin Casuarina management or by
Galleon Beach Resort Ltd., *Id.,* p. 189, but he had instructed the
Westin Casuarina to comply with the Columbia Sussex Corporation
Security and Loss Prevention Manual.  *Id.,* p. 91-93, 138-40.

7.    Columbia Sussex' Interrogatory Answer No. 9C indicates
that Westin Casuarina payroll records are retained by defendant
Columbia Sussex Corporation for a period of seven years.

8.    Therefore, Westin Casuarina payroll records in the
possession of said defendant should have enabled Columbia Sussex
Corporation to identify any security officers/guards, security
director(s), or security vendors/services used at the Westin
Casuarina at the time of Ms. Genereux' rape in May 2002.

9.    Following Mr. Mitchel's deposition, the plaintiff sent

3

correspondence to defense counsel asking the defendants to search their files again to identify from payroll and employment records in the possession of Columbia Sussex Corporation and/or the other defendants any security officers/guards, security director(s), or security vendors/services used at the Westin Casuarina at the time of Ms. Genereux' rape.  Letter of Mark F. Itzkowitz to Robert J. Brown and John B. Johnson (September 10, 2007).

10.  In the correspondence of September 10, 2007, the plaintiff identified at least some of the "job class" code categories (job class codes 78 and 79) which would have expedited the defendants' retrieval of the payroll information.  The job class codes were identified in the Columbia Sussex Manager's Manual which had been produced in discovery, is annexed as Exhibit "AA" to the Affidavit of Mark F. Itzkowitz in Opposition to the Defendants' Motion for Summary Judgment, but is not annexed to this Motion in compliance with this Court's Order Granting Motion to Redact Confidential Business Records (March 11, 2008).

11.  The defendants responded to plaintiff's correspondence of September 10, 2007 on September 28, 2007 (Columbia Sussex) and again on January 8 and 25, 2008 (all defendants), and again denied possession of any records or information which would identify any security officers/guards, security director(s), or security vendors/services used at the Westin Casuarina at the

time of Ms. Genereux' rape.  Copies of the responses are annexed.

12.  On March 11, 2008, the defendants filed their Motion
for Summary Judgment.  For the first time, the defendants
identified Niels R. Olsen as the Westin Casuarina's security
director at the time of Ms. Genereux' rape.  Mr. Olsen attested
(paragraphs 14-16) that the Westin Casuarina had employed
security staff at the time of Ms. Genereux' rape and had prepared
security policies of its own.

10.  The plaintiff challenged Mr. Olsen's credibility in the
Plaintiff's Memorandum in Opposition to Defendants' Motion for
Summary Judgment (pages 27-28).

11.  In their Reply Memorandum, filed on March 28, 2008
(Document No. 81), the defendants for the first time identified
11 individuals as Westin Casuarina "h[o]t[e]l security" or "night
security" employees, not including Mr. Olsen.  The names were
derived from payroll records of the Westin Casuarina.  Nine of
the individuals bore job class code 79; the precise job class
code identified by the plaintiff more than six months earlier.

12.  Security directors, guards/officers, and vendors of a
hotel at which a plaintiff is raped and for which she pursues a
negligent security tort action are the types of individuals who
should be presumed to have discoverable information which may be
relevant in such a proceeding and should have been identified as
potential witnesses in the defendants' mandatory disclosures in

accordance with Fed. R. Civ. P. 26(a)(1)(A) and L.R. 26.1 in
April and May, 2006. "Relevant" for discovery purposes
"encompasses 'any matter that bears on, or that reasonably could
lead to other matter that could bear on, any issue that is or may
be in the case'". *Klonoski v. Mahlab,* 156 F.3d 255, 267 (1st
Cir. 1998), *quoting Oppenheimer Fund, Inc. v. Sanders,* 437 U.S.
340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). None of the
defendants identified any security director(s), guards/officers,
or vendors although Columbia Sussex' filings of March 11 and 28,
2008 prove that at least defendant Columbia Sussex possessed the
information throughout these proceedings.

13. The plaintiff specifically sought the withheld
information in her interrogatories and requests for production of
documents but it was not disclosed.

14. When it appeared after the deposition of Mr. Mitchel
that the defendants should have had possession of the information
notwithstanding their denials, the plaintiff not only requested
the information again but directed the defendants, particularly
Columbia Sussex, to precisely the job class code which would have
revealed 9 of 11 individuals (12 including Mr. Olsen) who may
have had relevant information. Notwithstanding the specificity
of the plaintiff's request, the defendants again denied
possession of the information.

15. For almost two years, the defendants denied possession

6

of information relating to security director(s), guards/officers and vendors at the Westin Casuarina, although it now is clear that the defendants possessed such information throughout this litigation.

16.  The defendants' denials were consistent with information provided to Ms. Genereux on the night that she was raped:  that the Westin Casuarina lacked any security officers, guards or personnel.  Genereux dep., p. 84-85.

17.  The defendants' denials were consistent with the only witness report generated on behalf of the defendants and provided to the plaintiff.  In that report (annexed hereto), Denzil Luke stated that two other Westin Casuarina employees responded to Ms. Genereux on the night that she was raped, a bartender and a manager, but that no security officers/guards or security director(s) responded or were alerted or contacted.

18.  The plaintiff has been prevented from conducting any meaningful discovery relating to security conditions at the Westin Casuarina as a result of the defendants' withholding of the names of persons who possessed relevant information.

19.  There is insufficient time between now and trial (April 14, 2008) to conduct 12 depositions of the security director and security officers/guards only identified in the past four weeks (most in the past week) especially inasmuch as the information should have been produced two years ago.

20.  The defendants should not be permitted to conduct trial by ambush by withholding information which unquestionably was relevant and which was requested repeatedly in several different forms and then springing it immediately before trial or at trial for the first time. *Klonoski,* 156 F.3d at 257.  Rule 37(c)(1) of the Federal Rules of Civil Procedure mandates preclusion of witnesses and evidence as the required sanction for withholding evidence. *Klonoski,* 156 F.3d at 269.  The withholding of the witnesses' identities constituted "misconduct", regardless of whether the defendants' intent was "evil, innocent or careless". *Klonoski,* 156 F.3d at 274-75, *quoting Bros Inc. v. W. E. Grace Mfg. Co.,* 351 F.2d 208, 211 (5th Cir. 1965), *cert. denied,* 383 U.S. 936, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966).

21.  Nor should the defendants be permitted to undermine the plaintiff's expert security testimony by withholding information during discovery and springing it at trial in an effort to prove that the security expert's opinions are based upon incorrect information. *See Klonoski,* 156 F.3d at 275 (ambushing plaintiff during cross examination of last witness with undisclosed documents cannot be said to be harmless error even though documents ostensibly related to damages only and jury found for defendants on liability).

For all of the above reasons, the defendants should be precluded from introducing the testimony of any of the Westin

8

Casuarina security guards/officers, security directors, and/or security vendors/services recently identified, and should be precluded from introducing evidence that any such services existed at the time of Ms. Genereux' rape.

The Plaintiff,
By her Attorney,

_____
MARK F. ITZKOWITZ (BBO #248130)
85 Devonshire Street
Suite 1000
Boston, MA  02109-3504
(617) 227-1848
April 7, 2008

## CERTIFICATE OF SERVICE

I, Mark F. Itzkowitz, counsel for the plaintiff, hereby certify that on this date, I made service of the within document by serving it electronically to registered ECF participants and/or by mailing/faxing/hand-delivering a copy of same to non-registered ECF participants as indicated on the Notice of Electronic Filing ("NEF"), upon the following counsel of record:

John B. Johnson, Esquire             Robert J. Brown, Esquire
Corrigan, Johnson & Tutor, P.A.      Mendes & Mount, LLP
141 Tremont Street                   750 7th Avenue
Boston, MA 02111; and                New York, NY   10019-6829.

 s/ Mark F. Itzkowitz
MARK F. ITZKOWITZ (BBO #248130)

Dated:  April 7, 2008

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY GENEREUX,<br>            Plaintiff,<br><br>v.<br><br>COLUMBIA SUSSEX CORPORATION<br>d/b/a WESTIN CASUARINA HOTEL,<br>STARWOOD HOTELS & RESORTS<br>WORLDWIDE, INC., WESTIN LICENSE<br>COMPANY, WESTIN LICENSE<br>COMPANY NORTH, INC., WESTIN<br>MANAGEMENT COMPANY EAST,<br>WESTIN NORTH AMERICA<br>MANAGEMENT COMPANY, INC.,<br>GALLEON BEACH RESORT, LTD., and<br>CORPORATE DEFENDANTS X1-100,<br>            Defendants. | C.A. NO. 05-CV-10879-JLT |

## RESPONSE OF DEFENDANT COLUMBIA SUSSEX CORPORATION TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

### *General Objection*

Defendant Columbia Sussex Corporation ("Columbia") hereby objects to each production request which seeks information about all of this defendant's hotels and/or resorts, and not specifically about the Westin Causuarina Hotel, on the grounds that such requests are overly broad, not reasonably limited, are unduly burdensome, are not reasonably calculated to lead to the discovery of admissible evidence, and seek information which is not relevant to this action.

Request No. 1

All documents identified in your response to the plaintiff's first set of interrogatories to the defendant.

**RESPONSE 1**

The Service Agreement between Columbia Sussex and Galleon Beach Resort, Ltd has already been produced. The Manager's Manual and Safety & Loss Prevention Manual referenced in interrogatory answers are available for inspection at the office of counsel for Columbia Sussex.

Request No. 2

All written communications and documents of the plaintiff and/or copies of all written transcriptions of any and all statements and communications of the plaintiff taken on any recording instrument, or by any other means, relative to any of the matters alleged in the plaintiff's complaint.

**RESPONSE 2**

Please see the documents produced by this defendant as part of the Automatic Disclosure in this case.

Request No. 3

All communications and documents of or concerning any and all witnesses to the matters alleged in the plaintiff's complaint including injuries and damages alleged.

**RESPONSE 3**

Please see the documents produced by this defendant as part of the Automatic Disclosure in this case.

Request No. 4

All communications or documents, to you or to anyone else, in your possession, custody or control, which you purport to have been, or know to have been written by the plaintiff.

**RESPONSE 4**

This defendant has no such documents.

Request No. 5

All documents concerning the incident which gives rise to this action.

**RESPONSE 5**

Please see the documents produced by this defendant as part of the Automatic Disclosure in this case.

Request No. 6

All written reports, internal memoranda or the like of any investigator, safety officer, employee, servant or agent of the defendant concerning the incident.

**RESPONSE 6**

This defendant has no such documents.

<u>Request No. 7</u>

All documents concerning investigations performed by the defendant concerning the incident.

**RESPONSE 7**

This defendant has no such documents.

<u>Request No. 8</u>

All documents which identify witnesses to the incident.

**RESPONSE 8**

Please see the documents produced by this defendant as part of the Automatic Disclosure in this case.

<u>Request No. 9</u>

All documents concerning injuries sustained by any person other than the plaintiff allegedly as a result of the incident.

**RESPONSE 9**

This defendant has no such documents.

<u>Request No. 10</u>

All reports, signed or unsigned, prepared for or filed with Caymanian, British, international and/or U.S. federal, state and/or local authorities stating the defendant's version of the incident.

**RESPONSE 10**

This defendant has no such documents.

<u>Request No. 11</u>

All reports, signed or unsigned, prepared for or filed with Caymanian, British, international and/or U.S. federal, state and/or local authorities describing witnesses' versions of the incident.

**RESPONSE 11**

Please see the documents produced by this defendant as part of the Automatic Disclosure in this case.

Request No. 12

All documents concerning all communications made by the defendant or made to the defendant at any time by any person, other than your counsel in this action, concerning the incident.

**RESPONSE 12**

Please see the documents produced by this defendant as part of the Automatic Disclosure in this case.

Request No. 13

All documents concerning the ownership of the "Premises", including without limitation, all documents identifying each and every owner of the "Premises" in May 2002.

**RESPONSE 13**

Please see this defendant's production response made earlier in this case.

Request No. 14

All documents, including without limitation, deeds, title documents, leases, management or other agreements, relating to the ownership and/or control of the "Premises", which were in effect from January 1, 1999 to date.

**RESPONSE 14**

Please see this defendant's production response made earlier in this case.

Request No. 15

All agreements between the defendant and the owner of the "Premises" which were in effect in or about May 2002.

**RESPONSE 15**

Please see this defendant's production response made earlier in this case.

Request No. 16

All documents which identify each and every hotel and/or resort owned, controlled and/or operated by the defendant in May 2002, including without limitation documents which identify the address and location of each facility, the owner, manager and person(s) in overall control of the facility, the owner, manager and person(s) in control of "security measures" at the facility, and any identification numbers or codes used by the defendant to identify the facility in its records.

**RESPONSE 16**

Please see the General Objection preceding these responses.

Request No. 17

All documents concerning the relationship, if any, between the defendant and all other "persons" who utilized the trade name "Westin" to own, operate, manage, control, supervise, franchise, and/or license hotels and resorts, including without limitation, the other defendants in this action and Westin International Services, LLC.

**RESPONSE 17**

Please see Response 1 above.

Request No. 18

All documents concerning each and every person responsible for designing, providing, implementing, supervising, and maintaining "security measures" and "security devices" at the defendant's hotels and/or resorts, including, without limitation, each and every employee, agent, servant, representative, management company, manager, contractor and/or subcontractor hired or retained by the defendant.

**RESPONSE 18**

Please see the General Objection preceding these responses.

Request No. 19

All documents concerning each and every person responsible for designing, providing, implementing, supervising, and maintaining "security measures" and "security devices" at the "Premises", including, without limitation, each and every employee, agent, servant, representative, management company, manager, contractor and/or subcontractor hired or retained by the defendant.

**RESPONSE 19**

This defendant has no such documents.

<u>Request No. 20</u>

All documents identifying each and every person who had any responsibility for security at the "Premises".

**RESPONSE 20**

This defendant has no such documents.

<u>Request No. 21</u>

All organizational charts of the defendant concerning and/or illustrating the departments, branches or units of the defendant's management and operation at the "Premises".

**RESPONSE 21**

This defendant has no such documents.

<u>Request No. 22</u>

All organizational charts of the defendant concerning and/or illustrating the personnel and positions of the defendant whose function was crime prevention, security and/or loss prevention and their supervisors at the defendant's hotels and/or resorts.

**RESPONSE 22**

Please see the General Objection preceding these responses.

<u>Request No. 23</u>

All organizational charts of the defendant, concerning and/or illustrating the personnel and positions of the defendant whose function was crime prevention, security and/or loss prevention and their supervisors at the "Premises".

**RESPONSE 23**

This defendant has no such documents.

Request No. 24

All documents concerning the geographic area of responsibility of all supervisory personnel of the defendant whose function was crime prevention, security and/or loss prevention.

**RESPONSE 24**

Please see the General Objection preceding these responses.

Request No. 25

All documents, concerning the provision of security at the "Premises".

**RESPONSE 25**

This defendant has no such documents.

Request No. 26

All documents concerning the defendant's policies, practices and procedures for deterring and/or preventing crime at the defendant's hotels and/or resorts.

**RESPONSE 26**

Please see the General Objection preceding these responses.

Request No. 27

All documents concerning the defendant's policies, practices and procedures for deterring and/or preventing crime at the "Premises".

**RESPONSE 27**

This defendant has no such documents.

Request No. 28

All documents concerning changes in the defendant's policies, practices and/or procedures with respect to security and crime prevention at the "Premises" after May 3, 2002.

**RESPONSE 28**

This defendant has no such documents.

Request No. 29

All documents concerning industry and/or other standards used by or relied upon by the defendant in developing security policies for its hotels and/or resorts.

**RESPONSE 29**

Please see the General Objection preceding these responses.

Request No. 30

All documents concerning industry and/or other standards used by or relied upon by the defendant in developing security policies for the "Premises"

**RESPONSE 30**

This defendant has no such documents.

Request No. 31

All documents, concerning each and every means and method by which the defendant informed itself of criminal activity at the "Premises", including without limitation, each and every means and method by which the defendant gathered and stored complaints and comments concerning security and safety and criminal activities at the "Premises".

**RESPONSE 31**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its response to two years before and one year after the plaintiff's alleged incident, this defendant says that it has no such documents.

Request No. 32

All documents concerning any and all incidents of crime at the "Premises", including, without limitation, all security reports, security logs, incident reports, statements, confessions, calls for police assistance and correspondence.

**RESPONSE 32**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its response to two years before and one year after the plaintiff's alleged incident, this defendant says that it has no such

documents.

Request No. 33

All reports by residents, tenants, guests, customers, agents, managers, supers, employees or other persons of alleged criminal activity or suspicious persons at the "Premises".

**RESPONSE 33**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its response to two years before and one year after the plaintiff's alleged incident, this defendant says that it has no such documents.

Request No. 34

All documents concerning all complaints made against or to the defendants in connection with alleged crime at the "Premises" at any time.

**RESPONSE 34**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its response to two years before and one year after the plaintiff's alleged incident, this defendant says that it has no such documents.

Request No. 35

All documents concerning statistics reflecting criminal incidents alleged to have occurred at the "Premises".

**RESPONSE 35**

This defendant has no such documents.

Request No. 36

All documents concerning statistics reflecting the defendant's response to all incidents identified in the preceding request, including, without limitation, calls for police assistance.

**RESPONSE 36**

      This defendant has no such documents.

<u>Request No. 37</u>

      All documents concerning the defendant's response to all incidents identified in the two preceding requests.

**RESPONSE 37**

      Please see the responses to the two preceding requests.

<u>Request No. 38</u>

      All documents not otherwise produced, concerning the criminal incidents reflected in the three preceding requests, including, without limitation, copies of all police and prosecutory documents in the defendant's possession, custody or control, such as incident reports, arrest reports, prosecutors' reports, and documents prepared for or in connection with any criminal prosecution, supplemental incident reports, witness statements and documents prepared by or in consultation with witnesses, logs and/or other records of calls for police assistance, and all documents concerning calls for police services.

**RESPONSE 38**

      Please see the responses to the three preceding requests.

<u>Request No. 39</u>

      All crime analyses and/or assessments performed for the "Premises" prior to the instant litigation.

**RESPONSE 39**

      This defendant has no such documents.

<u>Request No. 40</u>

      All crime analyses and/or assessments prepared by or for the defendants, other than those prepared in anticipation of the instant litigation, concerning security and crime prevention at the "Premises" at any time.

**RESPONSE 40**

      This defendant has no such documents.

Request No. 41

All documents concerning meetings held by the defendant's employees and/or management personnel on the issues of crime prevention and/or criminal incidents at the "Premises".

**RESPONSE 41**

This defendant has no such documents.

Request No. 42

All documents concerning meetings held by the defendant's tenants, guests, customers, agents, employees and/or management personnel on the issues of crime prevention and/or criminal incidents at the "Premises".

**RESPONSE 42**

This defendant has no such documents.

Request No. 43

All documents concerning each and every communication between the defendants and/or their agents, servants or employees with the Royal Cayman Islands Police Department and/or with Caymanian, British, international and/or U.S. prosecuting authorities concerning crime prevention at the "Premises".

**RESPONSE 43**

This defendant has no such documents.

Request No. 44

All documents concerning each and every communication between the defendants and/or their agents, servants or employees with the Royal Cayman Islands Police Department and/or with Caymanian, British, international and/or U.S. prosecuting authorities concerning the investigation and prosecution of any person for criminal activity at the "Premises".

**RESPONSE 44**

This defendant has no such documents.

Request No. 45

All documents concerning the use and/or placement of warnings to residents, tenants, guests, customers, agents, managers, employees or other persons concerning criminal activity at the "Premises" at any time.

**RESPONSE 45**

This defendant has no such documents.

Request No. 46

All documents concerning each and every "security measure", including without limitation, each and every "security device" in use at the "Premises":

      a.      before May 3, 2002;
      b.      on May 3, 2002; and
      c.      after May 3, 2002.

**RESPONSE 46**

This defendant has no such documents.

Request No. 47

All documents concerning all communications, instructions, advice, suggestions, requests, or comments made to you at any time by any person, other than your counsel in this action, concerning "security measures" or "security devices", including without limitation, requests for the installation or repair of "security measures" or "security devices" at the "Premises" at any time.

**RESPONSE 47**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, this defendant says that it has no such documents.

Request No. 48

All documents concerning all repairs, changes or modifications you ever made to "security measures" and "security devices" at the "Premises".

**RESPONSE 48**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, this defendant says that it has no such documents.

Request No. 49

All documents concerning the defendant's policies relating to the installation and maintenance of "security measures" and "security devices" in hotels and/or resorts owned, controlled and/or operated by the defendants.

**RESPONSE 49**

Please see the General Objection preceding these responses.

Request No. 50

All documents concerning the activities of security personnel at the "Premises".

**RESPONSE 50**

This defendant has no such documents.

Request No. 51

All documents concerning patrol and/or watch activities assigned to and/or performed by security personnel at the "Premises", including without limitation, schedules, logs, reports, memoranda, notes, incident and activity sheets, and watch reports.

**RESPONSE 51**

This defendant has no such documents.

Request No. 52

All documents concerning the location and manner of locating public lavatories at the defendant's hotels and resorts.

**RESPONSE 52**

Please see the General Objection preceding these responses.

Request No. 53

All documents concerning the location and manner of locating public lavatories at the "Premises".

**RESPONSE 53**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no lavatories open to the public at the Westin Casuarina Hotel; lavatories at the hotel are open only to guests and customers of the hotel.

Request No. 54

All documents concerning changes in the design and placement of public lavatories at the defendant's hotels and resorts at any time after the lavatories first were located at the "Premises".

**RESPONSE 54**

Please see the General Objection preceding these responses.  Also, please see the objection to No. 53 above.

Request No. 55

All documents concerning changes in the design and placement of public lavatories at the "Premises" at any time after the lavatories first were located at the "Premises".

**RESPONSE 55**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no lavatories open to the public at the Westin Casuarina Hotel; lavatories at the hotel are open only to guests and customers of the hotel.

Request No. 56

All documents concerning restrictions to public access to lavatories at the "Premises".

**RESPONSE 56**

Please see the objection for No. 53 above. Without waiving this objection, the defendant says it has no documents responsive to this request.

Request No. 57

All documents concerning crimes in public lavatories at the defendant's hotels and resorts at any time.

**RESPONSE 57**

Please see the General Objection preceding these responses. Also, please see the objection to No. 53 above.

Request No. 58

All documents concerning crimes in public lavatories at the "Premises" at any time.

**RESPONSE 58**

This defendant objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no lavatories open to the public at the Westin Casuarina Hotel; lavatories at the hotel are open only to guests and customers of the hotel. Without waiving this objection, this defendant says it has no such documents.

Request No. 59

All documents concerning the defendant's policies, practices and procedures for deterring or preventing crime in lavatories at the defendant's hotels and resorts.

**RESPONSE 59**

Please see the General Objection preceding these responses.

Request No. 60

All documents concerning the defendant's policies, practices and procedures for deterring or preventing crime in lavatories at the "Premises".

**RESPONSE 60**

This defendant has no such documents.

Request No. 61

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 61**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its response to the area of the hotel where the plaintiff says she was injured, this defendant is searching to see if it has any photos of the bathroom where the alleged attack occurred. If such photos are found, they will be produced.

Request No. 62

All lighting diagrams for the "Premises".

**RESPONSE 62**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to this request seeking lighting diagrams of the hotel because there has never been a contention in this case that the alleged attack on the plaintiff was caused by inadequate or insufficient lighting. Instead, the plaintiff has always alleged that she was walking on a public street (West Bay Road) when she was confronted several times by a stranger who made her very nervous. In order to avoid this stranger, she decided to enter onto the hotel property, and then decided to hide in the hotel restroom where the stranger eventually entered and attacked her. Without waiving this objection, and limiting its response to the area of the hotel where the plaintiff says she was injured, this defendant says that it has no such documents.

Request No. 63

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 63**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the

hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility.

Request No. 64

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 64**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility.

Request No. 65

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the corridor leading to the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 65**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility.

Request No. 66

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the incident or instruments or instrumentalities that caused injuries to the plaintiff.

**RESPONSE 66**

This defendant has no such documents.

Request No. 67

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the locks, doors and lighting conditions of the corridor leading to the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 67**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects to this request because it seeks information concerning locks, doors, and lighting conditions at the hotel, yet none of these are relevant since the plaintiff has never contended that the alleged attack in which she was injured was caused by a defective lock, door or light.

Request No. 68

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 68**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects to this request because it seeks information concerning locks, doors, and lighting conditions at the hotel, yet none of these are relevant since the plaintiff has never contended that the alleged attack in which she was injured was caused by a defective lock, door or light.

Request No. 69

All documents concerning the condition of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 69**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects to this request because it seeks information concerning locks, doors, and lighting conditions at the hotel, yet none of these are relevant since the plaintiff has never contended that the alleged attack in which she was injured was caused by a defective lock, door or light.

Request No. 70

All documents concerning repairs, maintenance, construction, and/or reconstruction performed on the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time, including without limitation, receipts, cancelled checks, check stubs, credit card bills and payment information.

**RESPONSE 70**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects to this request because it seeks information concerning locks, doors, and lighting conditions at the hotel, yet none of these are relevant since the plaintiff has never contended that the alleged attack in which she was injured was caused by a defective lock, door or light.

Request No. 71

All documents, including without limitation, estimates, work slips, contracts, proposed contracts, and any other documents of every type, kind or description, concerning all proposals made by any person concerning repairs, maintenance, construction, and/or reconstruction of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 71**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition

testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects to this request because it seeks information concerning locks, doors, and lighting conditions at the hotel, yet none of these are relevant since the plaintiff has never contended that the alleged attack in which she was injured was caused by a defective lock, door or light.

Request No. 72

All documents concerning each and every person, including without limitation, all contractors, subcontractors, employees, agents, servants, representatives, and/or any other persons, who at any time performed any work constructing, reconstructing, repairing, maintaining, or inspecting the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 72**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects to this request because it seeks information concerning locks, doors, and lighting conditions at the hotel, yet none of these are relevant since the plaintiff has never contended that the alleged attack in which she was injured was caused by a defective lock, door or light.

Request No. 73

All documents concerning all communications, instructions, advice, suggestions, or comments made to the defendant at any time by any person other than its counsel in this action, concerning the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 73**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. In accordance with the plaintiff's own deposition testimony, the alleged attack on the plaintiff did not occur in the lavatory facilities in the hotel's Hibiscus Spa, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects to this request because it seeks information concerning locks, doors, and lighting conditions at the hotel, yet none of these are relevant since the plaintiff has never contended that the alleged attack in which she was injured was caused by a defective lock, door or light.

Request No. 74

All documents concerning any work which the defendant performed or had performed at the "Premises" at any time.

**RESPONSE 74**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Further this defendant objects to this request because it seeks information that is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that her alleged attack resulted from defective work or defective inspections, but only from inadequate security provided by the hotel.

Request No. 75

All documents concerning any inspections the defendant performed or had performed at the "Premises" at any time.

**RESPONSE 75**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Further this defendant objects to this request because it seeks information that is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that her alleged attack resulted from defective work or defective inspections, but only from inadequate security provided by the hotel.

Request No. 76

All documents concerning all Caymanian, British, international and/or U.S. Federal, state, and/or local inspections of the "Premises" at any time.

**RESPONSE 76**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Further this defendant objects to this request because it seeks information that is not relevant to the plaintiff's claim, namely information concerning inspections at the hotel. Yet the plaintiff has never contended that her alleged attack resulted from defective inspections, but only from inadequate security provided by the hotel.

Request No. 77

All documents concerning all Caymanian, British, international and/or U.S. federal, state, and/or local inspections of any work performed at the "Premises" at any time.

**RESPONSE 77**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Further this defendant objects to this request because it seeks information that is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that her alleged attack resulted from defective work or defective inspections, but only from inadequate security provided by the hotel.

Request No. 78

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning the design and construction of the spa facility of the "Premises", including without limitation, the lavatory facilities thereof and the corridor leading thereto, at any time.

**RESPONSE 78**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant.

Request No. 79

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning the design, use, installation and maintenance of locks, doors and lighting conditions for the exterior and interior of the lavatory facilities and the corridor leading thereto at the spa facility of the "Premises", at any time.

**RESPONSE 79**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant.

Request No. 80

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning security measures and security devices at hotels and resorts, at any time.

**RESPONSE 80**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant.

Request No. 81

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning monitoring criminal activity and suspicious persons at hotels and resorts, at any time.

**RESPONSE 81**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant.

Request No. 82

All documents concerning training provided to all employees whose function was crime prevention, loss prevention or security at the defendant's hotels and resorts.

**RESPONSE 82**

Please see the General Objection preceding these responses.

Request No. 83

All documents concerning training provided to all employees whose function was crime prevention, loss prevention or security at the "Premises".

**RESPONSE 83**

This defendant has no such documents.

Request No. 84

All documents concerning security training provided to management personnel and other employees at the defendant's hotels and resorts.

**RESPONSE 84**

Please see the General Objection preceding these responses.

Request No. 85

All documents concerning security training provided to management personnel and other employees at the "Premises".

**RESPONSE 85**

This defendant has no such documents.

Request No. 86

All documents concerning supervision provided to all employees whose function was crime prevention, loss prevention or security at the defendant's hotels and resorts.

**RESPONSE 86**

Please see the General Objection preceding these responses.

Request No. 87

All documents concerning supervision provided to all employees whose function was crime prevention, loss prevention or security at the "Premises".

**RESPONSE 87**

This defendant has no such documents.

Request No. 88

All documents concerning security related supervision provided to management personnel and other employees at the defendant's hotels and resorts.

**RESPONSE 88**

Please see the General Objection preceding these responses.

Request No. 89

All documents concerning security related supervision provided to management personnel and other employees at the "Premises".

**RESPONSE 89**

This defendant has no such documents.

Request No. 90

All documents identifying the defendant's employees who worked at the "Premises" between May 1 and 4, 2002.

**RESPONSE 90**

This defendant has no such documents.

Request No. 91

All reviews performed by the defendant, other than as part of the instant litigation, of the performance, conduct and activities of all persons who were involved in responding to the plaintiff's report that she had been raped at the "Premises".

**RESPONSE 91**

This defendant has no such documents.

Request No. 92

All documents concerning each and every occasion when the defendant has paid worker's compensation or non-employee compensation (including judgments and settlements in civil actions) to any person for injuries allegedly sustained arising from a criminal incident at the "Premises" at any time.

**RESPONSE 92**

This defendant has no such documents.

Request No. 93

All documents prepared by all expert and percipient witnesses utilized at trial or in trial preparation to defend against any prior claims brought against you alleging circumstances similar to those in the case at bar.

**RESPONSE 93**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection and limiting its response to the Westin Casuarina, this defendant says it has none.

Request No. 94

All documents concerning all expert witnesses that the defendants intend to call to testify at the trial of this action, including, without limitation, all reports prepared at any time by such experts, transcripts of all testimony at trial and at deposition of such experts, curriculum vitae of such expert witnesses, and all treatises, articles, correspondence, and publications by and about each such expert.

**RESPONSE 94**

This defendant has no such documents. If this defendant selects an expert who will be called to testify on its behalf at trial, this response will be supplemented.

Request No. 95

All documents, other than those prepared in anticipation of the instant litigation, to be utilized by or relied upon by the defendant's expert witnesses in their testimony or in assisting the defendant prepare its defenses in the instant action.

**RESPONSE 95**

Please see Response 94.

Request No. 96

All documents, including without limitation all correspondence, between the defendants and the plaintiff at any time.

**RESPONSE 96**

This defendant has no such documents.

Request No. 97

All documents concerning advertising placed by the defendant in print and electronic media concerning the "Premises".

**RESPONSE 97**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not reasonably calculated to lead to the discovery of admissible evidence, and is not relevant to the plaintiff's case.

Request No. 98

Each and every document which you contend supports each and every defense which you intend to assert or which you have asserted in this action.

**RESPONSE 98**

At this time, this defendant has no such documents other than those already produced as part of the Automatic Disclosure in this case.

Request No. 99

All documents which the defendant intends to introduce into evidence at any trial or hearing on the issue of the plaintiff's damages, including without limitation, all reports of private investigators, all surveillance tapes, films, photographs, and videotapes, and all similar documents of every type, kind and description.

**RESPONSE 99**

No decision has yet been made regarding exhibits which this defendant may attempt to introduce into evidence at the trial of this case. The defendant further says that, at this time, it has no reports of private investigators, surveillance tapes, films, photographs, videotapes, or similar documents concerning the plaintiff or her alleged injuries.

Request No. 100

All documents which the defendant intends to introduce at the trial of this action.

**RESPONSE 100**

No decision has yet been made regarding such documents.

Request No. 101

All documents not otherwise produced that relate in any way to the claims and defenses raised in this lawsuit.

**RESPONSE 101**

This defendant has no such documents.

By its attorneys

John B. Johnson
Corrigan, Johnson & Tutor, P.A.
141 Tremont Street
Boston, MA 02111
(617) 338-0075
BBO No. 252580

Robert J. Brown
Mendes & Mount, LLP
750 Seventh Avenue
New York, NY 10019
(212) 261-8000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY GENEREUX,<br>　　　　　　Plaintiff, | )<br>)<br>) |
| | ) |
| v. | )　　　C.A. NO. 05-CV-10879-JLT |
| | ) |
| COLUMBIA SUSSEX CORPORATION<br>d/b/a WESTIN CASUARINA HOTEL,<br>STARWOOD HOTELS & RESORTS<br>WORLDWIDE, INC., WESTIN LICENSE<br>COMPANY, WESTIN LICENSE<br>COMPANY NORTH, INC., WESTIN<br>MANAGEMENT COMPANY EAST,<br>WESTIN NORTH AMERICA<br>MANAGEMENT COMPANY, INC.,<br>GALLEON BEACH RESORT, LTD., and<br>CORPORATE DEFENDANTS X1-100,<br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### RESPONSE OF DEFENDANT STARWOOD HOTELS & RESORTS WORLDWIDE, INC. TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, Defendant Starwood Hotels & Resorts Worldwide, Inc. ("Starwood" or the "defendant") hereby responds to the First Request for Production of Documents of plaintiff Kimberly Genereux ("plaintiff")

#### *General Objection*

The defendant hereby objects to each production request which seeks information or documents concerning, relating to, referring to, or regarding any of the defendant's hotels/resorts other than the Westin Causuarina Hotel, on the grounds that such requests are overly broad, not reasonably limited, are unduly burdensome, are not reasonably calculated to lead to the discovery of admissible evidence, and seek information which is not relevant to this action.

## SPECIFIC RESPONSES AND OBJECTIONS

Request No. 1

All documents identified in your response to the plaintiff's first set of interrogatories to the defendant.

**RESPONSE 1**

The <u>System License Agreement</u> between this defendant and Galleon Beach Resort, Ltd has already been produced. This defendant is searching for the manuals referenced in the Agreement, and to the extent that these are relevant, they will be produced if and when they are located.

Request No. 2

All written communications and documents of the plaintiff and/or copies of all written transcriptions of any and all statements and communications of the plaintiff taken on any recording instrument, or by any other means, relative to any of the matters alleged in the plaintiff's complaint.

**RESPONSE 2**

The defendant has no such documents in its possession, custody or control.

Request No. 3

All communications and documents of or concerning any and all witnesses to the matters alleged in the plaintiff's complaint including injuries and damages alleged.

**RESPONSE 3**

The defendant has no such documents in its possession, custody or control.

Request No. 4

All communications or documents, to you or to anyone else, in your possession, custody or control, which you purport to have been, or know to have been written by the plaintiff.

**RESPONSE 4**

This defendant has no such documents in its possession, custody or control.

Request No. 5

All documents concerning the incident which gives rise to this action.

**RESPONSE 5**

Starwood objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks documents subject to the attorney-client or work-product doctrine.

Request No. 6

All written reports, internal memoranda or the like of any investigator, safety officer, employee, servant or agent of the defendant concerning the incident.

**RESPONSE 6**

Starwood objects to this request on the grounds that it seeks documents subject to the attorney-client privilege or work-product doctrine. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 7

All documents concerning investigations performed by the defendant concerning the incident.

**RESPONSE 7**

Starwood objects to this request on the grounds that it seeks documents subject to the attorney-client privilege or work-product doctrine. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 8

All documents which identify witnesses to the incident.

**RESPONSE 8**

Please see the documents produced by this defendant as part of the Automatic Disclosure in this case.

Request No. 9

All documents concerning injuries sustained by any person other than the plaintiff allegedly as a result of the incident.

**RESPONSE 9**

This defendant has no such documents in its possession, custody or control.

Request No. 10

All reports, signed or unsigned, prepared for or filed with Caymanian, British, international and/or U.S. federal, state and/or local authorities stating the defendant's version of the incident.

**RESPONSE 10**

This defendant has no such documents in its possession, custody or control.

Request No. 11

All reports, signed or unsigned, prepared for or filed with Caymanian, British, international and/or U.S. federal, state and/or local authorities describing witnesses' versions of the incident.

**RESPONSE 11**

This defendant has no such documents in its possession, custody or control.

Request No. 12

All documents concerning all communications made by the defendant or made to the defendant at any time by any person, other than your counsel in this action, concerning the incident.

**RESPONSE 12**

This defendant has no such documents in its possession, custody or control.

Request No. 13

All documents concerning the ownership of the "Premises", including without limitation, all documents identifying each and every owner of the "Premises" in May 2002.

**RESPONSE 13**

Pursuant to the Order of the Court (Tauro, J.) dated September 26, 2006, the defendant has produced to the plaintiff all documents in its possession, custody or control that are responsive to this Request.

<u>Request No. 14</u>

All documents, including without limitation, deeds, title documents, leases, management or other agreements, relating to the ownership and/or control of the "Premises", which were in effect from January 1, 1999 to date.

**RESPONSE 14**

Pursuant to the Order of the Court (Tauro, J.) dated September 26, 2006, the defendant has produced to the plaintiff all documents in its possession, custody or control that are responsive to this Request.

<u>Request No. 15</u>

All agreements between the defendant and the owner of the "Premises" which were in effect in or about May 2002.

**RESPONSE 15**

Pursuant to the Order of the Court (Tauro, J.) dated September 26, 2006, the defendant has produced to the plaintiff all documents in its possession, custody or control that are responsive to this Request.

<u>Request No. 16</u>

All documents which identify each and every hotel and/or resort owned, controlled and/or operated by the defendant in May 2002, including without limitation documents which identify the address and location of each facility, the owner, manager and person(s) in overall control of the facility, the owner, manager and person(s) in control of "security measures" at the facility, and any identification numbers or codes used by the defendant to identify the facility in its records.

**RESPONSE 16**

Please see the General Objection preceding these responses.

<u>Request No. 17</u>

All documents concerning the relationship, if any, between the defendant and all other "persons" who utilized the trade name "Starwood" to own, operate, manage,

control, supervise, franchise, and/or license hotels and resorts, including without limitation, the other defendants in this action and Starwood International Services, LLC.

**RESPONSE 17**

Please see the General Objection preceding these responses.

Request No. 18

All documents concerning each and every person responsible for designing, providing, implementing, supervising, and maintaining "security measures" and "security devices" at the defendant's hotels and/or resorts, including, without limitation, each and every employee, agent, servant, representative, management company, manager, contractor and/or subcontractor hired or retained by the defendant.

**RESPONSE 18**

Please see the General Objection preceding these responses.

Request No. 19

All documents concerning each and every person responsible for designing, providing, implementing, supervising, and maintaining "security measures" and "security devices" at the "Premises", including, without limitation, each and every employee, agent, servant, representative, management company, manager, contractor and/or subcontractor hired or retained by the defendant.

**RESPONSE 19**

This defendant has no such documents in its possession, custody or control.

Request No. 20

All documents identifying each and every person who had any responsibility for security at the "Premises".

**RESPONSE 20**

This defendant has no such documents in its possession, custody or control.

Request No. 21

All organizational charts of the defendant concerning and/or illustrating the departments, branches or units of the defendant's management and operation at the "Premises".

**RESPONSE 21**

This defendant has no such documents in its possession, custody or control.

Request No. 22

All organizational charts of the defendant concerning and/or illustrating the personnel and positions of the defendant whose function was crime prevention, security and/or loss prevention and their supervisors at the defendant's hotels and/or resorts.

**RESPONSE 22**

Please see the General Objection preceding these responses.

Request No. 23

All organizational charts of the defendant, concerning and/or illustrating the personnel and positions of the defendant whose function was crime prevention, security and/or loss prevention and their supervisors at the "Premises".

**RESPONSE 23**

This defendant has no such documents in its possession, custody or control.

Request No. 24

All documents concerning the geographic area of responsibility of all supervisory personnel of the defendant whose function was crime prevention, security and/or loss prevention.

**RESPONSE 24**

Please see the General Objection preceding these responses.

Request No. 25

All documents, concerning the provision of security at the "Premises".

**RESPONSE 25**

This defendant has no such documents in its possession, custody or control.

Request No. 26

All documents concerning the defendant's policies, practices and procedures for deterring and/or preventing crime at the defendant's hotels and/or resorts.

**RESPONSE 26**

Please see the General Objection preceding these responses.

Request No. 27

All documents concerning the defendant's policies, practices and procedures for deterring and/or preventing crime at the "Premises".

**RESPONSE 27**

This defendant has no such documents in its possession, custody or control.

Request No. 28

All documents concerning changes in the defendant's policies, practices and/or procedures with respect to security and crime prevention at the "Premises" after May 3, 2002.

**RESPONSE 28**

Starwood objects to this request on the grounds that it seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 29

All documents concerning industry and/or other standards used by or relied upon by the defendant in developing security policies for its hotels and/or resorts.

**RESPONSE 29**

Please see the General Objection preceding these responses. In addition, Starwood objects to this request on the grounds that the phrases "industry and/or other standards" are undefined and therefore vague and ambiguous.

Request No. 30

All documents concerning industry and/or other standards used by or relied upon by the defendant in developing security policies for the "Premises"

**RESPONSE 30**

Starwood objects to this request on the grounds that the phrases "industry and/or other standards" are undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 31

All documents, concerning each and every means and method by which the defendant informed itself of criminal activity at the "Premises", including without limitation, each and every means and method by which the defendant gathered and stored complaints and comments concerning security and safety and criminal activities at the "Premises".

**RESPONSE 31**

This defendant has no such documents in its possession, custody or control.

Request No. 32

All documents concerning any and all incidents of crime at the "Premises", including, without limitation, all security reports, security logs, incident reports, statements, confessions, calls for police assistance and correspondence.

**RESPONSE 32**

Starwood objects to this request on the grounds that the phrase "incidents of crime" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 33

All reports by residents, tenants, guests, customers, agents, managers, supers, employees or other persons of alleged criminal activity or suspicious persons at the "Premises".

**RESPONSE 33**

Starwood objects to this request on the grounds that the phrases "criminal activity" and "suspicious persons" are undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 34

All documents concerning all complaints made against or to the defendants in connection with alleged crime at the "Premises" at any time.

**RESPONSE 34**

Starwood objects to this request on the grounds that the phrase "alleged crime" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 35

All documents concerning statistics reflecting criminal incidents alleged to have occurred at the "Premises".

**RESPONSE 35**

Starwood objects to this request on the grounds that the phrase "criminal incidents" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 36

All documents concerning statistics reflecting the defendant's response to all incidents identified in the preceding request, including, without limitation, calls for police assistance.

**RESPONSE 36**

Starwood objects to this request on the grounds that the phrase "criminal incidents" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 37

All documents concerning the defendant's response to all incidents identified in the two preceding requests.

**RESPONSE 37**

Please see the responses to the two preceding requests.

Request No. 38

All documents not otherwise produced, concerning the criminal incidents reflected in the three preceding requests, including, without limitation, copies of all police and prosecutory documents in the defendant's possession, custody or control, such as incident reports, arrest reports, prosecutors' reports, and documents prepared for or in connection with any criminal prosecution, supplemental incident reports, witness statements and documents prepared by or in consultation with witnesses, logs and/or other records of calls for police assistance, and all documents concerning calls for police services.

**RESPONSE 38**

Starwood objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents not relevant to the subject of this action and seeks documents subject to the attorney-client privilege or the work-product doctrine. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

Please see the responses to the three preceding requests.

Request No. 39

All crime analyses and/or assessments performed for the "Premises" prior to the instant litigation.

**RESPONSE 39**

Starwood objects to this request on the grounds that the phrase "crime analyses and/or assessments" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 40

All crime analyses and/or assessments prepared by or for the defendants, other than those prepared in anticipation of the instant litigation, concerning security and crime prevention at the "Premises" at any time.

**RESPONSE 40**

Starwood objects to this request on the grounds that the phrase "crime analyses and/or assessments" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 41

All documents concerning meetings held by the defendant's employees and/or management personnel on the issues of crime prevention and/or criminal incidents at the "Premises".

**RESPONSE 41**

Starwood objects to this request on the grounds that the phrase "criminal incidents" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 42

All documents concerning meetings held by the defendant's tenants, guests, customers, agents, employees and/or management personnel on the issues of crime prevention and/or criminal incidents at the "Premises".

**RESPONSE 42**

Starwood objects to this request on the grounds that the phrase "criminal incidents" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 43

All documents concerning each and every communication between the defendants and/or their agents, servants or employees with the Royal Cayman Islands Police Department and/or with Caymanian, British, international and/or U.S. prosecuting authorities concerning crime prevention at the "Premises".

**RESPONSE 43**

This defendant has no such documents in its possession, custody or control.

Request No. 44

All documents concerning each and every communication between the defendants and/or their agents, servants or employees with the Royal Cayman Islands Police Department and/or with Caymanian, British, international and/or U.S. prosecuting authorities concerning the investigation and prosecution of any person for criminal activity at the "Premises".

**RESPONSE 44**

Starwood objects to this request on the grounds that the phrase "criminal activity" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 45

All documents concerning the use and/or placement of warnings to residents, tenants, guests, customers, agents, managers, employees or other persons concerning criminal activity at the "Premises" at any time.

**RESPONSE 45**

Starwood objects to this request on the grounds that the phrase "criminal activity" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 46

All documents concerning each and every "security measure", including without limitation, each and every "security device" in use at the "Premises":

      a.     before May 3, 2002;
      b.     on May 3, 2002; and
      c.     after May 3, 2002.

**RESPONSE 46**

Starwood objects to this request on the grounds that it seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 47

All documents concerning all communications, instructions, advice, suggestions, requests, or comments made to you at any time by any person, other than your counsel in this action, concerning "security measures" or "security devices", including without limitation, requests for the installation or repair of "security measures" or "security devices" at the "Premises" at any time.

**RESPONSE 47**

This defendant objects to this request because it is vague, ambiguous, overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 48

All documents concerning all repairs, changes or modifications you ever made to "security measures" and "security devices" at the "Premises".

**RESPONSE 48**

This defendant objects to this request because it is vague, ambiguous, overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 49

All documents concerning the defendant's policies relating to the installation and maintenance of "security measures" and "security devices" in hotels and/or resorts owned, controlled and/or operated by the defendants.

**RESPONSE 49**

Please see the General Objection preceding these responses.

Request No. 50

All documents concerning the activities of security personnel at the "Premises".

**RESPONSE 50**

Starwood objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 51

All documents concerning patrol and/or watch activities assigned to and/or performed by security personnel at the "Premises", including without limitation, schedules, logs, reports, memoranda, notes, incident and activity sheets, and watch reports.

**RESPONSE 51**

Starwood objects to this request on the grounds that the phrase "patrol and/or watch activities" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 52

All documents concerning the location and manner of locating public lavatories at the defendant's hotels and resorts.

**RESPONSE 52**

Please see the General Objection preceding these responses.

Request No. 53

All documents concerning the location and manner of locating public lavatories at the "Premises".

**RESPONSE 53**

Starwood objects to this request on the grounds that it seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no public lavatories at the hotel. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 54

All documents concerning changes in the design and placement of public lavatories at the defendant's hotels and resorts at any time after the lavatories first were located at the "Premises".

**RESPONSE 54**

Please see the General Objection preceding these responses. Also, please see the objection to No. 53 regarding the phrase "public lavatories".

Request No. 55

All documents concerning changes in the design and placement of public lavatories at the "Premises" at any time after the lavatories first were located at the "Premises".

**RESPONSE 55**

Starwood objects to this request on the grounds that it seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no public lavatories at the hotel. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 56

All documents concerning restrictions to public access to lavatories at the "Premises".

**RESPONSE 56**

This defendant has no such documents in its possession, custody or control.

Request No. 57

All documents concerning crimes in public lavatories at the defendant's hotels and resorts at any time.

**RESPONSE 57**

Please see the General Objection preceding these responses.

Request No. 58

All documents concerning crimes in public lavatories at the "Premises" at any time.

**RESPONSE 58**

This defendant objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no public lavatories at the hotel. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 59

All documents concerning the defendant's policies, practices and procedures for deterring or preventing crime in lavatories at the defendant's hotels and resorts.

**RESPONSE 59**

Please see the General Objection preceding these responses.

Request No. 60

All documents concerning the defendant's policies, practices and procedures for deterring or preventing crime in lavatories at the "Premises".

**RESPONSE 60**

This defendant has no such documents in its possession, custody or control.

Request No. 61

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 61**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its response to the area of the hotel where the plaintiff says she was injured, this defendant says that it has no such documents in its possession, custody or control.

Request No. 62

All lighting diagrams for the "Premises".

**RESPONSE 62**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to this request because there has never been a contention by the plaintiff that the alleged attack was caused by inadequate or insufficient lighting. Without waiving this objection, and limiting its response to the area of the hotel where the plaintiff says she was injured, this defendant says that it has no such documents in its possession, custody or control.

Request No. 63

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 63**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 64

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 64**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 65

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the corridor leading to the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 65**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 66

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the incident or instruments or instrumentalities that caused injuries to the plaintiff.

**RESPONSE 66**

Starwood objects to this request on the grounds that the phrase "instruments or instrumentalities that caused injuries to the plaintiff" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 67

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the locks, doors and lighting conditions of the corridor leading to the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 67**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 68

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 68**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the

discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 69

All documents concerning the condition of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 69**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 70

All documents concerning repairs, maintenance, construction, and/or reconstruction performed on the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time, including without limitation, receipts, cancelled checks, check stubs, credit card bills and payment information.

**RESPONSE 70**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light,

lock, or door. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 71

All documents, including without limitation, estimates, work slips, contracts, proposed contracts, and any other documents of every type, kind or description, concerning all proposals made by any person concerning repairs, maintenance, construction, and/or reconstruction of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 71**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 72

All documents concerning each and every person, including without limitation, all contractors, subcontractors, employees, agents, servants, representatives, and/or any other persons, who at any time performed any work constructing, reconstructing, repairing, maintaining, or inspecting the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 72**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 73

All documents concerning all communications, instructions, advice, suggestions, or comments made to the defendant at any time by any person other than its counsel in this action, concerning the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 73**

This defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, not reasonably limited, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 74

All documents concerning any work which the defendant performed or had performed at the "Premises" at any time.

**RESPONSE 74**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Further, this defendant objects because this request seeks information which is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that the alleged attack resulted from defective work or defective inspections, but only from inadequate security.

Request No. 75

All documents concerning any inspections the defendant performed or had performed at the "Premises" at any time.

**RESPONSE 75**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the ground that the phrase "inspections" is undefined and therefore vague and ambiguous. Further, this defendant

objects because this request seeks information which is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that the alleged attack resulted from defective work or defective inspections, but only from inadequate security.

Request No. 76

All documents concerning all Caymanian, British, international and/or U.S. Federal, state, and/or local inspections of the "Premises" at any time.

**RESPONSE 76**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the ground that the phrase "inspections" is undefined and therefore vague and ambiguous. Further, this defendant objects because this request seeks information which is not relevant to the plaintiff's claim, namely information concerning inspections at the hotel. The plaintiff has never contended that the alleged attack resulted from defective inspections, but only from inadequate security. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 77

All documents concerning all Caymanian, British, international and/or U.S. federal, state, and/or local inspections of any work performed at the "Premises" at any time.

**RESPONSE 77**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the grounds that the phrase "inspections" is undefined and therefore vague and ambiguous. Further, this defendant objects because this request seeks information which is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that the alleged attack resulted from defective work or defective inspections, but only from inadequate security.
Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 78

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning the design and construction of the spa facility

of the "Premises", including without limitation, the lavatory facilities thereof and the corridor leading thereto, at any time.

**RESPONSE 78**

The defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the grounds that the phrase "industry standards" is undefined and therefore vague and ambiguous. Finally, this defendant objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 79

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning the design, use, installation and maintenance of locks, doors and lighting conditions for the exterior and interior of the lavatory facilities and the corridor leading thereto at the spa facility of the "Premises", at any time.

**RESPONSE 79**

The defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the grounds that the phrase "industry standards" is undefined and therefore vague and ambiguous. Finally, this defendant objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 80

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning security measures and security devices at hotels and resorts, at any time.

**RESPONSE 80**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, this defendant objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant. Without waiving this

objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 81

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning monitoring criminal activity and suspicious persons at hotels and resorts, at any time.

**RESPONSE 81**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, this defendant objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant. Finally, the defendant objects to this request on the ground that the phrases "industry standards", "criminal activity" and "suspicious persons" are undefined and therefore vague and ambiguous. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 82

All documents concerning training provided to all employees whose function was crime prevention, loss prevention or security at the defendant's hotels and resorts.

**RESPONSE 82**

Please see the General Objection preceding these responses.

Request No. 83

All documents concerning training provided to all employees whose function was crime prevention, loss prevention or security at the "Premises".

**RESPONSE 83**

This defendant has no such documents in its possession, custody or control.

Request No. 84

All documents concerning security training provided to management personnel and other employees at the defendant's hotels and resorts.

**RESPONSE 84**

Please see the General Objection preceding these responses.

Request No. 85

All documents concerning security training provided to management personnel and other employees at the "Premises".

**RESPONSE 85**

This defendant has no such documents in its possession, custody or control.

Request No. 86

All documents concerning supervision provided to all employees whose function was crime prevention, loss prevention or security at the defendant's hotels and resorts.

**RESPONSE 86**

Starwood objects to this request on the grounds that the phrase "supervision" is undefined and therefore vague and ambiguous. In addition, please see the General Objection preceding these responses.

Request No. 87

All documents concerning supervision provided to all employees whose function was crime prevention, loss prevention or security at the "Premises".

**RESPONSE 87**

Starwood objects to this request on the grounds that the phrase "supervision" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 88

All documents concerning security related supervision provided to management personnel and other employees at the defendant's hotels and resorts.

**RESPONSE 88**

Starwood objects to this request on the grounds that the phrase "security related supervision" is undefined and therefore vague and ambiguous. In addition, please see the General Objection preceding these responses.

Request No. 89

All documents concerning security related supervision provided to management personnel and other employees at the "Premises".

**RESPONSE 89**

Starwood objects to this request on the grounds that the phrase "security related supervision" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 90

All documents identifying the defendant's employees who worked at the "Premises" between May 1 and 4, 2002.

**RESPONSE 90**

Starwood objects to this request on the grounds that it is overly broad, unduly burdensome, seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, but without waiving this objection, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 91

All reviews performed by the defendant, other than as part of the instant litigation, of the performance, conduct and activities of all persons who were involved in responding to the plaintiff's report that she had been raped at the "Premises".

**RESPONSE 91**

This defendant has no such documents in its possession, custody or control.

Request No. 92

All documents concerning each and every occasion when the defendant has paid worker's compensation or non-employee compensation (including judgments and settlements in civil actions) to any person for injuries allegedly sustained arising from a criminal incident at the "Premises" at any time.

**RESPONSE 92**

Starwood objects to this request on the grounds that the phrase "criminal incident" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Starwood responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 93

All documents prepared by all expert and percipient witnesses utilized at trial or in trial preparation to defend against any prior claims brought against you alleging circumstances similar to those in the case at bar.

**RESPONSE 93**

This defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the grounds that it seeks documents subject to the attorney-client or work product privileges.

Request No. 94

All documents concerning all expert witnesses that the defendants intend to call to testify at the trial of this action, including, without limitation, all reports prepared at any time by such experts, transcripts of all testimony at trial and at deposition of such experts, curriculum vitae of such expert witnesses, and all treatises, articles, correspondence, and publications by and about each such expert.

**RESPONSE 94**

This defendant has no such documents. If this defendant selects an expert who will be called to testify on its behalf at trial, this response will be supplemented.

Request No. 95

All documents, other than those prepared in anticipation of the instant litigation, to be utilized by or relied upon by the defendant's expert witnesses in their testimony or in assisting the defendant prepare its defenses in the instant action.

**RESPONSE 95**

Please see Response 94.

Request No. 96

All documents, including without limitation all correspondence, between the defendants and the plaintiff at any time.

**RESPONSE 96**

This defendant has no such documents in its possession, custody or control.

Request No. 97

All documents concerning advertising placed by the defendant in print and electronic media concerning the "Premises".

**RESPONSE 97**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not reasonably calculated to lead to the discovery of admissible evidence, and is not relevant to the plaintiff's case.

Request No. 98

Each and every document which you contend supports each and every defense which you intend to assert or which you have asserted in this action.

**RESPONSE 98**

Starwood objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks documents subject to the attorney-client or work product privileges.

Request No. 99

All documents which the defendant intends to introduce into evidence at any trial or hearing on the issue of the plaintiff's damages, including without limitation, all reports of private investigators, all surveillance tapes, films, photographs, and videotapes, and all similar documents of every type, kind and description.

**RESPONSE 99**

No decision has yet been made regarding exhibits which this defendant may attempt to introduce into evidence at the trial of this case. This defendant further says that, at this time, it has no reports of private investigators, surveillance tapes, films, photographs, videotapes or similar documents concerning the plaintiff or her alleged injuries.

Request No. 100

All documents which the defendant intends to introduce at the trial of this action.

**RESPONSE 100**

No decision has yet been made regarding such documents.

Request No. 101

All documents not otherwise produced that relate in any way to the claims and defenses raised in this lawsuit.

**RESPONSE 101**

Starwood objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks documents subject to the attorney-client or work product privileges.

By its attorneys

John B. Johnson
Corrigan, Johnson & Tutor, P.A.
141 Tremont Street
Boston, MA 02111
(617) 338-0075
BBO No. 252580

Robert J. Brown
Mends & Mount, LLP
750 Seventh Avenue
New York, NY 10019
(212) 261-8000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KIMBERLY GENEREUX,<br>Plaintiff, | ) ) ) ) | |
| v. | ) ) | C.A. NO. 05-CV-10879-JLT |
| COLUMBIA SUSSEX CORPORATION<br>d/b/a WESTIN CASUARINA HOTEL,<br>WESTIN HOTELS & RESORTS<br>WORLDWIDE, INC., WESTIN LICENSE<br>COMPANY, WESTIN LICENSE<br>COMPANY NORTH, INC., WESTIN<br>MANAGEMENT COMPANY EAST,<br>WESTIN NORTH AMERICA<br>MANAGEMENT COMPANY, INC.,<br>GALLEON BEACH RESORT, LTD., and<br>CORPORATE DEFENDANTS X1-100,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | |

## RESPONSE OF DEFENDANT WESTIN LICENSE COMPANY
## TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, Defendant Westin License Company ("Westin" or

the "defendant") hereby responds to the First Request for Production of Documents of

plaintiff Kimberly Genereux ("plaintiff")

### *General Objection*

The defendant hereby objects to each production request which seeks information

or documents concerning, relating to, referring to, or regarding any of the defendant's

hotels/resorts other than the Westin Causuarina Hotel, on the grounds that such requests

are overly broad, not reasonably limited, are unduly burdensome, are not reasonably

calculated to lead to the discovery of admissible evidence, and seek information which is

not relevant to this action.

## SPECIFIC RESPONSES AND OBJECTIONS

Request No. 1

All documents identified in your response to the plaintiff's first set of interrogatories to the defendant.

**RESPONSE 1**

The System License Agreement between this defendant and Galleon Beach Resort, Ltd has already been produced. This defendant is searching for the manuals referenced in the Agreement, and to the extent that these are relevant, they will be produced if and when they are located.

Request No. 2

All written communications and documents of the plaintiff and/or copies of all written transcriptions of any and all statements and communications of the plaintiff taken on any recording instrument, or by any other means, relative to any of the matters alleged in the plaintiff's complaint.

**RESPONSE 2**

The defendant has no such documents in its possession, custody or control.

Request No. 3

All communications and documents of or concerning any and all witnesses to the matters alleged in the plaintiff's complaint including injuries and damages alleged.

**RESPONSE 3**

The defendant has no such documents in its possession, custody or control.

Request No. 4

All communications or documents, to you or to anyone else, in your possession, custody or control, which you purport to have been, or know to have been written by the plaintiff.

**RESPONSE 4**

This defendant has no such documents in its possession, custody or control.

Request No. 5

All documents concerning the incident which gives rise to this action.

**RESPONSE 5**

Westin objects to this request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and seeks documents subject to the attorney-client or work-product doctrine.

Request No. 6

All written reports, internal memoranda or the like of any investigator, safety officer, employee, servant or agent of the defendant concerning the incident.

**RESPONSE 6**

Westin objects to this request on the grounds that it seeks documents subject to the attorney-client privilege or work-product doctrine. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 7

All documents concerning investigations performed by the defendant concerning the incident.

**RESPONSE 7**

Westin objects to this request on the grounds that it seeks documents subject to the attorney-client privilege or work-product doctrine. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 8

All documents which identify witnesses to the incident.

**RESPONSE 8**

Please see the documents produced by this defendant as part of the Automatic Disclosure in this case.

Request No. 9

All documents concerning injuries sustained by any person other than the plaintiff allegedly as a result of the incident.

**RESPONSE 9**

This defendant has no such documents in its possession, custody or control.

Request No. 10

All reports, signed or unsigned, prepared for or filed with Caymanian, British, international and/or U.S. federal, state and/or local authorities stating the defendant's version of the incident.

**RESPONSE 10**

This defendant has no such documents in its possession, custody or control.

Request No. 11

All reports, signed or unsigned, prepared for or filed with Caymanian, British, international and/or U.S. federal, state and/or local authorities describing witnesses' versions of the incident.

**RESPONSE 11**

This defendant has no such documents in its possession, custody or control.

Request No. 12

All documents concerning all communications made by the defendant or made to the defendant at any time by any person, other than your counsel in this action, concerning the incident.

**RESPONSE 12**

This defendant has no such documents in its possession, custody or control.

Request No. 13

All documents concerning the ownership of the "Premises", including without limitation, all documents identifying each and every owner of the "Premises" in May 2002.

**RESPONSE 13**

Pursuant to the Order of the Court (Tauro, J.) dated September 26, 2006, the defendant has produced to the plaintiff all documents in its possession, custody or control that are responsive to this Request.

Request No. 14

All documents, including without limitation, deeds, title documents, leases, management or other agreements, relating to the ownership and/or control of the "Premises", which were in effect from January 1, 1999 to date.

**RESPONSE 14**

Pursuant to the Order of the Court (Tauro, J.) dated September 26, 2006, the defendant has produced to the plaintiff all documents in its possession, custody or control that are responsive to this Request.

Request No. 15

All agreements between the defendant and the owner of the "Premises" which were in effect in or about May 2002.

**RESPONSE 15**

Pursuant to the Order of the Court (Tauro, J.) dated September 26, 2006, the defendant has produced to the plaintiff all documents in its possession, custody or control that are responsive to this Request.

Request No. 16

All documents which identify each and every hotel and/or resort owned, controlled and/or operated by the defendant in May 2002, including without limitation documents which identify the address and location of each facility, the owner, manager and person(s) in overall control of the facility, the owner, manager and person(s) in control of "security measures" at the facility, and any identification numbers or codes used by the defendant to identify the facility in its records.

**RESPONSE 16**

Please see the General Objection preceding these responses.

Request No. 17

All documents concerning the relationship, if any, between the defendant and all other "persons" who utilized the trade name "Westin" to own, operate, manage, control,

supervise, franchise, and/or license hotels and resorts, including without limitation, the other defendants in this action and Westin International Services, LLC.

**RESPONSE 17**

Please see the General Objection preceding these responses.

Request No. 18

All documents concerning each and every person responsible for designing, providing, implementing, supervising, and maintaining "security measures" and "security devices" at the defendant's hotels and/or resorts, including, without limitation, each and every employee, agent, servant, representative, management company, manager, contractor and/or subcontractor hired or retained by the defendant.

**RESPONSE 18**

Please see the General Objection preceding these responses.

Request No. 19

All documents concerning each and every person responsible for designing, providing, implementing, supervising, and maintaining "security measures" and "security devices" at the "Premises", including, without limitation, each and every employee, agent, servant, representative, management company, manager, contractor and/or subcontractor hired or retained by the defendant.

**RESPONSE 19**

This defendant has no such documents in its possession, custody or control.

Request No. 20

All documents identifying each and every person who had any responsibility for security at the "Premises".

**RESPONSE 20**

This defendant has no such documents in its possession, custody or control.

Request No. 21

All organizational charts of the defendant concerning and/or illustrating the departments, branches or units of the defendant's management and operation at the "Premises".

**RESPONSE 21**

This defendant has no such documents in its possession, custody or control.

Request No. 22

All organizational charts of the defendant concerning and/or illustrating the personnel and positions of the defendant whose function was crime prevention, security and/or loss prevention and their supervisors at the defendant's hotels and/or resorts.

**RESPONSE 22**

Please see the General Objection preceding these responses.

Request No. 23

All organizational charts of the defendant, concerning and/or illustrating the personnel and positions of the defendant whose function was crime prevention, security and/or loss prevention and their supervisors at the "Premises".

**RESPONSE 23**

This defendant has no such documents in its possession, custody or control.

Request No. 24

All documents concerning the geographic area of responsibility of all supervisory personnel of the defendant whose function was crime prevention, security and/or loss prevention.

**RESPONSE 24**

Please see the General Objection preceding these responses.

Request No. 25

All documents, concerning the provision of security at the "Premises".

**RESPONSE 25**

This defendant has no such documents in its possession, custody or control.

Request No. 26

All documents concerning the defendant's policies, practices and procedures for deterring and/or preventing crime at the defendant's hotels and/or resorts.

**RESPONSE 26**

Please see the General Objection preceding these responses.

Request No. 27

All documents concerning the defendant's policies, practices and procedures for deterring and/or preventing crime at the "Premises".

**RESPONSE 27**

This defendant has no such documents in its possession, custody or control.

Request No. 28

All documents concerning changes in the defendant's policies, practices and/or procedures with respect to security and crime prevention at the "Premises" after May 3, 2002.

**RESPONSE 28**

Westin objects to this request on the grounds that it seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 29

All documents concerning industry and/or other standards used by or relied upon by the defendant in developing security policies for its hotels and/or resorts.

**RESPONSE 29**

Please see the General Objection preceding these responses. In addition, Westin objects to this request on the grounds that the phrases "industry and/or other standards" are undefined and therefore vague and ambiguous.

Request No. 30

All documents concerning industry and/or other standards used by or relied upon by the defendant in developing security policies for the "Premises"

**RESPONSE 30**

Westin objects to this request on the grounds that the phrases "industry and/or other standards" are undefined and therefore vague and ambiguous.   Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

<u>Request No. 31</u>

All documents, concerning each and every means and method by which the defendant informed itself of criminal activity at the "Premises", including without limitation, each and every means and method by which the defendant gathered and stored complaints and comments concerning security and safety and criminal activities at the "Premises".

**RESPONSE 31**

This defendant has no such documents in its possession, custody or control.

<u>Request No. 32</u>

All documents concerning any and all incidents of crime at the "Premises", including, without limitation, all security reports, security logs, incident reports, statements, confessions, calls for police assistance and correspondence.

**RESPONSE 32**

Westin objects to this request on the grounds that the phrase "incidents of crime" is undefined and therefore vague and ambiguous.  Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

<u>Request No. 33</u>

All reports by residents, tenants, guests, customers, agents, managers, supers, employees or other persons of alleged criminal activity or suspicious persons at the "Premises".

**RESPONSE 33**

Westin objects to this request on the grounds that the phrases "criminal activity" and "suspicious persons" are undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 34

All documents concerning all complaints made against or to the defendants in connection with alleged crime at the "Premises" at any time.

**RESPONSE 34**

Westin objects to this request on the grounds that the phrase "alleged crime" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 35

All documents concerning statistics reflecting criminal incidents alleged to have occurred at the "Premises".

**RESPONSE 35**

Westin objects to this request on the grounds that the phrase "criminal incidents" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 36

All documents concerning statistics reflecting the defendant's response to all incidents identified in the preceding request, including, without limitation, calls for police assistance.

**RESPONSE 36**

Westin objects to this request on the grounds that the phrase "criminal incidents" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 37

All documents concerning the defendant's response to all incidents identified in the two preceding requests.

**RESPONSE 37**

Please see the responses to the two preceding requests.

Request No. 38

All documents not otherwise produced, concerning the criminal incidents reflected in the three preceding requests, including, without limitation, copies of all police and prosecutory documents in the defendant's possession, custody or control, such as incident reports, arrest reports, prosecutors' reports, and documents prepared for or in connection with any criminal prosecution, supplemental incident reports, witness statements and documents prepared by or in consultation with witnesses, logs and/or other records of calls for police assistance, and all documents concerning calls for police services.

**RESPONSE 38**

Westin objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents not relevant to the subject of this action and seeks documents subject to the attorney-client privilege or the work-product doctrine. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

Please see the responses to the three preceding requests.

Request No. 39

All crime analyses and/or assessments performed for the "Premises" prior to the instant litigation.

**RESPONSE 39**

     Westin objects to this request on the grounds that the phrase "crime analyses and/or assessments" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

     This defendant has no such documents in its possession, custody or control.

Request No. 40

     All crime analyses and/or assessments prepared by or for the defendants, other than those prepared in anticipation of the instant litigation, concerning security and crime prevention at the "Premises" at any time.

**RESPONSE 40**

     Westin objects to this request on the grounds that the phrase "crime analyses and/or assessments" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

     This defendant has no such documents in its possession, custody or control.

Request No. 41

     All documents concerning meetings held by the defendant's employees and/or management personnel on the issues of crime prevention and/or criminal incidents at the "Premises".

**RESPONSE 41**

     Westin objects to this request on the grounds that the phrase "criminal incidents" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

     This defendant has no such documents in its possession, custody or control.

Request No. 42

     All documents concerning meetings held by the defendant's tenants, guests, customers, agents, employees and/or management personnel on the issues of crime prevention and/or criminal incidents at the "Premises".

**RESPONSE 42**

Westin objects to this request on the grounds that the phrase "criminal incidents" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 43

All documents concerning each and every communication between the defendants and/or their agents, servants or employees with the Royal Cayman Islands Police Department and/or with Caymanian, British, international and/or U.S. prosecuting authorities concerning crime prevention at the "Premises".

**RESPONSE 43**

This defendant has no such documents in its possession, custody or control.

Request No. 44

All documents concerning each and every communication between the defendants and/or their agents, servants or employees with the Royal Cayman Islands Police Department and/or with Caymanian, British, international and/or U.S. prosecuting authorities concerning the investigation and prosecution of any person for criminal activity at the "Premises".

**RESPONSE 44**

Westin objects to this request on the grounds that the phrase "criminal activity" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 45

All documents concerning the use and/or placement of warnings to residents, tenants, guests, customers, agents, managers, employees or other persons concerning criminal activity at the "Premises" at any time.

**RESPONSE 45**

Westin objects to this request on the grounds that the phrase "criminal activity" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 46

All documents concerning each and every "security measure", including without limitation, each and every "security device" in use at the "Premises":

      a.     before May 3, 2002;
      b.     on May 3, 2002; and
      c.     after May 3, 2002.

**RESPONSE 46**

Westin objects to this request on the grounds that it seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 47

All documents concerning all communications, instructions, advice, suggestions, requests, or comments made to you at any time by any person, other than your counsel in this action, concerning "security measures" or "security devices", including without limitation, requests for the installation or repair of "security measures" or "security devices" at the "Premises" at any time.

**RESPONSE 47**

This defendant objects to this request because it is vague, ambiguous, overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 48

All documents concerning all repairs, changes or modifications you ever made to "security measures" and "security devices" at the "Premises".

**RESPONSE 48**

This defendant objects to this request because it is vague, ambiguous, overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 49

All documents concerning the defendant's policies relating to the installation and maintenance of "security measures" and "security devices" in hotels and/or resorts owned, controlled and/or operated by the defendants.

**RESPONSE 49**

Please see the General Objection preceding these responses.

Request No. 50

All documents concerning the activities of security personnel at the "Premises".

**RESPONSE 50**

Westin objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 51

All documents concerning patrol and/or watch activities assigned to and/or performed by security personnel at the "Premises", including without limitation, schedules, logs, reports, memoranda, notes, incident and activity sheets, and watch reports.

**RESPONSE 51**

Westin objects to this request on the grounds that the phrase "patrol and/or watch activities" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 52

All documents concerning the location and manner of locating public lavatories at the defendant's hotels and resorts.

**RESPONSE 52**

Please see the General Objection preceding these responses.

Request No. 53

All documents concerning the location and manner of locating public lavatories at the "Premises".

**RESPONSE 53**

Westin objects to this request on the grounds that it seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no public lavatories at the hotel. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 54

All documents concerning changes in the design and placement of public lavatories at the defendant's hotels and resorts at any time after the lavatories first were located at the "Premises".

**RESPONSE 54**

Please see the General Objection preceding these responses. Also, please see the objection to No. 53 regarding the phrase "public lavatories".

Request No. 55

All documents concerning changes in the design and placement of public lavatories at the "Premises" at any time after the lavatories first were located at the "Premises".

**RESPONSE 55**

Westin objects to this request on the grounds that it seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no public lavatories at the hotel. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 56

All documents concerning restrictions to public access to lavatories at the "Premises".

**RESPONSE 56**

This defendant has no such documents in its possession, custody or control.

Request No. 57

All documents concerning crimes in public lavatories at the defendant's hotels and resorts at any time.

**RESPONSE 57**

Please see the General Objection preceding these responses.

Request No. 58

All documents concerning crimes in public lavatories at the "Premises" at any time.

**RESPONSE 58**

This defendant objects to the phrase "public lavatories" because, to this defendant's knowledge, there are no public lavatories at the hotel. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 59

All documents concerning the defendant's policies, practices and procedures for deterring or preventing crime in lavatories at the defendant's hotels and resorts.

**RESPONSE 59**

Please see the General Objection preceding these responses.

Request No. 60

All documents concerning the defendant's policies, practices and procedures for deterring or preventing crime in lavatories at the "Premises".

**RESPONSE 60**

This defendant has no such documents in its possession, custody or control.

Request No. 61

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 61**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its response to the area of the hotel where the plaintiff says she was injured, this defendant says that it has no such documents in its possession, custody or control.

Request No. 62

All lighting diagrams for the "Premises".

**RESPONSE 62**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. This defendant further objects to this request because there has never been a contention by the plaintiff that the alleged attack was caused by inadequate or insufficient lighting. Without waiving this objection, and limiting its response to the area of the hotel where the plaintiff says she was injured, this defendant says that it has no such documents in its possession, custody or control.

Request No. 63

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 63**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 64

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 64**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 65

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the corridor leading to the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 65**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 66

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the incident or instruments or instrumentalities that caused injuries to the plaintiff.

**RESPONSE 66**

Westin objects to this request on the grounds that the phrase "instruments or instrumentalities that caused injuries to the plaintiff" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 67

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the locks, doors and lighting conditions of the corridor leading to the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 67**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 68

All photographs, films, videotapes, drawings, diagrams, blueprints, plots, sketches, chalks, and/or other representations of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" in the defendant's possession, custody or control.

**RESPONSE 68**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the

discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 69

All documents concerning the condition of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 69**

This defendant objects to this request because it seeks information which is not relevant to the plaintiff's claim, and which is not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 70

All documents concerning repairs, maintenance, construction, and/or reconstruction performed on the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time, including without limitation, receipts, cancelled checks, check stubs, credit card bills and payment information.

**RESPONSE 70**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light,

lock, or door. Without waiving this objection, this defendant says it has no such documents in its possession, custody or control.

Request No. 71

All documents, including without limitation, estimates, work slips, contracts, proposed contracts, and any other documents of every type, kind or description, concerning all proposals made by any person concerning repairs, maintenance, construction, and/or reconstruction of the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 71**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 72

All documents concerning each and every person, including without limitation, all contractors, subcontractors, employees, agents, servants, representatives, and/or any other persons, who at any time performed any work constructing, reconstructing, repairing, maintaining, or inspecting the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 72**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 73

All documents concerning all communications, instructions, advice, suggestions, or comments made to the defendant at any time by any person other than its counsel in this action, concerning the locks, doors and lighting conditions of the exterior and interior of the lavatory facilities at the Hibiscus Spa facility of the "Premises" at any time.

**RESPONSE 73**

This defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, not reasonably limited, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence. According to the plaintiff's deposition testimony, the alleged attack did not occur in the Hibiscus Spa's lavatory facilities, but instead allegedly happened in a restroom outside of the spa and adjacent to the hotel's meeting facility. This defendant further objects because this request seeks information concerning locks, doors, and lighting conditions at the hotel, none of which are relevant to this case since the plaintiff has never contended that the alleged attack was caused by a defective light, lock, or door. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 74

All documents concerning any work which the defendant performed or had performed at the "Premises" at any time.

**RESPONSE 74**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Further, this defendant objects because this request seeks information which is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that the alleged attack resulted from defective work or defective inspections, but only from inadequate security.

Request No. 75

All documents concerning any inspections the defendant performed or had performed at the "Premises" at any time.

**RESPONSE 75**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the ground that the phrase "inspections" is undefined and therefore vague and ambiguous. Further, this defendant

objects because this request seeks information which is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that the alleged attack resulted from defective work or defective inspections, but only from inadequate security.

Request No. 76

All documents concerning all Caymanian, British, international and/or U.S. Federal, state, and/or local inspections of the "Premises" at any time.

**RESPONSE 76**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the ground that the phrase "inspections" is undefined and therefore vague and ambiguous. Further, this defendant objects because this request seeks information which is not relevant to the plaintiff's claim, namely information concerning inspections at the hotel. The plaintiff has never contended that the alleged attack resulted from defective inspections, but only from inadequate security. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 77

All documents concerning all Caymanian, British, international and/or U.S. federal, state, and/or local inspections of any work performed at the "Premises" at any time.

**RESPONSE 77**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the grounds that the phrase "inspections" is undefined and therefore vague and ambiguous. Further, this defendant objects because this request seeks information which is not relevant to the plaintiff's claim, namely information concerning work done at the hotel and inspections of that work. Yet the plaintiff has never contended that the alleged attack resulted from defective work or defective inspections, but only from inadequate security.
Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 78

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning the design and construction of the spa facility

of the "Premises", including without limitation, the lavatory facilities thereof and the corridor leading thereto, at any time.

**RESPONSE 78**

The defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the grounds that the phrase "industry standards" is undefined and therefore vague and ambiguous. Finally, this defendant objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 79

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning the design, use, installation and maintenance of locks, doors and lighting conditions for the exterior and interior of the lavatory facilities and the corridor leading thereto at the spa facility of the "Premises", at any time.

**RESPONSE 79**

The defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the grounds that the phrase "industry standards" is undefined and therefore vague and ambiguous. Finally, this defendant objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

Request No. 80

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning security measures and security devices at hotels and resorts, at any time.

**RESPONSE 80**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, this defendant objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant. Without waiving this

objection, this defendant says that it has no such documents in its possession, custody or control.

<u>Request No. 81</u>

All documents concerning all Caymanian, British, international and/or U.S. standards, rules, regulations, principles, practices and/or statutes, including without limitation, industry standards, concerning monitoring criminal activity and suspicious persons at hotels and resorts, at any time.

**RESPONSE 81**

This defendant objects to this request because it is overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, this defendant objects to this request because it seeks public records which are equally available to the plaintiff as they are to this defendant. Finally, the defendant objects to this request on the ground that the phrases "industry standards", "criminal activity" and "suspicious persons" are undefined and therefore vague and ambiguous. Without waiving this objection, this defendant says that it has no such documents in its possession, custody or control.

<u>Request No. 82</u>

All documents concerning training provided to all employees whose function was crime prevention, loss prevention or security at the defendant's hotels and resorts.

**RESPONSE 82**

Please see the General Objection preceding these responses.

<u>Request No. 83</u>

All documents concerning training provided to all employees whose function was crime prevention, loss prevention or security at the "Premises".

**RESPONSE 83**

This defendant has no such documents in its possession, custody or control.

<u>Request No. 84</u>

All documents concerning security training provided to management personnel and other employees at the defendant's hotels and resorts.

**RESPONSE 84**

Please see the General Objection preceding these responses.

Request No. 85

All documents concerning security training provided to management personnel and other employees at the "Premises".

**RESPONSE 85**

This defendant has no such documents in its possession, custody or control.

Request No. 86

All documents concerning supervision provided to all employees whose function was crime prevention, loss prevention or security at the defendant's hotels and resorts.

**RESPONSE 86**

Westin objects to this request on the grounds that the phrase "supervision" is undefined and therefore vague and ambiguous. In addition, please see the General Objection preceding these responses.

Request No. 87

All documents concerning supervision provided to all employees whose function was crime prevention, loss prevention or security at the "Premises".

**RESPONSE 87**

Westin objects to this request on the grounds that the phrase "supervision" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 88

All documents concerning security related supervision provided to management personnel and other employees at the defendant's hotels and resorts.

**RESPONSE 88**

Westin objects to this request on the grounds that the phrase "security related supervision" is undefined and therefore vague and ambiguous. In addition, please see the General Objection preceding these responses.

Request No. 89

All documents concerning security related supervision provided to management personnel and other employees at the "Premises".

**RESPONSE 89**

Westin objects to this request on the grounds that the phrase "security related supervision" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 90

All documents identifying the defendant's employees who worked at the "Premises" between May 1 and 4, 2002.

**RESPONSE 90**

Westin objects to this request on the grounds that it is overly broad, unduly burdensome, seeks documents not relevant to the subject of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, but without waiving this objection, Westin responds to this request as follows:

This defendant has no such documents in its possession, custody or control.

Request No. 91

All reviews performed by the defendant, other than as part of the instant litigation, of the performance, conduct and activities of all persons who were involved in responding to the plaintiff's report that she had been raped at the "Premises".

**RESPONSE 91**

This defendant has no such documents in its possession, custody or control.

Request No. 92

     All documents concerning each and every occasion when the defendant has paid worker's compensation or non-employee compensation (including judgments and settlements in civil actions) to any person for injuries allegedly sustained arising from a criminal incident at the "Premises" at any time.

**RESPONSE 92**

     Westin objects to this request on the grounds that the phrase "criminal incident" is undefined and therefore vague and ambiguous. Notwithstanding, but without waiving these objections, Westin responds to this request as follows:

     This defendant has no such documents in its possession, custody or control.

Request No. 93

     All documents prepared by all expert and percipient witnesses utilized at trial or in trial preparation to defend against any prior claims brought against you alleging circumstances similar to those in the case at bar.

**RESPONSE 93**

     This defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, not reasonably limited, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the defendant objects to this request on the grounds that it seeks documents subject to the attorney-client or work product privileges.

Request No. 94

     All documents concerning all expert witnesses that the defendants intend to call to testify at the trial of this action, including, without limitation, all reports prepared at any time by such experts, transcripts of all testimony at trial and at deposition of such experts, curriculum vitae of such expert witnesses, and all treatises, articles, correspondence, and publications by and about each such expert.

**RESPONSE 94**

     This defendant has no such documents. If this defendant selects an expert who will be called to testify on its behalf at trial, this response will be supplemented.

Request No. 95

     All documents, other than those prepared in anticipation of the instant litigation, to be utilized by or relied upon by the defendant's expert witnesses in their testimony or in assisting the defendant prepare its defenses in the instant action.

**RESPONSE 95**

Please see Response 94.

Request No. 96

All documents, including without limitation all correspondence, between the defendants and the plaintiff at any time.

**RESPONSE 96**

This defendant has no such documents in its possession, custody or control.

Request No. 97

All documents concerning advertising placed by the defendant in print and electronic media concerning the "Premises".

**RESPONSE 97**

This defendant objects to this request on the grounds that it is overly broad, not reasonably limited, not reasonably calculated to lead to the discovery of admissible evidence, and is not relevant to the plaintiff's case.

Request No. 98

Each and every document which you contend supports each and every defense which you intend to assert or which you have asserted in this action.

**RESPONSE 98**

Westin objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks documents subject to the attorney-client or work product privileges.

Request No. 99

All documents which the defendant intends to introduce into evidence at any trial or hearing on the issue of the plaintiff's damages, including without limitation, all reports of private investigators, all surveillance tapes, films, photographs, and videotapes, and all similar documents of every type, kind and description.

**RESPONSE 99**

No decision has yet been made regarding exhibits which this defendant may attempt to introduce into evidence at the trial of this case. This defendant further says that, at this time, it has no reports of private investigators, surveillance tapes, films, photographs, videotapes or similar documents concerning the plaintiff or her alleged injuries.

Request No. 100

All documents which the defendant intends to introduce at the trial of this action.

**RESPONSE 100**

No decision has yet been made regarding such documents.

Request No. 101

All documents not otherwise produced that relate in any way to the claims and defenses raised in this lawsuit.

**RESPONSE 101**

Westin objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks documents subject to the attorney-client or work product privileges.

By its attorneys

John B. Johnson
Corrigan, Johnson & Tutor, P.A.
141 Tremont Street
Boston, MA 02111
(617) 338-0075
BBO No. 252580

Robert J. Brown
Mends & Mount, LLP
750 Seventh Avenue
New York, NY 10019
(212) 261-8000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY GENEREUX,<br>            Plaintiff,<br><br>v.<br><br>COLUMBIA SUSSEX CORPORATION<br>d/b/a WESTIN CASUARINA HOTEL,<br>STARWOOD HOTELS & RESORTS<br>WORLDWIDE, INC., WESTIN LICENSE<br>COMPANY, WESTIN LICENSE<br>COMPANY NORTH, INC., WESTIN<br>MANAGEMENT COMPANY NORTH,<br>INC., WESTIN MANAGEMENT<br>COMPANY EAST, WESTIN NORTH<br>AMERICA MANAGEMENT COMPANY,<br>INC., GALLEON BEACH RESORT, LTD.,<br>and CORPORATE DEFENDANTS X1-100,<br>            Defendants. | C.A. NO. 05-CV-10879-JLT |

## ANSWER OF DEFENDANT COLUMBIA SUSSEX CORPORATION
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

NOW COMES DEFENDANT, COLUMBIA SUSSEX CORPORATION

("CSC") and submits the following responses to the First Set of Interrogatories

propounded to it in the within action by PLAINTIFF KIMBERLY GENEREUX.    In

responding, CSC does not in any way waive or intend to waive, but rather preserves and

intends to preserve, (a) all objections as to competency, relevancy, materiality, and

admissibility of any information provided; (b) all objections as to any infirmity in the

Interogatories; (c) all objections, on any ground, to the use of any identified information

or documents in any other proceeding; and (d) all objections to any further discovery

requests.  Any inadvertent disclosure of privileged information is not intended to and

shall not constitute a waiver of any applicable privilege. CSC reserves the right to amend, modify or supplement these responses and objections as necessary.

## Interrogatory No. 1

Explain in full and complete detail the relationship, if any, between the defendant and (i) each of the other defendants in this action, (ii) the Premises, and (iii) any persons not identified in subsections (i) to (ii) who owned, controlled, managed, franchised and or operated the Premises, detailing in particular:

(a) The type, nature and extent of involvement of each entity in the operation of the Premises, including without limitation, the ownership, management, control, supervision, licensing, and/or franchising of general hotel functions at the Premises;

(b) The type, nature and extent of involvement of each entity in security operations at the Premises, including without limitation, the management, control, and/or supervision of security operations at the Premises;

(c) The "identification", as defined in Local Rule 26.5(c), of any persons who were officers, directors, agents, or managerial employees of more than one of the above corporations or entities at the same time;

(d) The "identification", as defined in Local Rule 26.5(c), of any documents shared in common by the several entities, including, without limitation, reports to corporate directors, officers and/or shareholders;

(e) Whether any loss prevention, security departments or other departments which had as their function loss prevention, security and the prevention of crime utilized the same personnel, operating manuals, handbooks, guidelines, training procedures, quarterly or other reports, and/or any other security or loss prevention information, and, if so, "identify", as defined in Local Rule 26.5 (c), all such persons and documents.

## Answer No. 1

CSC objects to this Interrogatory to the extent it assumes facts in issue, including the existence of various "relationships" among the defendants or among one or more of the defendants and unidentified "persons" who allegedly are associated with the Premises. CSC further objects to this Interrogatory to the extent that: (i) it poses compound questions; (ii) it is overly broad, vague, ambiguous, redundant and unlimited as to time and scope; (iii) it seeks information that is unrelated to the facts or issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence; or, (iv) it seeks confidential and proprietary information or information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine,

common interest privilege, or any other privilege or immunity that may be available to CSC.

Subject to the foregoing objections, and upon information and belief, the Westin Casuarina Resort & Spa was owned and operated by Galleon Beach Resort Ltd. on the date of the alleged incident.

CSC and Galleon Beach Resort, Ltd. are separate and unrelated entities. Galleon Beach Resort, Ltd. is not a direct or indirect subsidiary of CSC. CSC does not own any stock or membership interest in Galleon Beach Resort Ltd CSC does not maintain a hotel management agreement with Galleon Beach Resort Ltd.

CSC and Galleon Beach Resort Ltd. are parties to a Service Agreement dated January 1, 1996, as amended on January 1, 1999. Under the terms of the Service Agreement, CSC, as an independent contractor, agreed to provide financial services to Galleon Beach Resort, Ltd. CSC does not provide any facilities maintenance or security services to Galleon Beach Resort Ltd., nor does it control any on-site operations.

With respect to the particular information requested in Items (a) through (e) above, CSC responds as follows:

(a)     The type, nature and extent of involvement of each entity in the operation of the Premises, including without limitation, the ownership, management, control, supervision, licensing, and/or franchising of general hotel functions at the Premises;

See information provided above.

(b)     The type, nature and extent of involvement of each entity in security operations at the Premises, including without limitation, the management, control, and/or supervision of security operations at the Premises;

See information provided above. Galleon Beach Resorts Ltd. owns, operates, manages and controls the Westin Casuarina Resort & Spa. CSC does not manage, control or supervise security operations at the Premises.

(c)     The "identification," as defined in Local Rule 26.5(c), of any persons who were officers, directors, agents, or managerial employees of more than one of the above corporations or entities at the same time;

In 2002, of the six officers of CSC, the following persons held offices in both CSC and Galleon Beach Resort Ltd.: William J. Yung, III, President; Ed Rofes, Vice President of Finance; and Theodore R. Mitchel, Secretary & Treasurer. Of the three Directors of Columbia Sussex, only one was also a Director of Galleon Beach: Mr. William J. Yung, III.

(d)     The "identification," as defined in Local Rule 26.5(c), of any documents shared in common by the several entities, including, without limitation, reports to corporate directors, officers and/or shareholders;

See the foregoing discussion of the Service Agreement between CSC and Galleon Beach Resort Ltd.

CSC objects to this request because it is irrelevant, ambiguous, and overly broad.  As explained above, CSC performs certain recordkeeping and reporting functions for Galleon Beach Resort, Ltd. pursuant to the Service Agreement described above.  CSC objects to the characterization of any records it prepares or maintains for Galleon Beach Resort, Ltd. as "documents shared in common."

(e)     Whether any loss prevention, security departments or other departments which had as their function loss prevention, security and the prevention of crime utilized the same personnel, operating manuals, handbooks, guidelines, training procedures, quarterly or other reports, and/or any other security or loss prevention information, and, if so, "identify," as defined in Local Rule 26.5 (c), all such persons and documents.

This Interrogatory is not pertinent to the first set of discovery requests pertaining to issues of ownership of the premises.

## VERIFICATION

STATE OF KENTUCKY                     )
                                      )      SS.
COUNTY OF KENTON                      )

Derek Haught, being first duly sworn upon his oath, deposes and says that he is the Vice President of Finance of Columbia Sussex Corporation; that he has reviewed the foregoing responses to the Interrogatories served upon Columbia Sussex Corporation in the above-captioned case; that, to the best of his knowledge, the responses are true and correct; that the responses are based upon and therefore necessarily limited by the records in existence, presently recollected, and thus far discovered in the course of the preparation of the responses; and that, consequently, he reserves the right to make changes in the responses if it appears at any time that omissions or errors have been made therein or that more information is available.

Derek Haught
Vice President-Finance
Columbia Sussex Corporation

SWORN TO AND ACKNOWLEDGED before me, the undersigned Notary Public, on this ___6___ day of November, 2006.

Notary Public

**LORI L. SCHENK**
Notary Public, Kentucky State at Large
My Commission Expires Sept. 19, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                     )
KIMBERLY GENEREUX,                   )
                  Plaintiff,         )
                                     )
v.                                   )        C.A. NO. 05-CV-10879-JLT
                                     )
COLUMBIA SUSSEX CORPORATION          )
d/b/a WESTIN CASUARINA HOTEL,        )
STARWOOD HOTELS & RESORTS            )
WORLDWIDE, INC., WESTIN LICENSE      )
COMPANY, WESTIN LICENSE              )
COMPANY NORTH, INC., WESTIN          )
MANAGEMENT COMPANY EAST,             )
WESTIN NORTH AMERICA                 )
MANAGEMENT COMPANY, INC.,            )
GALLEON BEACH RESORT, LTD., and      )
CORPORATE DEFENDANTS X1-100,         )
                  Defendants.        )
                                     )
```

## ANSWERS OF DEFENDANT COLUMBIA SUSSEX CORPORATION
## TO INTERROGATORIES POSED BY PLAINTIFF KIMBERLY GENEREUX

**NOTE**: Interrogatory No. 1 (a-d), concerning the issue of the hotel's ownership, has previously been answered.

### Interrogatory No. 1

Explain in full and complete detail the relationship, if any, between the defendant and (i) each of the other defendants in this action, (ii) the Premises, and (iii) any persons not identified in subsections (i) to (ii) who owned, controlled, managed, franchised and or operated the Premises, detailing in particular:

(a)    The type, nature and extent of involvement of each entity in the operation of the Premises, including without limitation, the ownership, management, control, supervision, licensing, and/or franchising of general hotel functions at the Premises;

(b)    The type, nature and extent of involvement of each entity in security operations at the Premises, including without limitation, the management, control, and/or supervision of security operations at the Premises;

(c)    The "identification", as defined in Local Rule 26.5(c), of any persons who were officers, directors, agents, or managerial employees of more than one of the above corporations or entities at the same time;

(d)    The "identification]", as defined in Local Rule 26.5(c), of any documents shared in common by the several entities, including, without limitation, reports to corporate directors, officers and/or shareholders;

(e)    Whether any loss prevention, security departments or other departments which had as their function loss prevention, security and the prevention of crime utilized the same personnel, operating manuals, handbooks, guidelines, training procedures, quarterly or other reports, and/or any other security or loss prevention information, and, if so, "identify", as defined in Local Rule 26.5 (c), all such persons and documents.

## ANSWER 1(c)

Defendant Columbia objects to this subpart of Interrogatory No. 1 because it is overly broad, unlimited, and phrased in such a way as to be unintelligible. Without waiving these objections, and limiting its answer to the Westin Casuarina Hotel, Defendant Columbia says that it did not own, manage or supervise the Westin Casuarina Hotel and that it had no responsibility for security at the Westin Casuarina Hotel. As general reference and/or resource materials, Columbia Sussex forwarded Galleon Beach two manuals, a "Safety and Loss Prevention Manual" and a "Manager's Manual."

## Interrogatory No. 2

Identify the organization of all departments, divisions, branches or units of the defendant which had as their function loss prevention, security and/or the prevention of crime in Westin hotels and/or resorts by "identifying", as defined in Local Rule 26.5 (c):

(a)    The name of each department, division, branch, or unit of the defendant which had such functions;

(b)    The titles, positions and job descriptions of each person who worked at each level of each department, division, branch or unit identified above, including, without limitation, all managerial personnel, regional managerial personnel, and senior/corporate managerial personnel;

(c)    The responsibilities of each person who worked in each position identified above;

(d)    The geographic area of responsibility of each person identified above; and

(e)    All persons who were employed in all job categories identified above.

2

**ANSWER 2**

Defendant Columbia objects to this interrogatory because it is overly broad, unlimited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its answer to the Westin Casuarina Hotel: None. Defendant Columbia had no responsibility for security at the Westin Casuarina Hotel.

**Interrogatory No. 3**

"Identify", as defined in Local Rule 26.5(c), all "persons" retained by the defendant to evaluate, review and/or oversee hotel security in Westin Hotels and/or resorts.

**ANSWER 3**

Defendant Columbia objects to this interrogatory because it is overly broad, unlimited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its answer to the Westin Casuarina Hotel: None. Defendant Columbia had no responsibility for security at the Westin Casuarina Hotel.

**Interrogatory No. 4**

"Identify", as defined in Local Rule 26.5(c), each employee of the Premises (i) who was employed since January 1, 1999 in any department, division, branch or unit of the Premises which had as its function loss prevention, security and/or the prevention of crime at the Premises, and (ii) who was on duty performing any job function on May 2, 3, and 4, 2002.

**ANSWER 4**

Defendant Columbia had no such employees.

**Interrogatory No. 5**

Explain in full and complete detail the defendant's policies, practices and procedures concerning providing security within Westin hotels and/or resorts in general, and in particular, at the Premises.

3

**ANSWER 5**

Defendant Columbia objects to this interrogatory because it is overly broad, unlimited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and limiting its answer to the Westin Casuarina Hotel, Defendant Columbia had no responsibility for providing security at the Westin Casuarina Hotel.

**Interrogatory No. 6**

Identify each and every means and method by which the defendant informed itself of criminal activity on, at, or near Westin hotels and/or resorts in general, and at the premises, in particular, including without limitation, each and every means and method by which the defendant gathered and stored complaints regarding security and safety from criminal activities at Westin hotels and/or resorts in general, and at the Premises.

**ANSWER 6**

Defendant Columbia handles only certain accounting and business management services for the Westin Casuarina Hotel, pursuant to an administrative agreement between the parties, (which has been disclosed previously in this litigation), which includes receiving notice of incidents occurring at the premises for insurance reporting purposes.

**Interrogatory No. 7**

"Identify" each and every incident of criminal activity reported at the Premises at any time, by identifying:

(a)     the date of each such criminal act;

(b)     the type of criminal act;

(c)     the victim of each such act;

(d)     the assailant or perpetrator of each such act;

(e)     when and how the defendant became aware of each such act;

(f)     any and all criminal prosecutions and/or civil litigations arising from each such criminal act;

(g)     the amount paid, if any, to each such victim; and

4

(h)    any and all courts and docket numbers in or through which such payments were made.

## ANSWER 7

Defendant Columbia objects to this interrogatory because it is overly broad, unlimited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendant Columbia states that it is not in possession of any reports of criminal incidents at the Westin Casuarina Hotel.

### Interrogatory No. 8

"Identify", each and every "Security Device" at the Premises:

(a)    before May 3, 2002;

(b)    on May 3, 2002; and

(c)    after May 3, 2002.

## ANSWER 8

Defendant Columbia objects to this interrogatory because it is overly broad, unlimited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendant Columbia is not involved in security at this hotel, and does not have information regarding the security devices used.

### Interrogatory No. 9

"Identify", as defined above, the defendant's policies, practices and procedures for collecting, reviewing, retaining, filing and/or destroying documents relating to the following matters, including without limitation, the types of documents reviewed and retained and destroyed, the period of retention, and the manner in which such documents are filed:

(a)    Reports of criminal incidents at Westin hotels and/or resorts;

(b)    Reports of suspicious persons at Westin hotels and/or resorts;

(c)    Employee personnel files;

(d)    Employee work/shifts schedules;

(e)    Employee training materials;

    (f)      Westin hotels and/or resorts layout and design materials;

    (g)     Security and loss prevention reference materials;

    (h)     Security and loss prevention manuals, guidelines and handouts; and

    (i)      Security and loss prevention memoranda and reports.

**ANSWER 9**

Defendant Columbia objects to this interrogatory because it is overly broad, unlimited in time and scope, seeks information concerning hotels other than the Westin Casuarina Hotel, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence; in addition, Columbia objects to those portions of the interrogatory which seek information related to Columbia employees and/or records, in as much as no Columbia employees participate in matters of security of the Westin Casuarina Hotel.  Without waiving these objections, Columbia states:

    (a)     If any, they would be kept in a general file at Columbia for three years.

    (b)     No such records are kept at Columbia.

    (c)     7 years.

    (d)     No such records are kept by Columbia.

    (e)     2 years.

    (f)      If any, they are sent to off site storage; there are no policies, procedures or practices in place at Columbia for retention of these materials.

    (g)     To the extent they exist, they are not destroyed; however, they are updated from time to time.

    (h)     See response to (g) above.

    (i)      See response to (g) above.

**Interrogatory No. 10**

Describe in complete detail any and all practices, procedures and policies of the defendant in use at any time for providing warning to Westin hotels and/or resorts' employees and customers of risks of criminal activity at Westin hotels and/or resorts.

**ANSWER 10**

Defendant Columbia objects to this interrogatory because it is overly broad, unlimited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection and limiting its answer to the Westin Casuarina Hotel, Defendant Columbia says that it is not involved with security at this hotel.

**Interrogatory No. 11**

"State the basis" of each of the defendant's defenses in this action.

**ANSWER 11**

With respect to the defenses set forth in Defendant Columbia's Answer, discovery in this case is still continuing which will disclose facts which support one or more of these affirmative defenses.

**Interrogatory No. 12**

If you claim that the negligence of any other person or persons, including without limitation, the plaintiff, contributed to cause the occurrence, please identify all such persons and the manner in which they contributed to cause the occurrence.

**ANSWER 12**

With respect to the defenses set forth in Defendant Columbia's answer, discovery in this case is still continuing which will disclose facts which support one or more of these affirmative defenses.

## VERIFICATION

STATE OF KENTUCKY                    )
                                     )       SS.
COUNTY OF KENTON                     )

     Derek Haught, being first duly sworn upon his oath, deposes and says that he is the Vice President of Finance of Columbia Sussex Corporation; that he has reviewed the foregoing responses to the Interrogatories served upon Columbia Sussex Corporation in the above-captioned case; that, to the best of his knowledge, the responses are true and correct; that the responses are based upon and therefore necessarily limited by the records in existence, presently recollected, and thus far discovered in the course of the preparation of the responses; and that, consequently, he reserves the right to make changes in the responses if it appears at any time that omissions or errors have been made therein or that more information is available.

                              Derek Haught
                              Vice President-Finance
                              Columbia Sussex Corporation

     SWORN TO AND ACKNOWLEDGED before me, the undersigned Notary Public, on this 27th day of February, 2007.

                              Notary Public

                              MICHELLE STALLMEYER
                           Notary Public, Kentucky State at Large
                           My Commission Expires Oct. 24, 2010

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY GENEREUX, ) Plaintiff, ) ) v. ) ) COLUMBIA SUSSEX CORPORATION ) d/b/a WESTIN CASUARINA HOTEL, ) STARWOOD HOTELS & RESORTS ) WORLDWIDE, INC., WESTIN LICENSE ) COMPANY, WESTIN LICENSE ) COMPANY NORTH, INC., WESTIN ) MANAGEMENT COMPANY EAST, ) WESTIN NORTH AMERICA ) MANAGEMENT COMPANY, INC., ) GALLEON BEACH RESORT, LTD., and ) CORPORATE DEFENDANTS X1-100, ) Defendants. ) | C.A. NO. 05-CV-10879-JLT |

## ANSWERS OF DEFENDANT STARWOOD HOTELS & RESORTS WORLDWIDE, INC. TO INTERROGATORIES POSED BY PLAINTIFF KIMBERLY GENEREUX

### General Objection

Defendant Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") hereby objects to each Interrogatory or subpart thereof which seeks information about "Westin hotels and/or resorts" and not specifically about The Westin Casuarina Hotel, on the grounds that such Interrogatories are overly broad, are not reasonably limited, are unduly burdensome, are not reasonably calculated to lead to the discovery of admissible evidence, and seek information which is not relevant to this action.

**NOTE**: Interrogatory No. 1 (a-d), concerning the issue of the hotel's ownership, has previously been answered.

**Interrogatory No. 1**

Explain in full and complete detail the relationship, if any, between the defendant and (i) each of the other defendants in this action, (ii) the Premises, and (iii) any persons not identified in subsections (i) to (ii) who owned, controlled, managed, franchised and or operated the Premises, detailing in particular:

(a)    The type, nature and extent of involvement of each entity in the operation of the Premises, including without limitation, the ownership, management, control, supervision, licensing, and/or franchising of general hotel functions at the Premises;

(b)    The type, nature and extent of involvement of each entity in security operations at the Premises, including without limitation, the management, control, and/or supervision of security operations at the Premises;

(c)    The "identification", as defined in Local Rule 26.5(c), of any persons who were officers, directors, agents, or managerial employees of more than one of the above corporations or entities at the same time;

(d)    The "identification]", as defined in Local Rule 26.5(c), of any documents shared in common by the several entities, including, without limitation, reports to corporate directors, officers and/or shareholders;

(e)    Whether any loss prevention, security departments or other departments which had as their function loss prevention, security and the prevention of crime utilized the same personnel, operating manuals, handbooks, guidelines, training procedures, quarterly or other reports, and/or any other security or loss prevention information, and, if so, "identify", as defined in Local Rule 26.5 (c), all such persons and documents.

## ANSWER 1(e)

Defendant Starwood objects to this subpart of Interrogatory No. 1 because it is overly broad, unlimited, unduly burdensome, and phrased in such a way as to be unintelligible.

## Interrogatory No. 2

Identify the organization of all departments, divisions, branches or units of the defendant which had as their function loss prevention, security and/or the prevention of crime in Westin hotels and/or resorts by "identifying", as defined in Local Rule 26.5 (c):

(a)    The name of each department, division, branch, or unit of the defendant which had such functions;

(b)    The titles, positions and job descriptions of each person who worked at each level of each department, division, branch or unit identified above, including, without limitation, all managerial personnel, regional managerial personnel, and senior/corporate managerial personnel;

(c)    The responsibilities of each person who worked in each position identified above;

(d)    The geographic area of responsibility of each person identified above; and

(e)    All persons who were employed in all job categories identified above.

## ANSWER 2

Defendant Starwood incorporates herein the General Objection set forth above. Without waiving this objection, and limiting its answer to The Westin Casuarina Hotel, Defendant Starwood says that it had no involvement in or responsibility for security at The Westin Casuarina Hotel.  Consequently, it had no departments, divisions, branches or units which had as their function loss prevention, security and/or the prevention of crime at The Westin Casuarina Hotel.

## Interrogatory No. 3

"Identify", as defined in Local Rule 26.5(c), all "persons" retained by the defendant to evaluate, review and/or oversee hotel security in Westin Hotels and/or resorts.

## ANSWER 3

Defendant Starwood incorporates herein the General Objection set forth above. Without waiving this objection, and limiting its answer to The Westin Casuarina Hotel, Defendant Starwood says that it had no involvement in or responsibility for security at The Westin Casuarina Hotel.  Consequently, it has retained no persons to evaluate, review and/or oversee security at The Westin Casuarina Hotel.

## Interrogatory No. 4

"Identify", as defined in Local Rule 26.5(c), each employee of the Premises (i) who was employed since January 1, 1999 in any department, division, branch or unit of the Premises which had as its function loss prevention, security and/or the prevention of crime at the Premises, and (ii) who was on duty performing any job function on May 2, 3, and 4, 2002.

## ANSWER 4

Defendant Starwood had no such employees, and further has no knowledge of the information being sought as it is not in Defendant Starwood's possession, custody or control.

## Interrogatory No. 5

Explain in full and complete detail the defendant's policies, practices and procedures concerning providing security within Westin hotels and/or resorts in general, and in particular, at the Premises.

**ANSWER 5**

Defendant Starwood incorporates herein the General Objection set forth above. Without waiving this objection, and limiting its answer to The Westin Casuarina Hotel, Defendant Starwood says that it had no involvement in or responsibility for security at The Westin Casuarina Hotel. Consequently, it has no policies, practices and procedures concerning providing security at The Westin Casuarina Hotel.

**Interrogatory No. 6**

Identify each and every means and method by which the defendant informed itself of criminal activity on, at, or near Westin hotels and/or resorts in general, and at the premises, in particular, including without limitation, each and every means and method by which the defendant gathered and stored complaints regarding security and safety from criminal activities at Westin hotels and/or resorts in general, and at the Premises.

**ANSWER 6**

Defendant Starwood incorporates herein the General Objection set forth above. Without waiving this objection, and limiting its answer to The Westin Casuarina Hotel, Defendant Starwood says that it had no involvement in or responsibility for security at The Westin Casuarina Hotel. Consequently, it has not informed itself of criminal activity at The Westin Casuarina Hotel.

**Interrogatory No. 7**

"Identify" each and every incident of criminal activity reported at the Premises at any time, by identifying:

    (a)    the date of each such criminal act;

    (b)    the type of criminal act;

    (c)    the victim of each such act;

    (d)    the assailant or perpetrator of each such act;

    (e)    when and how the defendant became aware of each such act;

    (f)    any and all criminal prosecutions and/or civil litigations arising from each such criminal act;

    (g)    the amount paid, if any, to each such victim; and

    (h)    any and all courts and docket numbers in or through which such payments were made.

**ANSWER 7**

Defendant Starwood objects to this Interrogatory because it is overly broad, unlimited, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendant Starwood says that the hotel's owner does not provide Starwood with information regarding criminal activity at the hotel, and therefore Defendant Starwood has no such information.

**Interrogatory No. 8**

"Identify", each and every "Security Device" at the Premises:

(a)    before May 3, 2002;

(b)    on May 3, 2002; and

(c)    after May 3, 2002.

**ANSWER 8**

Defendant Starwood objects to this Interrogatory because it is overly broad, unlimited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendant Starwood says it had no involvement in or responsibility for security at The Westin Casuarina Hotel, and does not have information regarding the security devices used.

**Interrogatory No. 9**

"Identify", as defined above, the defendant's policies, practices and procedures for collecting, reviewing, retaining, filing and/or destroying documents relating to the following matters, including without limitation, the types of documents reviewed and retained and destroyed, the period of retention, and the manner in which such documents are filed:

(a)    Reports of criminal incidents at Westin hotels and/or resorts;

(b)    Reports of suspicious persons at Westin hotels and/or resorts;

(c)    Employee personnel files;

(d)    Employee work/shifts schedules;

(e)    Employee training materials;

(f)    Westin hotels and/or resorts layout and design materials;

(g)    Security and loss prevention reference materials;

(h)    Security and loss prevention manuals, guidelines and handouts; and

(i)    Security and loss prevention memoranda and reports.

**ANSWER 9**

Defendant Starwood incorporates herein the General Objection set forth above. Defendant Starwood objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Starwood has no policies, practices or procedures for collecting, reviewing, retaining, filing and/or destroying documents at The Westin Casuarina Hotel relating to the matters set forth in subsections (a) – (i).

**Interrogatory No. 10**

Describe in complete detail any and all practices, procedures and policies of the defendant in use at any time for providing warning to Westin hotels and/or resorts' employees and customers of risks of criminal activity at Westin hotels and/or resorts.

**ANSWER 10**

Defendant Starwood incorporates herein the General Objection set forth above. Without waiving this objection and limiting its answer to The Westin Casuarina Hotel, Defendant Starwood says it has no involvement in or responsibility for security at The Westin Casuarina Hotel. Consequently, it has no practices, procedures and policies for providing warning to The Westin Casuarina Hotel employees or customers of risks of criminal activity at the hotel.

**Interrogatory No. 11**

"State the basis" of each of the defendant's defenses in this action.

**ANSWER 11**

Defendant Starwood objects to this Interrogatory as it calls for a legal conclusion that the responding party is not qualified to make. Without waiving this objection, Defendant Starwood says that discovery in this case is continuing, and this discovery may lead to facts that will support the various affirmative defenses.

**Interrogatory No. 12**

If you claim that the negligence of any other person or persons, including without limitation, the plaintiff, contributed to cause the occurrence, please identify all such persons and the manner in which they contributed to cause the occurrence.

**ANSWER 12**

Defendant Starwood objects to this Interrogatory as it calls for a legal conclusion that the responding party is not qualified to make. Without waiving this objection, Defendant Starwood says that discovery is still continuing, and this discovery may lead to information about other persons who may have caused or contributed to cause the occurrence.

Signed under the penalties of perjury this 5th day of February, 2007.


Theresa Taylor

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY GENEREUX,<br>        Plaintiff,<br><br>v.<br><br>COLUMBIA SUSSEX CORPORATION<br>d/b/a WESTIN CASUARINA HOTEL,<br>STARWOOD HOTELS & RESORTS<br>WORLDWIDE, INC., WESTIN LICENSE<br>COMPANY, WESTIN LICENSE<br>COMPANY NORTH, INC., WESTIN<br>MANAGEMENT COMPANY NORTH,<br>INC., WESTIN MANAGEMENT<br>COMPANY EAST, WESTIN NORTH<br>AMERICA MANAGEMENT COMPANY,<br> INC., GALLEON BEACH RESORT, LTD.,<br>and CORPORATE DEFENDANTS X1-100,)<br>        Defendants. | C.A. NO. 05-CV-10879-JLT |

## RESPONSES OF DEFENDANT WESTIN LICENSE COMPANY TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Westin License Company ("Westin License Company" or the "Defendant") responds to the First Set of Interrogatories (the "Interrogatories") of plaintiff Kimberly Genereux ("Plaintiff") as follows:

## GENERAL OBJECTIONS

The following general objections apply to these Interrogatories as a whole and to each interrogatory contained therein:

1.     The Defendant objects to these Interrogatories to the extent that they are vague, overly broad, unduly burdensome, duplicative, or harassing, and to the extent that

they call for information that is irrelevant, immaterial, or not reasonably calculated to lead to the discovery of admissible evidence.

2.    The Defendant objects to these Interrogatories to the extent that they seek information protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from disclosure.

3.    The Defendant objects to these Interrogatories to the extent that they seek production of confidential or sensitive business information.

4.    The Defendant objects to these Interrogatories to the extent that they contain undefined terms or phrases, embody legal conclusions, or require the drawing of legal conclusions.

5.    The Defendant objects to these Interrogatories to the extent that they seek to impose obligations or burdens beyond those required by the Federal Rules of Civil Procedure.

6.    The Defendant objects to these Interrogatories to the extent that they seek information that is (i) unlimited or overly broad as to time period, (ii) no longer available to the Defendant, or (iii) publicly available.

7.    The following responses and objections are based upon information now known. The Defendant has not yet completed discovery in this action and therefore reserves the right to amend, modify, or supplement the responses and objections stated herein. Subject to these general objections, the Defendant responds as follows:

## RESPONSES TO INTERROGATORIES

### Interrogatory No. 1

Explain in full and complete detail the relationship, if any, between the defendant and (i) each of the other defendants in this action, (ii) the Premises, and (iii) any persons not identified in subsections (i) to (ii) who owned, controlled, managed, franchised and or operated the Premises, detailing in particular:

(a) The type, nature and extent of involvement of each entity in the operation of the Premises, including without limitation, the ownership, management, control, supervision, licensing, and/or franchising of general hotel functions at the Premises;

(b) (b)The type, nature and extent of involvement of each entity in security operations at the Premises, including without limitation, the management, control, and/or supervision of security operations at the Premises;

(c) The "identification", as defined in Local Rule 26.5(c), of any persons who were officers, directors, agents, or managerial employees of more than one of the above corporations or entities at the same time;

(d) The "identification", as defined in Local Rule 26.5(c), of any documents shared in common by the several entities, including, without limitation, reports to corporate directors, officers and/or shareholders;

(e) Whether any loss prevention, security departments or other departments which had as their function loss prevention, security and the prevention of crime utilized the same personnel, operating manuals, handbooks, guidelines, training procedures, quarterly or other reports, and/or any other security or loss prevention information, and, if so, "identify", as defined in Local Rule 26.5 (c), all such persons and documents.

### Answer No. 1

The Defendant objects to this interrogatory, and each sub-part thereof, on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and that it seeks information not relevant to the subject matter of this action. Notwithstanding, but without waiving these objections, the Defendant provides the following information in response to this interrogatory:

Westin License Company was the licensing entity of the Westin trademarks and logos. To the best of Westin License Company's knowledge, it has no relationship to defendants "Westin License Company North, Inc.," "Westin Management Company North, Inc.," and "Westin North America Management Company, Inc." because, to the best of the Defendant's knowledge, these companies do not exist. Westin License Company was at the time of the within incident that is the subject of this case an affiliate of defendants Starwood Hotels & Resorts Worldwide, Inc. and Westin Management Company East. It was also at the time of the within incident that is the subject of this case an affiliate of Westin Management Company North f/k/a Westin License Company North, Westin Management Company East and Westin North America Management Co.

On January 12, 2006, the assets and liabilities of Westin License Company were sold to Westin Hotel Management L.P. On April 6, 2006, all stock in Westin License Company was sold to Broad Street Contract Services, Inc. Westin License Company remains in existence.

Westin License Company provides the following additional information in response to the sub-parts of this interrogatory:

(a)    Westin License Company was the licensor of the Westin trademarks and logos at The Westin Casuarina Resort pursuant to a System License Agreement it entered into with Galleon Beach Resort Ltd. on or about March 20, 1995. This Agreement has a term of twenty (20) years. To the best of Westin License Company's knowledge, defendants "Westin License Company North, Inc.," "Westin Management Company North, Inc.," and "Westin North America Management Company, Inc." had no involvement with The Westin Casuarina Resort because, to the best of the Defendant's

knowledge, these companies do not exist. Defendants Starwood Hotels & Resorts Worldwide, Inc. and Westin Management Company East, along with Westin Management Company North f/k/a Westin License Company North, Westin Management Company East and Westin North America Management Co., had no involvement with The Westin Casuarina Resort.

(b)    None.

(c)    The Defendant objects to this sub-part of Interrogatory No. 1 on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and that it seeks information not relevant to the subject matter of this action.

(d)    Pursuant to Fed.R.Civ.P 33(d), the answer to this sub-part of Interrogatory No. 1 may be derived or ascertained from the business records of the Defendant and the burden of deriving or ascertaining the answer is substantially the same for the Plaintiff as for the Defendant. As such, in response to this interrogatory, the Defendant specifies the following records from which the answer to this sub-part of Interrogatory No. 1 may be obtained: Any and all documents produced by the Defendant in its Fed.R.Civ.P. 26(a)(1) Initial Disclosures.

(e)    No answer is required at this time.

Further answering, Westin License Company states that, pursuant to Fed.R.Civ.P 33(d), further information responsive to this interrogatory may be derived or ascertained from the business records of the Defendant and the burden of deriving or ascertaining the answer is substantially the same for the Plaintiff as for the Defendant. As such, in response to this interrogatory, the Defendant specifies the following records from which

further information responsive to this interrogatory may be obtained:  Any and all

documents produced by the Defendant in its Fed.R.Civ.P. 26(a)(1) Initial Disclosures.

<u>VERIFICATION</u>

I, Orlando Figueroa, Vice President of Westin License Company, have read the foregoing Responses to Interrogatories.  The information in these answers has been obtained from the Westin License Company's agents, employees or others whom I believe reliable and capable of ascertaining the facts stated therein, including but not limited to Starwood Hotels & Resorts Worldwide, Inc.  As to those matters set forth in the answers about which I have personal knowledge, I believe these answers to be true; as to those matters on which I have no personal knowledge and am relying upon those who have prepared those answers, I have no reason to believe those answers are not true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 4th

DAY OF ___January___, 2007.

_____
Orlando Figueroa

As to objections:
WESTIN LICENSE COMPANY
By its attorneys,

_____
John B. Johnson, Esq. (BBO#: _____ )
Corrigan, Johnson & Tutor, P.A.
141 Tremont Street
Boston, MA 02111

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIMBERLY GENEREUX, )
                Plaintiff, )
      )
v. )        C.A. NO. 05-CV-10879-JLT
      )
COLUMBIA SUSSEX CORPORATION )
d/b/a WESTIN CASUARINA HOTEL, )
STARWOOD HOTELS & RESORTS )
WORLDWIDE, INC., WESTIN LICENSE )
COMPANY, WESTIN LICENSE )
COMPANY NORTH, INC., WESTIN )
MANAGEMENT COMPANY EAST, )
WESTIN NORTH AMERICA )
MANAGEMENT COMPANY, INC., )
GALLEON BEACH RESORT, LTD., and )
CORPORATE DEFENDANTS X1-100, )
                Defendants. )

## ANSWERS OF DEFENDANT WESTIN LICENSE COMPANY TO INTERROGATORIES POSED BY PLAINTIFF KIMBERLY GENEREUX

### General Objection

Defendant Westin License Company ("Westin") hereby objects to each interrogatory or subpart thereof which seeks information about "Westin hotels and/or resorts" and not specifically about The Westin Casuarina Hotel, on the grounds that such interrogatories are overly broad, are not reasonably limited, are unduly burdensome, are not reasonably calculated to lead to the discovery of admissible evidence, and seek information which is not relevant to this action.

**NOTE**: Interrogatory No. 1 (a-d), concerning the issue of the hotel's ownership, has previously been answered.

### Interrogatory No. 1

Explain in full and complete detail the relationship, if any, between the defendant and (i) each of the other defendants in this action, (ii) the Premises, and (iii) any persons not identified in subsections (i) to (ii) who owned, controlled, managed, franchised and or operated the Premises, detailing in particular:

(a)    The type, nature and extent of involvement of each entity in the operation of the Premises, including without limitation, the ownership, management, control, supervision, licensing, and/or franchising of general hotel functions at the Premises;

(b)    The type, nature and extent of involvement of each entity in security operations at the Premises, including without limitation, the management, control, and/or supervision of security operations at the Premises;

(c)    The "identification", as defined in Local Rule 26.5(c), of any persons who were officers, directors, agents, or managerial employees of more than one of the above corporations or entities at the same time;

(d)    The "identification]", as defined in Local Rule 26.5(c), of any documents shared in common by the several entities, including, without limitation, reports to corporate directors, officers and/or shareholders;

(e)    Whether any loss prevention, security departments or other departments which had as their function loss prevention, security and the prevention of crime utilized the same personnel, operating manuals, handbooks, guidelines, training procedures, quarterly or other reports, and/or any other security or loss prevention information, and, if so, "identify", as defined in Local Rule 26.5 (c), all such persons and documents.

## ANSWER 1(e)

Defendant Westin objects to this subpart of Interrogatory No. 1 because it is overly broad, unlimited, unduly burdensome, and phrased in such a way as to be unintelligible.

## Interrogatory No. 2

Identify the organization of all departments, divisions, branches or units of the defendant which had as their function loss prevention, security and/or the prevention of crime in Westin hotels and/or resorts by "identifying", as defined in Local Rule 26.5 (c):

(a)    The name of each department, division, branch, or unit of the defendant which had such functions;

(b)    The titles, positions and job descriptions of each person who worked at each level of each department, division, branch or unit identified above, including, without limitation, all managerial personnel, regional managerial personnel, and senior/corporate managerial personnel;

(c)    The responsibilities of each person who worked in each position identified above;

(d)     The geographic area of responsibility of each person identified above; and

(e)     All persons who were employed in all job categories identified above.

**ANSWER 2**

Defendant Westin incorporates herein the General Objection set forth above. Without waiving this objection, and limiting its answer to The Westin Casuarina Hotel, Defendant Westin says that it had no involvement in or responsibility for security at The Westin Casuarina Hotel. Consequently, it has no departments, divisions, branches or units which had as their function loss prevention, security and/or the prevention of crime at The Westin Casuarina Hotel.

**Interrogatory No. 3**

"Identify", as defined in Local Rule 26.5(c), all "persons" retained by the defendant to evaluate, review and/or oversee hotel security in Westin Hotels and/or resorts.

**ANSWER 3**

Defendant Westin incorporates herein the General Objection set forth above. Without waiving this objection, and limiting its answer to The Westin Casuarina Hotel, Defendant Westin says that it had no involvement in or responsibility for security at The Westin Casuarina Hotel. Consequently, it has retained no persons to evaluate, review and/or oversee security at The Westin Casuarina Hotel.

**Interrogatory No. 4**

"Identify", as defined in Local Rule 26.5(c), each employee of the Premises (i) who was employed since January 1, 1999 in any department, division, branch or unit of the Premises which had as its function loss prevention, security and/or the prevention of crime at the Premises, and (ii) who was on duty performing any job function on May 2, 3, and 4, 2002.

**ANSWER 4**

Defendant Westin had no such employees, and further has no knowledge of the information being sought as it is not in Defendant Westin's possession, custody or control.

**Interrogatory No. 5**

Explain in full and complete detail the defendant's policies, practices and procedures concerning providing security within Westin hotels and/or resorts in general, and in particular, at the Premises.

**ANSWER 5**

Defendant Westin incorporates herein the General Objection set forth above. Without waiving this objection, and limiting its answer to The Westin Casuarina Hotel, Defendant Westin says that it had no involvement in or responsibility for security at The Westin Casuarina Hotel. Consequently, it has no policies, practices and procedures concerning providing security at The Westin Casuarina Hotel.

**Interrogatory No. 6**

Identify each and every means and method by which the defendant informed itself of criminal activity on, at, or near Westin hotels and/or resorts in general, and at the premises, in particular, including without limitation, each and every means and method by which the defendant gathered and stored complaints regarding security and safety from criminal activities at Westin hotels and/or resorts in general, and at the Premises.

**ANSWER 6**

Defendant Westin incorporates herein the General Objection set forth above. Without waiving this objection, and limiting its answer to The Westin Casuarina Hotel, Defendant Westin says that it had no involvement in or responsibility for security at The Westin Casuarina Hotel. Consequently, it has not informed itself of criminal activity on, at or near The Westin Casuarina Hotel.

**Interrogatory No. 7**

"Identify" each and every incident of criminal activity reported at the Premises at any time, by identifying:

(a)    the date of each such criminal act;

(b)    the type of criminal act;

(c)    the victim of each such act;

(d)    the assailant or perpetrator of each such act;

(e)    when and how the defendant became aware of each such act;

(f)    any and all criminal prosecutions and/or civil litigations arising from each such criminal act;

(g)    the amount paid, if any, to each such victim; and

(h)    any and all courts and docket numbers in or through which such payments were made.

**ANSWER 7**

Defendant Westin objects to this Interrogatory because it is overly broad, unlimited, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendant Westin says that the hotel's owner does not provide Westin with information regarding criminal activity at the hotel, and therefore Defendant Westin has no such information.

**Interrogatory No. 8**

"Identify", each and every "Security Device" at the Premises:

(a)     before May 3, 2002;

(b)     on May 3, 2002; and

(c)     after May 3, 2002.

**ANSWER 8**

Defendant Westin objects to this Interrogatory because it is overly broad, unlimited, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendant Westin says it had no involvement in or responsibility for security at The Westin Casuarina Hotel, and does not have information regarding the security devices used.

**Interrogatory No. 9**

"Identify", as defined above, the defendant's policies, practices and procedures for collecting, reviewing, retaining, filing and/or destroying documents relating to the following matters, including without limitation, the types of documents reviewed and retained and destroyed, the period of retention, and the manner in which such documents are filed:

(a)     Reports of criminal incidents at Westin hotels and/or resorts;

(b)     Reports of suspicious persons at Westin hotels and/or resorts;

(c)     Employee personnel files;

(d)     Employee work/shifts schedules;

(e)     Employee training materials;

(f)     Westin hotels and/or resorts layout and design materials;

(g)    Security and loss prevention reference materials;

(h)    Security and loss prevention manuals, guidelines and handouts; and

(i)    Security and loss prevention memoranda and reports.

## ANSWER 9

Defendant Westin incorporates herein the General Objection set forth above. Defendant Westin objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Westin has no policies, practices or procedures for collecting, reviewing, retaining, filing and/or destroying documents at The Westin Casuarina Hotel relating to the matters set forth in subsections (a) – (i).

## Interrogatory No. 10

Describe in complete detail any and all practices, procedures and policies of the defendant in use at any time for providing warning to Westin hotels and/or resorts' employees and customers of risks of criminal activity at Westin hotels and/or resorts.

## ANSWER 10

Defendant Westin incorporates herein the General Objection set forth above. Without waiving this objection and limiting its answer to The Westin Casuarina Hotel, Defendant Westin says it has no involvement in or responsibility for security at The Westin Casuarina Hotel. Consequently, it has no practices, procedures and policies for providing warning to The Westin Casuarina Hotel employees or customers of risks of criminal activity at the hotel.

## Interrogatory No. 11

"State the basis" of each of the defendant's defenses in this action.

## ANSWER 11

Defendant Westin objects to this Interrogatory as it calls for a legal conclusion that the responding party is not qualified to make. Without waiving this objection, Defendant Westin says that discovery in this case is continuing, and this discovery may lead to facts that will support the various affirmative defenses.

## Interrogatory No. 12

If you claim that the negligence of any other person or persons, including without limitation, the plaintiff, contributed to cause the occurrence, please identify all such persons and the manner in which they contributed to cause the occurrence.

**ANSWER 12**

Defendant Westin objects to this Interrogatory as it calls for a legal conclusion that the responding party is not qualified to make. Without waiving this objection, Defendant Westin says that discovery is still continuing, and this discovery may lead to information about other persons who may have caused or contributed to cause the occurrence.

<u>**VERIFICATION**</u>

I, Orlando Figueroa, Vice President of Westin License Company, have read the foregoing Responses to Interrogatories. The information in these answers has been obtained from Westin License Company's agents, employees or others whom I believe reliable and capable of ascertaining the facts stated therein, including but not limited to Starwood Hotels & Resorts Worldwide, Inc. As to those matters set forth in the answers about which I have no personal knowledge and am relying upon those who have prepared those answers, I have no reason to believe those answers are not true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _6th_ DAY OF FEBRUARY, 2007.

_____
Orlando Figueroa

As to objections:
WESTIN LICENSE COMPANY
By its attorneys,


_____
John B. Johnson, Esq. (BBO# 252580)
Corrigan, Johnson & Tutor, P.A.
141 Tremont Street
Boston, MA 02111

1                    UNITED STATE DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
2                 Civil Action NO. 05-CV-10879-JLT

3       _____
        KIMBERLY GENEREUX,              )
4                        Plaintiff,     )
        VS.                             )
5       COLUMBIA SUSSEX CORPORATION,    )
        ET AL,                          )
6                        Defendants.    )
        _____

7

8                                -   -   -

9

10                    Deposition of THEODORE R. MITCHEL, a

11      witness, was called on behalf of the Plaintiff as

12      upon cross-examination, pursuant to the Rules of

13      Civil Procedure, commencing at 9:30 a.m., on Friday,

14      September 7, 2007, at the Sheraton Cincinnati, in the

15      "A" Armstrong Room at 2826 Terminal Drive, Hebron,

16      Kentucky, before Terence M. Holmes, professional

17      court reporter, and notary public within and for the

18      Commonwealth of Kentucky.

19                               -   -   -

20

21

22

23

24

25

**ORIGINAL**

1    performs for the Westin Casuarina under the

2    Administrative Services Contract?

3            A.    Yes.  We will maintain copies of

4    contracts for that property and monitor, you know,

5    termination dates and renewal dates.

6            Q.    And what types of contracts are you

7    referring to?

8            A.    Maintenance contracts, be one example,

9    utility contracts, lease agreements for copiers and

10   things like that.

11           Q.    Okay.  Are there any contracts

12   relating to the provision of security services at the

13   Westin Casuarina that Columbia Sussex performs a

14   record keeping function with respect to?

15           A.    There might be, I don't recall

16   specifically if there's a contract with an outside

17   security service.

18           Q.    Does Columbia Sussex provide any

19   record keeping function with respect to Westin

20   Casuarina employees?

21           A.    Yes.  We maintain personnel files for

22   Westin employees.

23           Q.    And where are those files maintained?

24           A.    They're maintained in our offices in

25   Ft. Mitchell.

1          Q.    Oh.  Are there duplicative copies down

2    in the Cayman Islands?

3          A.    There might be some that are

4    maintained down there, I don't know though, you know,

5    what, to what extent they keep duplicate copies.

6          Q.    Okay.  In addition to physically

7    hanging onto the files here in Kentucky, does

8    Columbia Sussex provide any type, any other type of

9    service with respect to the personnel files?

10         A.    Again, I'm not sure exactly what you

11    mean by that.  I mean we monitor, you know, vacation

12    taken, so, you know, so we know how much more

13    vacation somebody has to take.  We monitor sick days,

14    and then -- the kind of things that need to be

15    monitored in connection with a personnel function.

16         Q.    Okay.  And that's sort of what I was

17    wondering.  For example, if there was a problem with

18    an employee as perceived by the management by there

19    at the hotel in the Cayman Islands, would you keep

20    tabs of the documentation that were maintained in the

21    files with respect to that employee?

22         A.    I believe discipline -- that's what

23    you're asking for, discipline records are maintained

24    at the property locally.  Home office here does not

25    maintain records of discipline.

1           Q.   Does the home office get copies of the

2    disciplinary files?

3           A.   I don't believe so.

4           Q.   Okay.  And perhaps as sort of the

5    inverse side of discipline, are files monitored up

6    here with respect to promotions or commendations for

7    Westin Casuarina employees?

8           A.   To the extent there's a pay rate

9    change, that document is kept up here.

10          Q.   Okay.  Would pay rate change documents

11   also cover, for example, if a person was promoted to

12   a -- from one level of employment up to a higher

13   level within the same department or to a management

14   function or something like that?

15          A.   Yes.

16          Q.   Are the payroll checks for the

17   employees in the Caymans issued from here in

18   Kentucky?

19          A.   Yes.

20          Q.   Does Columbia Sussex use some type of

21   payroll service to pay employees of the various

22   hotels, or does it do that in-house?

23          A.   It does it in-house.

24          Q.   As far as you're aware, just from your

25   knowledge of the personnel files and the payroll

1    information up here, are there employees at the

2    Westin Casuarina whose function is to provide

3    security services on the property?

4                MR. BROWN:  Can I have that read back?

5                (The pending question was read back.)

6                A.    I don't recall seeing anybody that is

7    in that category, but that doesn't mean that there

8    isn't somebody, but I don't recall.

9                Q.    Okay.  And earlier in the different

10   context we had talked about coding bills and things

11   like that.  Are there also codes from personnel files

12   that would indicate what department an employee

13   worked in in the hotel?

14               A.    Yes.  Every employee is given a

15   specific job code.

16               Q.    Okay.  Are the job codes for the

17   Westin Casuarina the same job codes used for other

18   hotels that Columbia Sussex manages?

19               A.    For the most part, there might be some

20   special ones that they need, but I think for the most

21   part they're the same.

22               Q.    Okay.  So that stuff that would apply

23   to all the hotels like housekeeping that would be the

24   same codes?

25               A.    Yes.

                              69

1           Q.    Okay.  I had asked you a little while

2   ago whether you were aware of there being employees

3   at the Westin Casuarina who has security functions.

4   Are there employees who are designated as loss

5   prevention or risk management employees at the Westin

6   Casuarina, as far as you know?

7           A.    No, I don't believe so.

8           Q.    I'm gonna take you a step back from

9   this whole series of things we've been talking about

10  with the, under the Administrative Services

11  Agreement.

12                From what you've been describing so

13  far, obviously there are different type of agreements

14  that Columbia Sussex has with different hotels.  What

15  determines what type of an agreement Columbia Sussex

16  will enter with a hotel?

17          A.    If there is a direct or indirect

18  ownership interest by Columbia Sussex and the

19  property, generally there's a Hotel Management

20  Agreement.  If there's no ownership interest between

21  the property and Columbia Sussex, generally it's an

22  Administrative Services Agreement.

23          Q.    And is there a person at Columbia

24  Sussex who makes the final determination with respect

25  to what type of agreement will be entered into for

                              70

1    for Galleon Beach?

2            A.    In my capacity as secretary treasurer

3    I review, you know, monthly financial statements, and

4    I will approve a contract or a bill in certain

5    situations.  You know, in regard to insurance I'll

6    determine what level of self insurance or retention

7    that we have.  I might also set, you know,

8    administrative policies, in terms of how information

9    is reported or what level approval is needed.

10           Q.    When you say "what level approval is

11   needed," what do you mean by that?

12           A.    Whether a bill can be approved by just

13   a general manager or whether it requires an

14   additional approval of an officer.  Mr. Yung has to

15   approve it or I should approve it or John Jacop would

16   approve it.

17           Q.    Okay.  Any -- Are there any other

18   functions that you perform for Galleon Beach?

19           A.    Not that I can think of off the top of

20   my head.

21           Q.    Okay.  With respect to approving

22   contracts, are there any contracts that you have

23   approved with respect to security at the Westin

24   Casuarina?

25           A.    I don't recall signing any security

83

1  agreements for Westin Casuarina.

2          Q.   Okay.  As far as you know, are there

3  any outside vendors that provide security services at

4  the Westin Casuarina?

5          A.   I'm not aware of any presently, I know

6  there have been outside security services used.

7          Q.   Do you know what security services

8  have been used?

9          A.   No, I don't know what the name of the

10  firm is.

11          Q.   Do you know whether any outside

12  security services have been used as of the time of

13  the incident with Ms. Genereux on May of 2002?

14          A.   I really don't have any knowledge,

15  recollection on that.

16          Q.   Do you know why the outside security

17  services were discontinued?

18          A.   Again, I don't know the circumstances

19  for that.

20          Q.   Do you know when they were, when they

21  ended?

22          A.   No, I don't.  To clarify, I don't know

23  if they've ended either.

24          Q.   Thank you.  Have you personally been

25  down to the Westin Casuarina?

                              84

1          A.    I believe it was prepared after.

2          Q.    Okay.  Had you ever seen any documents

3     prepared by anybody from the Westin Casuarina which

4     predated the litigation?

5          A.    I don't recall seeing anything that

6     predated the litigation.

7          Q.    Okay.  Had you ever had any, you

8     personally, ever had any discussions with anybody at

9     the Westin Casuarina about whether they were required

10    to prepare reports documenting incidents that could

11    give rise to liability?

12         A.    Do I recall specifically talking to

13    someone at the Westin Casuarina about their

14    requirement to do an Incident Report?

15         Q.    Yes.

16         A.    I don't, don't have any specific

17    recollection doing that.

18         Q.    Okay.  You said "specific

19    recollection," is that something that you would

20    ordinarily do in the course of your work?

21         A.    At some point I would have given, you

22    know, General Managers an indication of what the

23    obligations are to report incidences.

24         Q.    Okay.  What's the source of that

25    obligation to report incidents?

91

1          A.    What is the source of it?

2          Q.    Yeah.  In other words, is that a

3   practice of Columbia Sussex, is it a practice of the

4   Westin, is it a practice of Galleon Beach?

5          A.    Well with regard to Galleon Beach I

6   would have made that a policy of Galleon Beach to

7   report incidences that involve guest injury.

8               MR. BROWN:  And that you're saying

9               because you were secretary treasurer of

10              Galleon Beach?

11              MR. MITCHEL:  Correct.

12         Q.    Okay.  And then just to stick with

13  that for one second.  Do you have a specific

14  recollection of making such a policy for Galleon

15  Beach?

16         A.    I believe that I remember sending to

17  the property a copy of the Columbia Sussex Safety &

18  Loss Prevention Manual which has a section in it that

19  addresses the preparation of Incident Reports, and

20  indicating to the General Manager that they were to

21  follow those recommendations.

22         Q.    Okay.  And just to make sure that I've

23  got you.  The Columbia Sussex manual that you're

24  talking about now, that would not apply to Westin

25  Casuarina because of the nature of the service

                           92

1    agreement between them, correct?

2              A.    It would if I told them that it would

3    in my capacity as treasurer of Galleon Beach Resort

4    Limited.

5              Q.    Okay.  And in your capacity as

6    treasurer of Galleon Beach Resort Limited, did you in

7    fact instruct the Westin Casuarina that they --

8              A.    It's my recollection that I did that.

9              Q.    Okay.  And just so I can finish the

10   question on the record.  I apologize.  You did

11   instruct them that they were to follow the Columbia

12   Sussex manual, the safety manual even though it

13   applied to Columbia Sussex Corporation rather than to

14   Galleon Beach Resort Limited?

15             A.    That's correct.

16             Q.    Okay.

17                   MR. BROWN:  As to -- I guess if I

18             follow that, as to the recorded incidents,

19             is what your question is?

20                   MR. ITZKOWITZ:  I didn't think it was

21             that limited to tell you the truth.  Why

22             don't we do it again.  Do you know what,

23             actually I was gonna mark that, so why

24             don't we address that in due course.

25             Q.    In terms of the service agreement

                              93

1           Q.    Okay.  The second one, the risk

2      manager researches, writes and updates and the loss,

3      the Safety & Loss Prevention Manual.  Were you

4      involved in any way in reviewing or updating this

5      particular document?

6           A.    Yes.

7           Q.    How so?

8           A.    I reviewed it.

9           Q.    Okay.  Was that at the time that you

10     told the General Manager to comply with it?

11          A.    Would have been before it was issued.

12          Q.    Okay.  When you reviewed the manual,

13     did you do that on behalf of Columbia Sussex or was

14     that something you did for Galleon Beach Resort with

15     respect to the Westin Casuarina?

16          A.    Again, we're splitting hairs, I mean

17     with -- I have two roles, one is treasurer of

18     Columbia Sussex, one is treasurer Galleon Beach.

19     Some of the things I do I do once, but it's on behalf

20     of both companies.  So the fact that I reviewed and

21     updated a safety manual for Columbia Sussex and then

22     directed people to communicate that update to the

23     people in, at Galleon Beach, I've done it in my

24     capacity as an officer of Galleon Beach.

25          Q.    Okay.  All right.  But you actually

138

1    did review this in your capacity as an officer of

2    Columbia Sussex, as well?

3              A.    Yes.

4              Q.    Okay.  Who wrote the manual?

5              A.    The actual writing of the manual would

6    have been done by individuals within my risk, our

7    risk management Columbia Sussex Risk Management

8    Department.

9              Q.    Okay.  Was there anybody from the

10   operations division that was involved in contributing

11   to the manual?

12             A.    We might have consulted with some

13   operations people, but I don't believe that anybody

14   from operations was involved in the writing of the

15   manual.

16             Q.    Okay.  And I apologize, I am -- I

17   apologize, I just want to make sure that I've got

18   this right.  Putting aside anything having to do with

19   the Westin Casuarina, the manual itself is written

20   under your direction by employees who answered to you

21   in the Risk Management Department?

22             A.    Yes.

23             Q.    And you reviewed the manual for the

24   entire Columbia Sussex corporation?

25             A.    Yes.

1        Q.   And did you make some, for example,

2    the updates that appear in the document at different

3    places?

4        A.   Yes.  Somebody under my direction

5    would have done those updates, yes.

6        Q.   Okay.  And you reviewed what they

7    prepared and then approved it?

8        A.   Yes.

9        Q.   Okay.  And that was all done in the

10   capacity of your responsibilities for Columbia Sussex

11   Corporation, correct?

12       A.   Correct.

13       Q.   Okay.  And having already done it, you

14   then instructed the Westin Casuarina to comply with

15   it?

16       A.   Yes.

17       Q.   Thank you.  Okay.  The third item on

18   this section relates to the responsibilities of the

19   hotel General Manager?

20       A.   Yes.

21       Q.   And the first of those is to read and

22   assimilate the loss prevention, the Safety & Loss

23   Prevention Manual.  Had anybody in the Risk

24   Prevention Department or you personally done anything

25   to insure that the General Manager of the Westin

140

1           Q.    Okay.    There is a reference in there

2    to closed circuit television cameras being used to

3    monitor the garages?

4           A.    Yes.

5           Q.    Do you know whether there are any

6    closed circuit television systems that are in use at

7    the Westin Casuarina for any purpose?

8           A.    I'm not aware of any.

9           Q.    Do you know whether there have been

10   any at the Westin Casuarina?

11          A.    No, I don't.

12          Q.    A little further down the same

13   document there's a reference to security patrols,

14   specifically to unschedule rounds and irregular

15   patrols.  Do you know whether there have been any

16   security patrols used at the Westin Casuarina?

17          A.    I don't have any specific knowledge of

18   that.

19          Q.    In the document dealing with garages

20   about the middle of it there's a reference to

21   controlling stairwells and elevators.  Do you know

22   whether there were any, whether there was any access

23   control at the Westin Casuarina for different areas

24   of the property?

25          A.    I'm not sure what you mean by "access

1   office.  But these are specifically related to

2   employee performance.  So since we really didn't have

3   any -- as apart of the services agreement we don't

4   have any specific responsibility regarding specific

5   discipline that there would be no need to have these

6   documents at the home office.  So my recollection is

7   is that these would probably be maintained locally.

8           Q.   Okay.  I apologize 'cause I don't know

9   if I asked this specifically.  I know we talked about

10  bills and things being paid from here in Kentucky for

11  charges down in the Caymans.  Did Columbia Sussex

12  also handle payroll for the Westin Casuarina

13  employees?

14          A.   Yes.

15          Q.   Okay.  Yeah.  And I apologize, I did

16  ask you that, I'm sorry.  Do you know of any policies

17  that had been prepared by Galleon Beach or by the

18  management of Casuarina itself related to security at

19  the Casuarina?

20          A.   I'm not aware of any.

21          Q.   Can you tell us how it was that you

22  first came to learn of the incident involving Kim

23  Genereux?

24          A.   I believe it was when we were served

25  with the lawsuit.

# Mark F. Itzkowitz

### Attorney at Law

*85 Devonshire Street*
*Suite 1000*
*Boston, Massachusetts 02109-3504*

*Telephone: (617) 227-1848*
*Facsimile: (617) 742-9130*
*Also Admitted In New York*

September 10, 2007

**VIA FACSIMILE**

John B. Johnson, Esquire
Corrigan, Johnson & Tutor, P.A.
141 Tremont Street
Boston, MA 02111

Robert J. Brown, Esquire
Mendes & Mount, LLP
750 7th Avenue
New York, NY   10019-6829

> **Re:    *Kimberly Genereux v. Columbia Sussex Corporation, et. als.***
> ***Civil Action No. 05-CV-10879-JLT***

Dear Attorneys Johnson and Brown:

In anticipation of the Rule 30(b)(6) deposition of Westin/Starwoods, and in view of Mr. Mitchel's testimony at the Rule 30(b)(6) deposition of Columbia Sussex Corporation ("CSC"), please review CSC's responses to the following discovery requests and produce any additional documents and information which had been requested but not produced:

1.      CSC Response to Request for Production of Documents Nos. 7, 12 - Documents prepared by Westin Casuarina Manager Dan Sidlowski at the instruction of Ted Mitchel, including any reports prepared of the recollections of Westin Casuarina employees, would be responsive to this request and would not be privileged as those documents were required as part of CSC's and Westin's business practices relating to incidents involving guest injuries.

2.      CSC Response to Request for Production of Documents No. 8 - CSC identified and produced Denzil Luke's statement but did not identify the female bartender or male "manager on duty" who were referenced in that statement.  Payroll records administered for Galleon Beach Resorts, Ltd. ("GBR") by CSC would have identified a limited number of individuals spanning the two week period which included May 3, 2002 who held job titles (including possibly Job Class Codes 26, 29, 30, 32, 42, 44, 73, 74, 75, 76, 82, and 84) which would have fit the descriptions provided by Mr. Luke and Ms. Genereux of those employees.

3.    CSC Response to Request for Production of Documents Nos. 18, 19, 20, 23, 25, 46, 48, 50, 51, 70, 71, 72, 74, 75; CSC Answer to Interrogatory No. 8 - Documents administered by CSC for GBR would have identified vendors paid for security services and security equipment/devices, and employees who performed security and loss prevention functions at the Westin Casuarina (Job Class Codes 78 and 79, at least). Therefore, this information should be available to CSC.

4.    CSC Response to Request for Production of Documents Nos. 31, 32, 33, 35, 36, 38, 39, 40, 47, 58, 61, 76, 77, 83, 85, 87, 89, 91, 92 - Documents received and administered by CSC for GBR are responsive to these requests, including without limitation, the documents required by the CSC Safety & Loss Prevention Manual in the sections relating to and/or describing Accident Investigation & Analysis, Quarterly Safety Meetings, Guest Incident Logs, Employee Safety Training, Quarterly Hotel Inspection & Safety Checklist, and the risk management documents prepared by CSC from information provided by GBR.

5.    CSC Response to Request for Production of Documents Nos. 53, 55, 56, 61, 62, 63, 64, 65, 67, 68, 69, 73 - The term "public lavatories" refers to restrooms to which persons lawfully on the property were directed even if they had not rented rooms at the Westin Casuarina and includes the restroom in the Hibiscus Spa building to which Ms. Genereux had been directed when she had inquired about spa services and in which she later was raped. The requests are directed to that particular restroom and not to any restrooms which may have been included within the spa office and/or within the Governor's Ballroom. It is not clear from the objections whether any documents generated by or received from GBR are in the possession of CSC pursuant to the Service Agreement but such documents would be responsive to these requests. With respect to lighting and lock issues, the plaintiff does not contend that the lighting or locks in the spa restroom necessarily were inadequate but questions the accessibility of that facility at the time of night when Ms. Genereux and her rapist were able to access it. Lighting and lock information reasonably may be expected to reveal information about access to the restroom.

6.    CSC Response to Request for Production of Documents Nos. 90, 91 - I believe that Mr. Mitchell testified that CSC risk management employees inspected the Westin Casuarina at his request and pursuant to the Service Agreement, so there should be information relating to CSC employees responsive to the Requests.

7.    CSC Response to Request for Production of Documents No. 92; CSC Answer to Interrogatory No. 7 - Files from the *Reynolds* case should contain the information requested.

8.    CSC Response to Request for Production of Documents No. 97 - The request concerns documents relevant to the issue of CSC control over GBR and the Westin Casuarina. Mr. Mitchel testified that CSC made payments for advertising in

addition to that procured by Westin/Starwoods, pursuant to the Service Agreement.

I have understood several of defendant Columbia Sussex' responses to have meant that Columbia Sussex had not prepared documents related to conditions at the Westin Casuarina, and, therefore, that there were no documents in CSC's possession, custody or control. However, Mr. Mitchel's testimony indicated that Columbia Sussex received and administered reports from the Westin Casuarina pursuant to its Service Agreement with Galleon Beach Resorts Ltd. Part of that administrative function, he testified, involved the receipt, monitoring, analysis and administration of insurance, risk management, and security related documents from the Westin Casuarina, which he had ordered prepared by the Westin Casuarina General Manager in accordance with Columbia Sussex' Safety & Loss Prevention Manual and Manager's Manual. The responses were included as part of Columbia Sussex' insurance data base for risk management purposes, he testified. Mr. Mitchel specifically testified that at least three years worth of copies of various security related reports which are mandated by the CSC Safety & Loss Prevention Manual should be included among the Westin Casuarina materials at CSC's offices in Kentucky. Columbia Sussex' Interrogatory Answer No. 9c indicates that payroll information is maintained for seven years and should, therefore, also be available. Accordingly, please review CSC's discovery responses, amend those that need amendment, and, most importantly as soon as possible, please produce additional responsive documents which have not been produced yet.

Thank you for your courtesy and cooperation.

Very truly yours,

Mark F. Itzkowitz

MFI:el
enc.

# MENDES & MOUNT, LLP

750 SEVENTH AVENUE
NEW YORK, NY 10019-6829
TELEPHONE: (212) 261-8000
FACSIMILE: (212) 261-8750

LOS ANGELES OFFICE
725 SOUTH FIGUEROA STREET
NINETEENTH FLOOR
LOS ANGELES, CA 90017-5419
TELEPHONE: (213) 955-7700
FACSIMILE: (213) 955-7725

NEW JERSEY OFFICE
ONE NEWARK CENTER
NEWARK, NJ 07102-5259
TELEPHONE: (973) 639-7300
FACSIMILE: (973) 639-7350

DIRECT DIAL: (212) 261-8110

September 28, 2007

**VIA E-MAIL AND REGULAR MAIL**

Mark F. Itzkowitz, Esq.
85 Devonshire Street
Suite 1000
Boston, MA 02109-3504

Re:   Kimberly Genereux v. Columbia Sussex Corp.
      d/b/a Westin Casuarina Hotel, Starwood Hotels &
      Resorts, et al.
      U.S.D.C. Massachusetts
      L/A:  Westin Casuarina Hotel
            Grand Cayman, B.W.I.
      D/A:  May 3, 2002
      Our File:  388,193

Dear Mr. Itzkowitz:

On behalf of defendant Columbia Sussex Corp., we reiterate the objections and statements set forth in defendant's Responses to Production of Documents, and provide the following response to your letter of September 10, 2007:

1.   Columbia Sussex Corp. did not perform an investigation of Ms. Genereux's allegations at the time of the incident. Columbia Sussex was not aware of the alleged incident or Ms. Genereux's allegations until it received the Summons and Complaint nearly three years after the alleged incident.

In response to the Summons and Complaint and in preparation for defense of the litigation commenced by Ms. Genereux, Columbia Sussex made certain inquiries from which it was learned that the Royal Cayman Island Police (RCIP) responded to Ms. Genereux's complaints by performing an investigation. A letter from the RCIP setting forth its actions has been exchanged among the parties.

Our File No.: 388,193                         - 2 -

In addition, and separately, Columbia Sussex produced a statement from a Galleon Beach employee named Denzel Luke which had been forwarded to Columbia Sussex by Galleon Beach. There are no known witnesses to the plaintiff's alleged incident.

Your statements in paragraph 1 of your letter misconstrue the law as to that which is privileged and not subject to discovery when conducted in response to litigation and that which may have been performed as part of a business practice at or around the time of the incident. Columbia Sussex has no additional documents to produce in response to your request for Production of Documents nos. 7 and 12.

2.    As previously stated, there are no known witnesses to the incident alleged by plaintiff Kimberly Genereux. Columbia Sussex is searching payroll records administered for the Galleon Beach Resort Hotel to determine whether the identity of the female bartender or male manager on duty at the time of the alleged incident may be identified.

3.- 4. With the exception of payroll records, any documents to the extent they exist at Columbia Sussex in relation to any administration services performed by Columbia Sussex for Galleon Beach are retained for a period of three years. Not only is plaintiff's request objectionable as being overbroad but also the request, which was initially made in August 2006, post dated the incident by more than four years. Columbia Sussex is not in any possession of any documents which would have "identified vendors paid for security services and security equipment/devices and employees who performed security and loss prevention functions at the Westin Casuarina" at any time up to and including the date of the plaintiff's alleged incident in May 2002.

Columbia Sussex Corp. did not perform an accident investigation and analysis of the incident alleged by Ms. Genereux. Columbia Sussex Corp. was not aware of the alleged incident until it was served with the Summons and Complaint nearly three years after the incident.

As for other alleged incidents at the Westin Casuarina, a copy of the Reynolds Summons and Complaint has been produced. No other complaints mentioning alleged criminal activity at the Galleon Beach premises are known to exist at Columbia Sussex. In response to Request no. 92, Columbia Sussex is aware that the Reynolds case was settled by Galleon Beach Resorts. That matter was not settled by Columbia Sussex.

5.    In response to paragraph 5 of your letter, Columbia Sussex objects to the characterization of anyone directing the plaintiff to the lavatory where she was allegedly raped. The lavatories at the Galleon Beach Resort are not advertised as public lavatories; nor did plaintiff testify that anyone directed her to any lavatory on the Galleon Beach property immediately prior to the alleged assault. Pursuant to your amended request, Columbia Sussex is conducting a search for blueprints of the bathroom which is claimed to be the site of the alleged incident.

Our File No.: 388,193                         - 3 -

6.    No employees of defendant Columbia Sussex worked at the Galleon Beach premises between May 1 and 4, 2002. Columbia Sussex did not perform an inspection of the Westin Casuarina in response to the incident alleged by Ms. Genereux. Columbia Sussex was not aware of Ms. Genereux's allegations until nearly three years later when it was served with the Summons and Complaint in this litigation.

7.    Columbia Sussex objects to any characterizations of the <u>Reynolds</u> case as being relevant to the  allegations asserted by Ms. Genereux. A copy of the Summons and Complaint in the <u>Reynolds</u> litigation has been produced. The <u>Reynolds</u> litigation was settled by defendant by Galleon Beach Resorts. Columbia Sussex did not contribute to the settlement in that case. In response to Interrogatory no. 7, the response may be supplemented as follows:

7  A.  March 22, 1997;
   B.  Alleged service of alcohol to underage guests; alleged sexual assault;
   C.  Louise Reynolds, a guest of the hotel;
   D.  The alleged assailant was Robert Mendoza a then 17 year old Swedish guest of the hotel and/or Arthur Blake, a Caymanian resident, who at the time was an employee of Galleon Beach;
   E.  Defendant Columbia Sussex became aware of the incident in March 1997 when it was reported by the Galleon Beach Resort Hotel;
   F.  Columbia Sussex does not have any documents related to a criminal prosecution, if any. A copy of the Summons and Complaint in the civil litigation by Reynolds has been produced.
   G.  Columbia Sussex did not pay the settlement which was concluded by Galleon Beach Resort; and
   H.  See response to "F" and "G."

8.    Columbia Sussex reiterates its response and objections to the Requests for Production of Documents Request no. 97. Your letter misstates the testimony of Mr. Mitchel who testified that Columbia Sussex processed payments from the Galleon Beach bank account in order to facilitate the placement of advertisements in U.S. publications for the Galleon Beach property. Columbia Sussex did not pay for the ads. Columbia Sussex does not have responsive documents for any time period leading up to the day of plaintiff's alleged incident. Columbia Sussex does not control Galleon Beach Resorts and the processing of certain services pursuant to the Administrative Services Agreement did not transfer the control of Galleon Beach Resort to Columbia Sussex

In response to the final paragraph of your September 10 letter, please be advised that with the exception of payroll information and about which Columbia Sussex is performing a further search in response to your request, there are no responsive documents which date back more than three years; a time frame which

Our File No.: 388,193                    - 4 -

post dates Ms. Genereux's alleged incident in May 2002 and would not possibly be relevant to this matter.

Concerning your September 19, 2007 letter involving your request for additional records from Starwood/Westin, we will be responding to that letter within the next two weeks. However, we must comment at this time upon your request for the deposition of Ms. Mary Hynes-Talhouk. John Johnson has informed me that he did not agree to produce Ms. Talhouk for a deposition. No representation regarding the deposition of Ms. Talhouk was made.

Sincerely yours,

MENDES & MOUNT, LLP

Robert J. Brown

VIA E-MAIL AND REGULAR MAIL

cc:    John Johnson, Esq.

# MENDES & MOUNT, LLP

750 SEVENTH AVENUE
NEW YORK, NY 10019-6829
TELEPHONE: (212) 261-8000
FACSIMILE: (212) 261-8750

LOS ANGELES OFFICE
725 SOUTH FIGUEROA STREET
NINETEENTH FLOOR
LOS ANGELES, CA 90017-5419
TELEPHONE: (213) 955-7700
FACSIMILE: (213) 955-7725

NEW JERSEY OFFICE
ONE NEWARK CENTER
NEWARK, NJ 07102-5259
TELEPHONE: (973) 639-7300
FACSIMILE: (973) 639-7350

DIRECT DIAL: (212) 261-8110

January 8, 2008

**VIA E-MAIL AND REGULAR MAIL**
Mark F. Itzkowitz, Esq.
85 Devonshire Street
Suite 1000
Boston, MA 02109-3504

Re:    Kimberly Genereux v. Columbia Sussex Corp.
d/b/a Westin Casuarina Hotel, Starwood Hotels &
Resorts, et al.
U.S.D.C. Massachusetts
Civil Action No.: 05-CV-1079-JLT
L/A:    Westin Casuarina Hotel
Grand Cayman, B.W.I.
D/A:    May 3, 2002
Our File:  388,193

Dear Mr. Itzkowitz:

The following letter will serve to supplement our letter dated September 28, 2007 which addressed your September 10, 2007 letter regarding Columbia Sussex.

Columbia Sussex is not in possession of any records which identify the female bartender and/or male manager on duty at the Westin Casuarina on May 3, 2002, the date of the alleged incident between an unknown assailant and your client.

As you are aware, Columbia Sussex did not employ the Westin Casuarina bartender and manager; they were employees of Galleon Beach Resort, Ltd., which is not a party to this litigation. While payroll records may have been forwarded to Columbia Sussex as part of the Administrative Services Agreement between Columbia Sussex and The Westin Casuarina, they do not provide the identity of the female bartender or male manager on duty at the time of the alleged incident.

Very truly yours,

MENDES & MOUNT, LLP

Robert J. Brown

Our File No.: 388,193                                    - 2 -


cc:    **<u>VIA E-MAIL</u>**
       John Johnson, Esq.

# MENDES & MOUNT, LLP.

750 SEVENTH AVENUE
NEW YORK, NY 10019-6829
TELEPHONE: (212) 261-8000
FACSIMILE: (212) 261-8750

LOS ANGELES OFFICE
725 SOUTH FIGUEROA STREET
NINETEENTH FLOOR
LOS ANGELES, CA 90017-5419
TELEPHONE: (213) 955-7700
FACSIMILE: (213) 955-7725

DIRECT DIAL: (212) 261-8110

NEW JERSEY OFFICE
ONE NEWARK CENTER
NEWARK, NJ 07102-5259
TELEPHONE: (973) 639-7300
FACSIMILE: (973) 639-7350

January 25, 2008

**VIA E-MAIL AND REGULAR MAIL**

Mark F. Itzkowitz, Esq.

85 Devonshire Street

Suite 1000

Boston, MA  02109-3504

      Re:    Kimberly Genereux v. Columbia Sussex Corp.
                d/b/a Westin Casuarina Hotel, Starwood Hotels &
                <u>Resorts, et al.</u>
                U.S.D.C. Massachusetts
                Civil Action No.: 05-CV-1079-JLT
            L/A:  Westin Casuarina Hotel
                Grand Cayman, B.W.I.
            D/A:  May 3, 2002
            <u>Our File:  388,193</u>

Dear Mr. Itzkowitz:

This letter will address your requests for further discovery of defendant Starwood Hotels & Resorts, (including requests made to Westin License Company and other Westin entities), particularly those requests set forth in your letter dated September 19, 2007. We reiterate all objections previously set forth in defendants' Responses to plaintiff's Request for Production of Documents and the Interrogatories posed by plaintiff Kimberly Genereux.

## OBJECTIONS REITERATED

Starwood does not own, manage or supervise the Westin Casuarina Hotel. The owner of the hotel, Galleon Beach Resort, Ltd., has never been served with the Summons and Complaint and it has never appeared in this action. You have continued to seek extensive discovery of Starwood (and defendant Columbia Sussex) regarding practices and procedures executed by the Westin Casuarina and its employees in the Cayman Islands. Neither Starwood nor Columbia Sussex hire or fire the Westin Casuarina Hotel's employees, nor do they manage, direct or supervise them. These are facts which we have reiterated several times to you throughout this case. Your depositions of Starwood and Columbia Sussex attest to those facts. The extensive questioning of defendants' witnesses and the continuing document requests by the plaintiff have not altered the single truth that neither Starwood nor Columbia Sussex bear any responsibility for the alleged assault of your client in the Cayman Islands by an unidentified assailant.

## NO FURTHER DEPOSITION OF STARWOOD

Mr. John McGovern testified on behalf of Starwood with knowledge as a Vice President of Franchise Operations. Over more than 7 ½ hours, Mr. McGovern addressed your many questions. As to security

issues that may arise at certain franchise properties, such as the Westin Casuarina Hotel in Grand Cayman, those matters and how they are dealt with are the responsibility of the Hotel operator, not the franchisor. Mr. McGovern testified that "providing reasonable security was the sole responsibility of the operator" of the hotel. [McGovern Depo., p. 199].

There is neither a need for a further deposition of Starwood nor is there another Starwood witness to produce who would have knowledge of that Cayman property's practices in 2002 when the plaintiff alleges her incident occurred. As we stated in our own letter of September 28, 2007, following the deposition of the Starwood witness, there was never an agreement that there would be a further deposition of Starwood or that Ms. Mary Hynes-Talhouk would be produced for a deposition.

We have since confirmed that Ms. Hynes-Talhouk was not the Director of Franchise Operations (DFO) for the region including the Westin Casuarina Hotel at any time prior to the plaintiff Genereux's alleged incident on May 3, 2002. We have also confirmed that Ms. Hynes-Talhouk did not inspect the property prior to the plaintiff's incident.

She has no personal knowledge of the Westin Casuarina's compliance, if any, with Westin Brand Standards in 2002 or earlier. No one at Starwood does. As Mr. McGovern stated at his deposition about whether the Cayman property would have been on her list of franchise operations, "it's a total assumption that it would be Mary's hotel." (McGovern Depo., p. 253). His assumption was incorrect. Ms. Hynes-Talhouk was DFO in 2006.

### YOUR SEPTEMBER 19, 2007 LETTER

Regarding the other requests set forth in your September 19 letter, we respond as follows:

1. **Lashner Rush Audit Records for the Westin Casuarina** : We reiterate the same objections which have been asserted previously and throughout this litigation, with particular emphasis on the absence of relevance. Without waiving our objections and subject to the confidentiality agreement between the parties, copies of the LRA records for the two years prior to the alleged incident (2000 and 2001) will be produced under separate cover. LRA did not perform an audit in 2002 prior to the plaintiff's alleged incident.

   Starwood previously produced the Quality Assurance Program QAP 2000 and QAP 2001 Comprehensive Checklists, from which the audits were conducted.

2. **Starwood/Westin Hotel "rankings" reflecting the position of the Westin Casuarina compared to other Westin Hotels** : Starwood is not in possession of any "rankings" prior to the incident date.

3. **Any action plans to insure compliance with the Westin Brand Standards prepared by the Westin Casuarina insofar as they relate to security** : No such documents are in the possession of Starwood.

4. Property or Inspection letters relating to Westin Casuarina      : None.

5. Westin Loss Control Manual      : Starwood does not have a copy.

6. Westin Security Manual      : <u>See</u> response to Request No. 5 above.

7. Safety and Loss control section      : Section VI of the Westin Quality Assurance Program Manual      : <u>See</u> response to Request No. 5 above. Starwood previously produced the 2001 Quality Assurance Program.

8. Any "product improvement plans" or additional "design review memoranda" relating to the Westin Casuarina      : Starwood raises additional objections to this Request to the extent that it is overbroad and not directed toward the area where the plaintiff's incident is alleged to have occurred. Without waiving these objections, Starwood has no such documents other than that which was previously produced as Exhibit "A" to Starwood's Initial Disclosures dated April 28, 2006. Page 3 of that 6.10.02 Memo notes that the Spa "opened in December [2001] not too far from Westin concept despite their designing without Westin Design Guidance."

9. Westin Loss Prevention Manual      : Starwood does not have a copy.

10.    Westin Security Management Guidelines          :  <u>See</u>
Response to Request No. 9 above.

11.    Westin Security Hospitality Program          :    <u>See</u>
Response to Request No. 9 above.

12.    Film:  Travel safety and security          : A survival
guide to traveling abroad          : Starwood does not
have a copy.

13.    Film  :    Hotel Security on trial          : <u>See</u>  Response
to Request No. 12 above.

14.    Film:  Management Guide to Loss Control                    :
<u>See</u>  Response to Request No. 12 above.

15.    Film:  Risk Management Today          : <u>See</u>  Response
to Request No. 12 above.

16.    Film:    Security: Employee Awareness and
problem prevention          :    <u>See</u>  Response to Request
No. 12 above.

17.    Film:    Security: Protecting your property
and guest    : <u>See</u>  Response to Request No. 12 above.

18.    Sections II and III of the Associate
Orientation Manual for Franchised Hotels          :
These sections have been located.    Starwood
reiterates its prior objections and cannot confirm
whether these sections or the manual were ever

forwarded to the Westin Casuarina. Copy of the sections will be produced under separate cover, subject to all previously asserted objections and confidentiality.

Starwood has produced the documents in its possession. Certain documents which may be referred to in Westin documents are no longer in existence or available to Starwood. Many are believed to have been destroyed as part of Westin's ordinary corporate business practice and prior to the sale of Westin to Starwood in 1998.

## COLUMBIA SUSSEX

As we have previously and separately responded on behalf of defendant Columbia Sussex, none of the documents requested in your letter of September 19, 2007 are in the possession of Columbia Sussex.

## THE REYNOLDS CASE

Starwood has no information regarding the Reynolds case. The Reynolds case is dated May 22, 1997. Starwood acquired Westin Hotel Company on January 2, 1998. There is no evidence that Starwood was informed of the Reynolds case.

## SO-CALLED "SITE-PLAN"

Regarding your separate letter dated September 19, 2007 addressed to Mr. Johnson and forwarding a document which purports to be a "site plan" for the Westin Casuarina conference center, please be advised that Starwood is unable to confirm the authenticity of the site plan.

We have several times requested that you confer with your client about the reality of her case, specifically that the defendants she has chosen to sue do not bear responsibility for the wrongs she claims befell her. If your client would convey a reasonable settlement demand, then all parties may be able to conclude this case without further expense. If not, we will be constrained to file a motion for summary judgment.

We look forward to receiving your client's complete medical records as well as reports from all experts.

Very truly yours,

MENDES & MOUNT, LLP

Robert J. Brown

cc:    John Johnson, Esq.

Kimberly Genereux

1

1        VOLUME:   I

2        PAGES:   1 - 124

3        EXHIBITS: 1 to 7

4        UNITED STATE DISTRICT COURT

5        DISTRICT OF MASSACHUSETTS

6        Civil Action No. 05-CV-10879-JLT

7     -----------------------------------------

8     KIMBERLY GENEREUX,                    )

9                    Plaintiff             )

10    v.                                   )

11    COLUMBIA SUSSEX CORPORATION, Et al,  )

12                   Defendants            )

13    -----------------------------------------

14

15        DEPOSITION OF KIMBERLY GENEREUX

16        December 21, 2006

17        11:07 a.m. to 2:43 p.m.

18        Corrigan Johnson & Tutor

19        141 Tremont Street

20        Boston, Massachusetts

21

22        *********

23

24        Reporter:  Amie D. Rumbo

Kimberly Genereux

84

1     A.  No.

2     Q.  After they got your personal information and

3  asked you questions about the incident, the assault,

4  what happened next?

5     A.  Well, to backtrack, I forgot to tell you

6  that when you asked me about the bartender, what I

7  asked the bartender.  I forgot I did ask her if she

8  could get some security guard.  I remember that.

9  And she said there weren't any security guards.  She

10  had to call the manager.  I'm sorry.  I might be

11  upset and not remembering every single word.  I just

12  want to say that that was sometimes past.

13     Q.  No, that's all right.  If we go along and

14  you remember something from earlier, please let us

15  know.  Just bring it up.

16     A.  Yeah.  Because that jogged my memory because

17  when they first walked in, the two officers, at

18  first I thought maybe they were security guards.

19     Q.  From the hotel, you mean?

20     A.  Yeah.  And then I realized, only then when

21  they identified themselves, that they were the

22  Cayman Police.

23     Q.  So earlier, when you were with the

24  bartender, when you first entered the lobby, you had

Kimberly Genereux

85

1    asked her to bring some security guards down?

2        A.   Yeah.

3        Q.   And she said, "We don't have any."  What did

4    she say?  What was her response, as best as you can

5    recall?

6        A.   She said, "There's no security.  I have to

7    call the manager."

8        Q.   All right.  So now, moving ahead to where we

9    were where the police have finished asking you about

10   your personal information and asking you about what

11   happened to you, what happened next?  For instance,

12   did you go to show them the ladies room?  Did you go

13   to the hospital with them?  What was the next thing

14   that happened?

15       A.   The next thing that happened were some other

16   police came into the room, some other policemen.

17       Q.   So now, in addition to the first two, you

18   had at least two more who came into the room?

19       A.   At least two more, I saw.

20       Q.   And as far as you understood, were they also

21   members of the Island Police?

22       A.   Yes.

23       Q.   Do you know the names of the additional

24   officers who came into the room?

May 3, 2005

On the night of May 3 2002, I was asked by the bartender to call the Manager on Duty for a young lady who said that she was molested. The Manager on Duty was called and he spoke to her in the lobby area of the hotel. After briefly speaking with the lady, he asked me to call the police because the lady said that she had been raped. The police was immediately called to investigate the matter.

While we were waiting for the police, we tried to calm the lady down since she appeared to be distraught. At this time we asked her what took placed. She said that on her way home from the supermarket she decided to make a diversion through an access way that leads to the beach since it would be a shorter route home. This access way is at the north end of the hotel and lies between the Governors Ball Room and the main hotel building. The lady said that as she proceeded through the access way a man held her and dragged her into the restroom located beside the ball room. The police arrived shortly after and they were escorted by the Manager on Duty and the lady to the scene of the crime.

Denzil Luke

