UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-CV-10879-JLT

| | |
|---|---|
| KIMBERLY GENEREUX, )<br>    Plaintiff )<br>)<br>           v. )<br>)<br>COLUMBIA SUSSEX CORPORATION, )<br>STARWOOD HOTELS & RESORTS )<br>WORLDWIDE, INC., and )<br>WESTIN HOTEL MANAGEMENT, L.P., )<br>    Defendants ) | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE THE USE OF *REYNOLDS v. COLUMBIA SUSSEX*** |

Kimberly Genereux, the plaintiff, opposes the defendants' motion *in limine* to exclude use of evidence and testimony from the case of *Reynolds v. Westin Hotel Company, et. als.,* U.S.D.C. E.D. Ky. Case No. 97-77 (hereafter "*Reynolds*"), for the following reasons:

    1.   On the morning of his deposition, defendant Columbia Sussex Corporation's Fed. R. Civ. P. 30(b)(6) designee, Theodore Mitchel, produced a copy of the Complaint and two summonses from *Reynolds* and identified them as part of that defendant's response to the plaintiff's document requests.

    2.   The *Reynolds* Complaint alleged sexual assaults upon two teenage female guests of the Westin Casuarina.

    3.   During his deposition in the instant case, Mr. Mitchel identified *Reynolds* as a sexual assault case, Mitchel dep., p. 38, and testified that the only times he has testified as a Rule 30(b)(6) designee for Columbia Sussex in cases involving persons injured as a result of criminal assaults involving any Columbia

Sussex hotels was with respect to incidents occurring at the Westin Casuarina, including *Reynolds*. *Id.,* p. 4-8, 197-98.

4.  Mr. Mitchel denied possession of copies of his deposition testimony from *Reynolds*. *Id.,* p. 13-14. Although he testified that the defendants might have other documents related to *Reynolds*, *Id.,* p. 200-203, no other documents ever were produced by the defendants.

5.  The plaintiff subpoenaed copies of the *Reynolds* deposition transcripts for trial. They arrived during the pendency of the defendants' summary judgment motion in electronic format and were used to oppose the defendants' motion.

6.  Mr. Mitchel's testimony from *Reynolds* is not hearsay but constitutes the prior statement of a witness, Fed. R. Evid. 801(d)(1), and where it contradicts Mitchel's testimony at bar is the admission of a party-opponent in a representative capacity. Fed. R. Evid. 801(d)(2)(A).

7.  Mr. Mitchel's deposition testimony, and any other relevant documents from *Reynolds,* may be used at bar where relevant as admissions of defendant Columbia Sussex Corporation and/or to impeach witnesses. *See e.g.,* Fed. R. Evid. 801(d)(1) and (2), 607, 613.

8.  Evidence deriving from and/or related to *Reynolds* is relevant to the issue of foreseeability in the case at bar. *Reynolds* involved a prior sexual assault involving two minor

guests of the Westin Casuarina in which defendant Columbia Sussex was sued and settled.

9. The *Reynolds* evidence has been in the possession of the defendants for the past 11 years and, other than the Complaint, has not been produced to the plaintiffs. The defendants should not be heard to complain that they "have had little time to examine and respond to these documents". Motion *in Limine*, p. 3.

10. Ms. Genereux was not provided and was unable to obtain from PACER a copy of the Kentucky District Court protective order, which purports to have been appended to the defendants' Motion *in Limine* but which did not appear in the materials received by the plaintiff. The plaintiff assumes that as a non-party to the Kentucky litigation who obtained the transcripts properly by subpoena for the instant trial, she is not within the scope of the protective order. Moreover, the plaintiff did not name the minor victims of the sexual assaults in her summary judgment submissions and does not anticipate identifying them at trial.

WHEREFORE, the plaintiff respectfully requests that this Court deny the defendants' motion *in limine*.

        The Plaintiff,
        By her Attorney,

        _____
        MARK F. ITZKOWITZ (BBO #248130)
        85 Devonshire Street
        Suite 1000
        Boston, MA  02109-3504
        (617) 227-1848
        April 8, 2008

## CERTIFICATE OF SERVICE

    I, Mark F. Itzkowitz, counsel for the plaintiff, hereby certify that on this date, I made service of the within document by serving it electronically to registered ECF participants and/or by mailing/faxing/hand-delivering a copy of same to non-registered ECF participants as indicated on the Notice of Electronic Filing ("NEF"), upon the following counsel of record:

| | |
|---|---|
| John B. Johnson, Esquire | Robert J. Brown, Esquire |
| Corrigan, Johnson & Tutor, P.A. | Mendes & Mount, LLP |
| 141 Tremont Street | 750 7th Avenue |
| Boston, MA 02111; and | New York, NY  10019-6829. |

         s/ Mark F. Itzkowitz
        MARK F. ITZKOWITZ (BBO #248130)

Dated:  April 8, 2008

```
 1              UNITED STATE DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2             Civil Action NO. 05-CV-10879-JLT

 3     _____
       KIMBERLY GENEREUX,              )
 4                    Plaintiff,       )
       VS.                             )
 5     COLUMBIA SUSSEX CORPORATION,    )
       ET AL,                          )
 6                    Defendants.      )
       _____

 7

 8                        - - -

 9

10            Deposition of THEODORE R. MITCHEL, a

11   witness, was called on behalf of the Plaintiff as

12   upon cross-examination, pursuant to the Rules of

13   Civil Procedure, commencing at 9:30 a.m., on Friday,

14   September 7, 2007, at the Sheraton Cincinnati, in the

15   "A" Armstrong Room at 2826 Terminal Drive, Hebron,

16   Kentucky, before Terence M. Holmes, professional

17   court reporter, and notary public within and for the

18   Commonwealth of Kentucky.

19                        - - -

20

21

22

23

24

25
                              1                    ORIGINAL
```

1                THEODORE R. MITCHEL
2  of lawful age, a witness herein, being first duly
3  sworn, as hereinafter certified, was examined and
4  deposed as follows:
5           MR. ITZKOWITZ:  What do you want to do
6       on stipulations?  Stand by us as reserve
7       all objections, including motions to strike
8       until the time of trial, except for
9       objections related to privilege.  And
10      dispense with the -- waive the notary and
11      waive the signing and let the witness read
12      to sign, I would certainly want him to do
13      that.
14          MR. BROWN:  Yes.
15          MR. ITZKOWITZ:  Okay.
16          MR. BROWN:  Those are all acceptable
17      to me.
18          MR. ITZKOWITZ:  Great.  Okay.
19              CROSS-EXAMINATION
20 BY MR. ITZKOWITZ:
21      Q.   Can you tell us your full name, sir?
22      A.   It's Theodore R. Mitchel.
23      Q.   And what does the R stand for?
24      A.   Robert.
25      Q.   And, Mr. Mitchel, you've been

                         4

```
 1   designated by Columbia Sussex to testify as their
 2   witness in response to a deposition for the person
 3   with the most knowledge of that corporation, is that
 4   correct?
 5           A.   Yes.
 6           Q.   Okay.  Do you know how it was that you
 7   were designated, why you as opposed to other people?
 8           A.   I'm assuming it's in my position as
 9   secretary treasurer.
10           Q.   Okay.  Have you ever testified before
11   for Columbia Sussex as a designated person under Rule
12   30-B-6?
13           A.   I don't know what 30-B-6 is, but I've
14   testified before for Columbia Sussex, yes.
15           Q.   Okay.  In what types of cases have you
16   testified?
17           A.   Contract dispute cases, civil cases,
18   you know, slip and fall cases, I've testified a
19   number of times.
20           Q.   On the civil cases that you mentioned,
21   did any of them involve claims that people have --
22   that somebody had been injured at the hotels as a
23   result of a criminal incident?
24                MR. BROWN:  At the Galleon Beach
25           Hotel?
```

5

```
 1               MR. ITZKOWITZ:  No, at hotels in
 2          general that Columbia Sussex owns.
 3          A.   I believe I have, yes.
 4          Q.   Okay.  Do you recall how many times
 5  you've testified in cases of that nature?
 6               MR. BROWN:  Let me just, for the
 7          record, 'cause I note that you said
 8          "Columbia Sussex owns," and for the record
 9          here, Columbia Sussex doesn't own the
10          Galleon Beach property.  And so I just want
11          the witness to be clear that you've -- you
12          know, you've asked him here that Columbia
13          Sussex owns.  I don't know --
14               MR. ITZKOWITZ:  Let me rephrase the
15          question.  That's fine.  I understand.
16          Q.   Have you been designated to testify on
17  behalf of Columbia Sussex in cases brought against
18  Columbia Sussex Corporation relating to allegations
19  that somebody was injured as a result of a criminal
20  incident in a hotel that was either owned or operated
21  or managed by Columbia Sussex?
22               MR. BROWN:  Well I need -- you need to
23          actually extend it that -- I think that
24          when you limit to owned, managed or
25          supervised that may be limiting in the
```

```
 1            capacity as we have here where in Galleon
 2            Beach they didn't own, manage or supervise,
 3            but they were sued.  And there was, as
 4            you know, through production of documents
 5            and administrative services agreement.  So
 6            there may have been some services provided,
 7            but that they were not on site.  And I
 8            think -- you know, I'm being careful as to
 9            how you're asking the question.
10                 MR. ITZKOWITZ:  Yeah.  No, I
11            appreciate that.  I was actually concerned.
12            I was gonna ask that as a follow-up after
13            this one.
14       Q.   But why don't we give it another shot
15  and see if we can make your life easier.
16       A.   All right.
17       Q.   In those cases in which you were
18  designated to testify where there had been
19  allegations of a person being injured as a result of
20  a criminal incident, what was the relationship
21  between Columbia Sussex and the hotel that was being
22  sued?
23       A.   The only one that I can recall is the
24  one where Columbia Sussex is the -- has an
25  Administrative Services Agreement.
```

                                    7

1       Q.  Are you referring to this particular
2  case, Ms. Genereux's case or to something different?
3       A.  No, to the Reynolds' case.
4       Q.  Okay.  And before we get started this
5  morning, we had received a copy of certain pleadings
6  from that case.  That's a case also involving the
7  Westin Casuarina, is that correct?
8       A.  Yes.
9       Q.  Okay.  So just to make sure that I'm
10 following this correctly.  You've been designated to
11 testify on behalf of Columbia Sussex in two cases in
12 which there were allegations of criminal -- of
13 somebody being hurt as a result of a criminal
14 incident, correct?
15      A.  Correct.
16      Q.  Okay.  Both of those cases involve the
17 Westin Casuarina?
18      A.  Yes.
19      Q.  Okay.  You had mentioned earlier that
20 you also had been designated to testify in civil
21 cases and you mentioned specifically slip and fall
22 cases.  How many civil cases approximately have you
23 been designated to testify in?
24      A.  I really can't recall, I mean it's
25 probably been somewhere around 10.

```
 1              Q.   Okay.  And let me just sort of pick up
 2    on what Mr. Brown was suggesting and make sure that
 3    we got this right on the record.  When you testified
 4    in the case involving Shaw Carpet, were you
 5    testifying on behalf of Columbia Sussex Corporation
 6    or on behalf of Galleon Beach Resort?
 7              A.   Galleon Beach Resort.
 8              Q.   Okay.  Was Columbia Sussex a party to
 9    that case involving Shaw Carpet?
10              A.   I don't recall.
11              Q.   Do you remember which court that was
12    in?
13              A.   I believe it was -- I'd just be
14    guessing, I really don't know.
15              Q.   Was it a court in the United States or
16    a court in the Cayman Islands?
17              A.   It was a court in the United States.
18              Q.   Okay.  And do you know whether the
19    case was in federal court or whether it was in state
20    court?
21              A.   I really don't know.
22              Q.   Okay.  Do you have copies of your
23    testimony from any of the cases that we mentioned so
24    far, the Kepner case, the Reynolds case or the Shaw
25    case?
```

```
 1            A.   I would guess that we don't, 'cause
 2   once a case is settled generally, you know, the
 3   records are destroyed after three years or so, but I
 4   couldn't say that with certainty.
 5            Q.   Okay.  And do you recall how long ago
 6   the Reynolds case was resolved?
 7            A.   I'm guessing again, but I think it
 8   was, you know, the late '90s, '89, '98, or maybe in
 9   2000, somewhere in that time period.
10            Q.   Okay.  And just to make sure that I'm
11   right, that case, the Reynolds case settled?
12            A.   Yes.
13            Q.   Do you know what became of the Kepner
14   case?
15            A.   I don't recall, I don't know if it's
16   been settled yet or not.
17            Q.   Do you recall approximately how long
18   ago you testified in it?
19            A.   On the Kepner case, that was some time
20   early this year, I believe.
21            Q.   All right.  All this was sort of a
22   lead into what is obviously clearly, you're gonna
23   know anyway, so I'll just toss it out there for your
24   benefit.  I represent the plaintiff in this case
25   against Columbia Sussex, her name is Kimberly
```

```
 1                I thought you were talking about the
 2      Reynolds case.
 3            A.    The Kepner case was a slip and fall.
 4            Q.    Oh, okay.  All right.  And the
 5      Reynolds case was an alleged sexual assault, you say?
 6            A.    Yes.
 7            Q.    Okay.  And of course the case that
 8      brings us here today, the Genereux case, is an
 9      alleged sexual assault, correct?
10            A.    Yes.
11            Q.    Were there any other claims that you
12      recall reviewing that involve alleged sexual
13      assaults?
14            A.    I don't remember any specifically, I'm
15      sure there was.  I mean I've been with the company
16      for 18 years, I'm sure during that period of time we
17      had another one somewhere.
18            Q.    Do you recall any other hotels where
19      there are alleged victim sexual assaults besides the
20      Westin Casuarina?
21            A.    I don't recall.
22            Q.    Okay.  Earlier you had mentioned that
23      one of the reasons for, for reviewing claims was to
24      determine if there were any areas that required
25      corrective action, is that correct?
```

```
 1            Q.   Earlier when we were talking about
 2   analyzing claims for various hotels that were
 3   operated or managed by the -- or owned by Columbia
 4   Sussex, we talked about some of the information that
 5   we gathered in the course of preparing analysis,
 6   would that information include information relating
 7   to crime levels in the area of the hotel?
 8            A.   No, that would only -- that report is
 9   only -- would have been an analysis of the Incident
10   Report.
11            Q.   Okay.  And other than putting that
12   particular analysis aside, do you know of any other
13   folks at Columbia Sussex that analyze crime levels in
14   the vicinities of Columbia Sussex or the managed
15   hotels for any purpose?
16            A.   No.
17            Q.   After the incident with Ms. Genereux,
18   did you come to learn of any, any other incident
19   involving alleged criminal acts at the Westin
20   Casuarina?
21            A.   Other than the one I had already
22   mentioned, the Reynolds case, which happened years
23   before that.  Wasn't aware of anything else.
24            Q.   Okay.  And we talked earlier about the
25   two, two other cases at the Casuarina that gave rise
```

```
 1   to litigation, Kepner slip and fall, and the
 2   Reynolds' sexual assault.  Other than matters that
 3   are in litigation, are you aware of any other reports
 4   of, of the incidents involving personal injuries at
 5   the Westin Casuarina that arose out of alleged
 6   criminal acts?
 7          A.   No.
 8          Q.   Okay.  And that's neither before nor
 9   after the incident with Ms. Genereux, is that
10   correct?
11          A.   That's correct.
12          Q.   Have you personally prepared any
13   reports in connection with the Genereux incident?
14          A.   No.
15          Q.   And other than the document that we've
16   discussed that you had reviewed, have you seen any
17   other reports relating to Ms. Genereux's incident
18   other than the documents you may have received from
19   counsel?
20          A.   No.
21          Q.   Have you ever had any discussions with
22   Mr. Yung about the Genereux incident?
23          A.   I believe I told him about it and that
24   we didn't have, you know, report at the time of the
25   incident, but that's the extent of it.  I don't
```

1  operational practices at Westin hotels.

2            In the course of your work for
3  Columbia Sussex, have you had occasion to review any
4  of those manuals?

5       A.   I've reviewed selected pages, and then
6  certain circumstances I don't recall what sections I
7  had reviewed, but I know they exist, and I have over
8  the years probably seen, if not Westin manuals,
9  Marriott manuals or Holiday Inn manuals, and I have
10 seen 'em.  I don't know and haven't reviewed a total
11 of them to know all the areas that they address.

12      Q.   Have you had any responsibilities
13 personally with respect to enforcing any aspects of
14 those manuals?

15      A.   No, I have not.

16      Q.   And have you ever had any involvement
17 in reviewing the Westin manuals that they
18 specifically related to the Westin Casuarina?

19      A.   No.

20           MR. ITZKOWITZ:  Could we go off for a
21      second?

22      (Off the record.)

23      (United States District Court, Summons in a
        Civil Case, 5-22-97, marked for
24      identification as Mitchel Exhibit 11.)

25      Q.   Mr. Mitchel, we just handed you what

200

```
 1  we've marked as Exhibit 11.  This is a copy of a
 2  couple of summons and complaints in a federal case in
 3  the U.S. District Court, the Eastern District of
 4  Kentucky brought by Leslie Reynolds.  Are you
 5  familiar with this document?
 6          A.   I have seen it a long time ago.  I'm
 7  not familiar with it specifically.
 8          Q.   Okay.  We've been making reference
 9  throughout the deposition today to an incident
10  allegedly involving sexual assault involving
11  Ms. Reynolds.  Is this the complaint that was brought
12  in the case arising out of that incident?
13          A.   Yes.
14          Q.   Are there any other documents that you
15  have at Columbia Sussex relating to this incident?
16          A.   I believe we do have other documents
17  relating to this case, yes.
18          Q.   Do you know what documents you have?
19          A.   I don't know.
20          Q.   Do you know whether you have any of
21  the Incident Reports relating to the incident which
22  gave rise to the Reynolds case?
23          A.   We did at one time, whether we still
24  have 'em or not, I don't know.
25          Q.   And as I understood what we had talked
```

```
 1   about earlier, I can't remember if we discussed it on
 2   the record, the Reynolds case was settled?
 3           A.   Yes.
 4           Q.   Do you know what the terms of the
 5   settlement were?
 6           A.   My recollection is -- now I know that
 7   the settlement was $175,000.00.
 8               MR. ITZKOWITZ:  Okay.  Why don't we go
 9           off the record for a minute.
10           (Off the record)
11           (Photographs, marked for identification as
                Mitchel 12 through 16.)
12           Q.   Let me just ask you a couple of
13   questions before we get to the photos.  In the course
14   of this litigation we had received answers to
15   interrogatories from Columbia Sussex, and there was a
16   question asked that related to criminal incident
17   reports occurring at the Westin Casuarina.  The
18   answer had been that the, that the defendant was not
19   in possession of any reports for a incident at the
20   Westin Casuarina.  And I know this morning you had
21   provided the complaint in the Reynolds case.  And I
22   think it was after this thing had actually been
23   answered that we got the RCIP Report relating to
24   Genereux, I think we marked it in the deposition a
25   little bit earlier.
```

1                 Do you know whether there were any
2     other reports of criminal incidents at the Westin
3     Casuarina that Columbia Sussex would have copies of
4     besides these two, the Reynolds' complaint and the --
5           A.    I'm not aware of any.
6           Q.    Do you know whether, for example,
7     Columbia Sussex has copies of the criminal Incident
8     Reports dealing with the Reynolds' incident?
9           A.    That might be in that file that has
10    the other documents related to that case, but I don't
11    know for a fact if it's in there or not.
12          Q.    Okay.  We've gone over it in some
13    detail, the Safety & Loss Prevention Manual, the
14    Safety & Security Manual from Columbia Sussex had
15    been provided to the Casuarina that you instructed
16    them to follow.  And we had talked about some of the
17    Westin, Westin manuals.  There's a couple of quotes
18    out of one of the Westin manuals.  I didn't see
19    identical language and I don't remember identical
20    language from the Columbia Sussex manual.  I don't
21    want to drag you through the whole thing again
22    hunting for it, but there's -- I just want to see
23    whether or not from the perspective of Columbia
24    Sussex and the perspective of the Westin Casuarina
25    you would agree with these provisions that the Westin