UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY GENEREUX,<br>Plaintiff,<br><br>v.<br><br>COLUMBIA SUSSEX CORPORATION,<br>STARWOOD HOTELS & RESORTS<br>WORLDWIDE, INC., and WESTIN<br>HOTEL MANAGEMENT, L.P.<br>Defendants. | C.A. NO. 05-CV-10879-JLT |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE TESTIMONY BY AND EVIDENCE THAT THE WESTIN CASUARINA EMPLOYED SECURITY OFFIERS/GUARDS, DIRECTORS OR VENDORS AT THE TIME OF PLAINTIFF'S RAPE

Defendants hereby oppose the Plaintiff's Motion in Limine to Preclude Testimony By and Evidence That The Westin Casuarina Employed Security Officers/Guards, Directors or Vendors at the Time of Plaintiff's Rape. In support of this opposition, the defendants say as follows:

Plaintiff seeks to preclude the testimony of Mr. Niels Olsen, who is a former employee of Galleon Beach, the owner and operator of The Westin Casuarina Hotel. Defendants' Counsel contacted Mr. Olsen for the first time in February 2008 upon the advice of the Galleon Beach General Manager, and not based upon any information from either Columbia Sussex or Starwood and Westin. Galleon Beach was previously named as a Defendant by the plaintiff; however, she never served Galleon and elected not to pursue discovery of Galleon. Defendants had several times throughout this case advised plaintiff to pursue discovery of Galleon, not because it was believed to have been

negligent, but because it was the only party which could fully answer the inquiries regarding security operations at the Westin Casuarina.

Defendant Columbia has never employed anyone at The Westin Casuarina and it has never had anything to do with the operational security at the Hotel. Nor did Columbia hear about the plaintiff's incident until nearly three years afterwards when the plaintiff's Complaint was filed. When the initial disclosure was filed in this case in 2006, the only information which Columbia had about the plaintiff's incident was information received by Columbia from Galleon relating to a statement by Denzil Luke, the hotel's night auditor, and a report by the Royal Cayman Island Police about the incident. Columbia received these documents from Galleon Beach in response to an inquiry by Columbia to Galleon about the incident. This inquiry was made after Columbia was served with the plaintiff's complaint. Columbia understood that this was the only information Galleon Beach had about the incident, and Columbia itself had no information. Mr. Denzil Luke was identified as the only person known possibly to have discoverable information about the plaintiff's incident.

In their Automatic Disclosure, defendant Starwood/Westin identified those persons whom it believed had discoverable knowledge, but none of the identified persons had anything to do with the hotel's security, and Starwood/Westin neither employed anyone at the Hotel, nor had anything to do operational security at the hotel. Defendant Starwood and Westin have never had any information or knowledge concerning the plaintiff's incident.

As has been pointed out often in the papers recently filed in this case, defendants Columbia, Starwood and Westin are not involved in the hotel's operational security.

Instead, this is the responsibility of Galleon Beach, the owner/operator. This has been made clear to the plaintiff since at least November, 2006 when each of the defendants answered the plaintiff's first set of interrogatories. (see Defendants' Interrogatory Answers attached to Plaintiff's Motion in Limine) The plaintiff's original complaint included Galleon Beach as a defendant and in the parties' <u>Joint Statement Pursuant to Local Rule 16.1,</u> filed prior to the Court's Scheduling Conference, the plaintiff stated that her intention was to depose various hotel employees, including those with knowledge of security procedure at the hotel. However, the plaintiff never undertook any discovery of Galleon Beach, and eventually filed an amended complaint dropping Galleon Beach from the case. Consequently, the plaintiff never pursued discovery from the one entity which undoubtedly had knowledge regarding security procedures at the hotel.

The initial responses made by each defendant regarding persons with discoverable information about the plaintiff's incident were truthful and accurate. These defendants, Columbia, Starwood and Westin, knew of no person, other than those identified in their disclosure, who had discoverable information about the incident. The responses of these defendants to the plaintiff's written discovery were also truthful and accurate. These defendants had no employees involved with the security at the hotel.

At his deposition Ted Mitchel, the Columbia witness, testified that certain records were kept by Columbia pursuant to the Service Agreement between the parties. He did not recall seeing anybody on the Galleon Beach payroll list whose function was to provide security, "but that doesn't mean that there isn't somebody, I don't recall." (Mitchel Depo. P. 68, l. 24-25, p. 69, l. 1-8). Security operations and whoever would carry them out were the responsibility of the operator of the Hotel, Galleon Beach. The

General Manager of the Hotel was identified as Mr. Dan Szydlowski by Mr. Mitchel at his deposition. Plaintiff elected not to pursue discovery of Galleon Beach or Mr. Szydlowski.

Subsequent to its written discovery response and after Mr. Mitchel's deposition and in response to plaintiff's request for the identities of the night manager and the bartender on duty on the night of the incident, (two persons that the plaintiff says she encountered after the incident), Columbia tried to determine if it had such information. Galleon Beach payroll records in Columbia's possession were reviewed, but they did not identify these Galleon Beach employees. The records in Columbia's possession do not identify who was working at The Westin Casuarina in security positions on the date of plaintiff's incident either.

At the January 30, 2008 pre-trial conference, the plaintiff's attorney for the first time gave a general outline of the expected testimony of Robert McCrie, the plaintiff's security expert. From this outline, the defendants understood that Mr. McCrie would be contending that the hotel had no security policies or personnel in place on the night of the incident. In response to this, counsel for the defendants contacted the hotel's general manager to inquire about this, and counsel at that time was advised to contact Mr. Niels Olsen about his role with the hotel's security.

It was not until February, 2008 that counsel for the defendants spoke with Niels Olsen about security practices at The Westin Casuarina. Mr. Olsen, a former employee of Galleon Beach and not an employee of any of the defendants, was hired originally by Galleon Beach to be the Director of the hotel's Food and Beverage Services. This is the position by which he was identified on Galleon Beach payroll records in Columbia's

possession. When Galleon Beach payroll records were reviewed by Columbia in an effort to respond to the plaintiff's subsequent requests, Mr. Olsen, who appears in the records only as the Director of Food and Beverage, not Security, was never identified.

Thereafter, upon receipt of the plaintiff's security expert's report on March 3, 2008, stating that the hotel had no security practices, Mr. Olsen prepared an affidavit detailing the Galleon Beach security policies in effect at the Westin Casuarina in 2002. Mr. Olsen, as stated in his affidavit filed as part of the defendants' summary judgment motion, was away from the island of Grand Cayman at the time of the plaintiff's incident, so he had no personal knowledge of the incident, and he left the employ of Galleon Beach in 2003.

Defendants in this case did not hide Mr. Olsen's identity from the plaintiff. Mr. Olsen was an employee of Galleon Beach and undoubtedly would have been identified by Galleon Beach when it was a defendant if the plaintiff had ever served Galleon Beach with the Complaint, which the plaintiff never did, and if the plaintiff ever sought discovery from Galleon Beach, which the plaintiff also never did.

Once the plaintiff became aware of Mr. Olsen's knowledge of security at the hotel through the affidavit filed on March 11, 2008 in support of the summary judgment motion, the plaintiff certainly had time to request a deposition of Mr. Olsen, but the plaintiff chose not do this. Now instead, the plaintiff seeks to bar Mr. Olsen's testimony. This is unfair to the defendants in light of the plaintiff's absolute failure to obtain any discovery from Galleon Beach, the hotel's owner/operator, and the plaintiff's apparent calculated decision not to seek the deposition of Mr. Olsen once he was identified.

The plaintiff's contention in paragraph 18 of the motion has no merit. The plaintiff has not been prevented from conducting meaningful discovery regarding security at The Westin Casuarina. Instead, the plaintiff chose not to conduct this discovery. As Mr. Olsen attests in his Affidavit submitted in support of summary judgment, managers also performed security functions at the hotel. This too would have been something learned by the plaintiff had she performed any discovery of Galleon Beach including Mr. Denzil Luke, or the General Manager or anyone else at the Hotel; and would provide her with some explanation as to why a bartender may have told her there were no security guards, *per se*. The identities of other "security "people referred in the payroll records were only uncovered in the past ten (10) days as explained at pages 6-7 of the <u>Defendants' Reply Memorandum of Law</u> filed with the court on March 28, 2008 in response to court document #69. None of these persons, even assuming that they still work for the Westin Casuarina and Galleon Beach will be called to testify at trial, and none has been contacted by the defendants. But, here again, the plaintiff undoubtedly would have obtained this information through discovery from Galleon Beach, but the plaintiff chose not to pursue this at any time during the pendency of this case.

## CONCLUSION

For the reasons set forth above, the defendants submit that the plaintiff's motion should be denied.

The defendants,
by their attorneys

*/s/ John B. Johnson*
John B. Johnson
Corrigan, Johnson & Tutor, P.A.
141 Tremont Street
Boston, MA 02111

(617) 338-0075
BBO No. 252580

*Robert J. Brown (PJJ)*

Robert J. Brown
Mendes & Mount, LLP
750 Seventh Avenue
New York, NY 10019
(212) 261-8000

UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Civil Action NO. 05-CV-10879-JLT

KIMBERLY GENEREUX,          )
              Plaintiff,    )
VS.                         )
COLUMBIA SUSSEX CORPORATION,)
ET AL,                      )
              Defendants.   )

- - -

Deposition of THEODORE R. MITCHEL, a witness, was called on behalf of the Plaintiff as upon cross-examination, pursuant to the Rules of Civil Procedure, commencing at 9:30 a.m., on Friday, September 7, 2007, at the Sheraton Cincinnati, in the "A" Armstrong Room at 2826 Terminal Drive, Hebron, Kentucky, before Terence M. Holmes, professional court reporter, and notary public within and for the Commonwealth of Kentucky.

- - -

392127ea-ee4a-49e1-97f3-03568170b4ce

1  Q. Does the home office get copies of the
2  disciplinary files?
3  A. I don't believe so.
4  Q. Okay. And perhaps as sort of the
5  inverse side of discipline, are files monitored up
6  here with respect to promotions or commendations for
7  Westin Casuarina employees?
8  A. To the extent there's a pay rate
9  change, that document is kept up here.
10 Q. Okay. Would pay rate change documents
11 also cover, for example, if a person was promoted to
12 a -- from one level of employment up to a higher
13 level within the same department or to a management
14 function or something like that?
15 A. Yes.
16 Q. Are the payroll checks for the
17 employees in the Caymans issued from here in
18 Kentucky?
19 A. Yes.
20 Q. Does Columbia Sussex use some type of
21 payroll service to pay employees of the various
22 hotels, or does it do that in-house?
23 A. It does it in-house.
24 Q. As far as you're aware, just from your
25 knowledge of the personnel files and the payroll

1  information up here, are there employees at the
2  Westin Casuarina whose function is to provide
3  security services on the property?
4           MR. BROWN:  Can I have that read back?
5           (The pending question was read back.)
6       A.  I don't recall seeing anybody that is
7  in that category, but that doesn't mean that there
8  isn't somebody, but I don't recall.
9       Q.  Okay.  And earlier in the different
10 context we had talked about coding bills and things
11 like that.  Are there also codes from personnel files
12 that would indicate what department an employee
13 worked in in the hotel?
14      A.  Yes.  Every employee is given a
15 specific job code.
16      Q.  Okay.  Are the job codes for the
17 Westin Casuarina the same job codes used for other
18 hotels that Columbia Sussex manages?
19      A.  For the most part, there might be some
20 special ones that they need, but I think for the most
21 part they're the same.
22      Q.  Okay.  So that stuff that would apply
23 to all the hotels like housekeeping that would be the
24 same codes?
25      A.  Yes.

392127ea-ee4a-49e1-97f3-03568170b4ce

1  security matters?
2      A.   No, I don't know.
3      Q.   Do you know what type of training the
4  General Manager of the Westin Casuarina has in
5  security matters?
6      A.   No, I don't.
7      Q.   And am I correct in understanding from
8  your answer -- Is there anybody at Columbia Sussex
9  Corporation that is responsible for insuring that the
10 security needs of the Westin Casuarina are satisfied?
11          MR. BROWN:  Objection.  This has been
12      asked and answered.  I don't think it
13      phrases any differently than the last three
14      times you asked the question.  Can I have
15      it read back?
16      (The pending question was read back.)
17     A.   The answer -- In regard to Columbia
18 Sussex there is no, there's nobody at Columbia Sussex
19 that oversees that area for the Westin Casuarina.
20     Q.   Okay.  Getting back to the general
21 question we were talking about earlier.  We were
22 talking about the risk management folks that on
23 occasion would go out to the Columbia Sussex hotels
24 to perform walk throughs and things.
25          The risk management people that we've